UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ARI HOFFMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RCI HOSPITALITY HOLDINGS, INC., and ERIC S. LANGAN,<br><br>Defendants. | Case No.: 4:19-cv-1841<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ari Hoffman ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by RCI Hospitality Holdings, Inc. ("RCI" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by RCI; and (c) review of other publicly available information concerning RCI.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that acquired RCI securities between February 14, 2018 and May 10, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. RCI is a holding company that operates live adult entertainment and/or restaurant and bar operations through its subsidiaries. It has two principal reportable segments: Nightclubs and Bombshells.

3. On December 11, 2018, the Company filed a Form 12b-25 with the SEC stating it could not timely file its annual report due to "delays in completing the audit of its financial statements for the year ended September 30, 2018."

4. On this news, the Company's share price fell $1.37, or approximately 6%, to close at $22.33 per share on December 12, 2018, on unusually heavy trading volume.

5. On May 10, 2019, RCI stated that it could not timely file its quarterly report with the SEC for the period ended March 31, 2019 due to pending investigations concerning negative articles published about the company in mid- and late 2018.

6. On this news, the Company's share price fell $1.67, or over 7%, to close at $20.48 per share on May 13, 2019, on unusually heavy trading volume.

7. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the

Company engaged in numerous transactions with the CEO, including lending him significant sums of money; (2) that these practices were reasonably likely to lead to regulatory scrutiny of the Company; (3) that, as a result of investigations into the Company's governance, the Company would be unable to timely file its financial statements; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13. Plaintiff Ari Hoffman, as set forth in the accompanying certification, incorporated by reference herein, purchased RCI securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material

omissions alleged herein.

14. Defendant RCI is incorporated under the laws of Texas and its principal executive offices are located in Houston, Texas. RCI's common stock trades on the NASDAQ exchange under the symbol "RICK."

15. Defendant Eric S. Langan ("Langan") was the Chief Executive Officer ("CEO") of the Company at all relevant times. Defendant Langan is also referred to hereinafter as the "Individual Defendant." Defendant Langan because of his position with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of his position and access to material non-public information available to her, the Individual Defendant knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendant is liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16. RCI is a holding company that operates live adult entertainment and/or restaurant and bar operations through its subsidiaries. It has two principal reportable segments: Nightclubs and Bombshells.

### Materially False and Misleading Statements Issued During the Class Period

17. The Class Period begins on February 14, 2018. On that day, the Company announced its fourth quarter and full year 2017 financial results, stating in a press release, in relevant part:

**FY17 vs. FY16**

- Diluted EPS of $0.85 compared to $1.11, with non-GAAP* Diluted EPS at $1.43 compared to $1.32

- Basic and diluted share count declined 2.1% and 4.8%, respectively, due to previously announced share repurchases and retirement of convertible debt

- Total revenues of $144.9 million compared to $134.9 million

- Based on net cash provided by operating activities of $21.1 million, less maintenance capital expenditures of $1.8 million, FY17 free cash flow (FCF)* totaled $19.3 million, exceeding RCI's original target of $18 million

**FY18 Outlook**

- RCI increased its FY18 FCF target by 9.5%, to $23 million from $21 million, based on estimated net cash provided by operating activities of approximately $25.5 million, less maintenance capex of approximately $2.5 million

- The target incorporates RCI's preliminary estimate of the impact of the new Tax Cuts and Jobs Act, which is expected to significantly reduce the company's estimated tax rate to approximately 23% starting in 2Q18 and result in a non-cash gain of approximately $10 million in 1Q18 due to lowering the rate on deferred taxes

18. The same day, the Company filed its annual report on Form 10-K with the SEC for the period ended September 30, 2017, affirming the previously reported financial results. Regarding related party transactions, the Company stated, in relevant part:

> Presently, our Chairman and President, Eric Langan, personally guarantees all of the commercial bank indebtedness of the company. Mr. Langan receives no compensation or other direct financial benefit for any of the guarantees. Except for these guarantees, we know of no related transactions that have occurred since the beginning of the fiscal year ended September 30, 2017 or any currently proposed transactions in which we were or are to be a participant and the amount involved exceeds $120,000.

19. On March 7, 2018, the Company announced its first quarter 2018 financial results, stating in a press release, in relevant part:

**1Q18 vs. 1Q17**

- GAAP EPS of $1.47 per diluted share compared to $0.30, with non-GAAP* EPS of $0.53 compared to $0.31

- 1Q18 GAAP results included $9.7 million non-cash reduction of deferred tax liability as a consequence of the new Tax Cuts and Jobs Act and $827 thousand in interest expense covering debt issuance costs and prepayment penalties related to the previously announced debt refinancing

- Total revenues of $41.2 million compared to $33.7 million on 45 and 41 units, respectively

- Basic and diluted share count declined 0.5% and 1.0%, respectively, due to previously announced share repurchases and retirement of convertible debt in prior periods

- Based on net cash provided by operating activities of $8.1 million, less maintenance capital expenditures of $0.6 million, free cash flow (FCF)* totaled $7.5 million compared to $5.1 million

**FY18 Outlook**

- RCI is maintaining its FY18 FCF target of $23 million, recently announced February 14, 2018

- The target incorporates RCI's preliminary estimate of the impact of the new Tax Cuts and Jobs Act, which is expected to significantly reduce the company's estimated tax rate

20.  The same day, the Company filed its quarterly report on Form 10-Q with the SECfor the period ended December 31, 2017, affirming the previously reported financial results.

21.  On May 10, 2018, the Company announced its second quarter 2018 financial results, stating in relevant part, in a press release:

**2Q18 vs. 2Q17**

- GAAP EPS of $0.48 per diluted share compared to $0.39, with non-GAAP* EPS of $0.65 compared to $0.41

- 2Q18 GAAP results included $1.6 million non-cash impairment of a note receivable and $0.8 million in cash settlements covering two lawsuits

- Total revenues of $41.2 million compared to $34.5 million on 43 and 41 units, respectively

- Based on net cash provided by operating activities of $5.9 million, less maintenance capital expenditures of $0.6 million, free cash flow (FCF)* totaled $5.3 million compared to $4.9 million

**FY18 Outlook**

- Year to date FCF totaled $12.8 million compared to $10.0 million in the comparable year-ago period

- As a result, RCI is reiterating its FY18 FCF target of $23 million, announced on February 14, 2018

22. The same day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2018, affirming the previously reported financial results.

23. On August 9, 2018, the Company announced its third quarter 2018 financial results, stating in relevant part, in a press release:

**3Q18 vs. 3Q17**

- GAAP EPS of $0.55 per diluted share compared to $0.40, with non-GAAP* EPS of $0.58 compared to $0.47

- 3Q18 GAAP results included a $0.5 million pre-tax settlement of a lawsuit

- Record total revenues of $42.6 million compared to $37.4 million on 44 units in both periods

- Based on net cash provided by operating activities of $8.3 million, less maintenance capital expenditures of $0.6 million, free cash flow (FCF)* totaled $7.7 million compared to $6.6 million

**FY18 Outlook**

- Year to date FCF totaled $20.6 million compared to $16.6 million in the comparable year-ago period

- As a result, RCI expects to exceed its FY18 FCF target of $23 million

24. The same day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018, affirming the previously reported financial results.

25. On December 11, 2018, the Company filed a Form 12b-25 with the SEC stating it could not timely file its annual report due to "delays in completing the audit of its financial statements for the year ended September 30, 2018."

26. On this news, the Company's share price fell $1.37, or approximately 6%, to close at $22.33 per share on December 12, 2018, on unusually heavy trading volume.

27. On December 31, 2018, the Company announced its fourth quarter and full year 2018 financial results, stating in a press release, in relevant part:

**4Q18 vs. 4Q17**

- Loss of $0.27 per share compared to a loss of $0.23

- Non-GAAP* profit of $0.41 per diluted share compared to $0.36

- GAAP results included $5.5 million in other charges compared to $6.2 million in 4Q17, mostly non-cash in both periods

- Free cash flow (FCF) totaled $2.7 million based on net cash provided by operating activities of $3.4 million, less maintenance capital expenditures of $0.7 million

- Total revenues of $40.7 million compared to $39.2 million on 43 and 45 units, respectively

**FY18 vs. FY17**

- Diluted EPS of $2.23 compared to $0.85

- Non-GAAP Diluted EPS of $2.18 compared to $1.43

- FCF totaled $23.2 million based on net cash provided by operating activities of $25.8 million, less maintenance capital expenditures of $2.5 million

- Total revenues of $165.7 million compared to $144.9 million

**FY19 Initial Outlook**

- FY19 is expected to benefit from, in addition to other factors, recent nightclub acquisitions in Chicago and Pittsburgh, the opening of additional Bombshells Restaurant & Bar locations in the Houston area, and the sale or lease of non-income producing properties.

28.   The same day, the Company filed its annual report on Form 10-K with the SEC for the period ended September 30, 2018, affirming the previously reported financial results. Regarding related party transactions, the Company stated, in relevant part:

> Presently, our Chairman and President, Eric Langan, personally guarantees all of the commercial bank indebtedness of the company. Mr. Langan receives no compensation or other direct financial benefit for any of the guarantees.
>
> In November 2018, we borrowed $500,000 from Ed Anakar, an employee of the Company and the brother of our director Nourdean Anakar. The note bears interest at the rate of 12% per annum and matures in November 2021. The note is payable in monthly installments of interest only with a balloon payment of all unpaid principal and interest due at maturity.
>
> Except for these above transactions, we know of no related transactions that have occurred since the beginning of the fiscal year ended September 30, 2018 or any currently proposed transactions in which we were or are to be a participant and the amount involved exceeds $120,000.

29.   On February 11, 2019, the Company announced its first quarter 2019 financial results, stating in a press release, in relevant part:

**1Q19 vs. 1Q18**

- Diluted EPS of $0.65 compared to $1.47

- Diluted Non-GAAP* EPS of $0.61 compared to $0.53

- 1Q19 GAAP results included $1.2 million pre-tax gain on the sale of three non-income producing assets and $447K pre-tax non-operating loss reflecting the implementation of a new accounting standard

- 1Q18 GAAP results included $9.7 million deferred tax credit due to the new tax law and $827K in interest expense for debt issuance costs write-off and prepayment penalties related to a bank refinancing

- Free cash flow (FCF) totaled $11.1 million based on net cash provided by operating activities of $11.5 million, less maintenance capital expenditures of $0.4 million

- Total revenues of $44.0 million compared to $41.2 million on 46 and 45 units, respectively

**Other News**

- RCI reactivated its share buyback program in line with its capital allocation strategy, acquiring 28,211 shares from October 2018 to January 2019 for $660,000, or an average price of $23.39

- A subsidiary sold another non-income producing asset for an estimated $383K pre-tax gain in late January

30. The above statements identified in ¶¶17-25, 27-29 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company engaged in numerous transactions with the CEO, including lending him significant sums of money; (2) that these practices were reasonably likely to lead to regulatory scrutiny of the Company; (3) that, as a result of investigations into the Company's governance, the Company would be unable to timely file its financial statements; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

31. On May 10, 2019, the Company filed a Form 12b-25 with the SEC stating it could not timely file its quarterly report due to pending investigations. The Company stated, in relevant

part:

> In mid- and late 2018, a series of negative articles about the registrant was anonymously published in forums associated with the short-selling community. Subsequently in 2019, the SEC initiated an informal inquiry. In connection with these events, a special committee of the registrant's Audit Committee engaged independent outside counsel to conduct an internal review. The registrant and its management are cooperating with both the internal review and the SEC inquiry. Because the internal review is still ongoing, the registrant will be delayed in filing its Form 10-Q.

32. On this news, the Company's share price fell $1.67, or over 7%, to close at $20.48 per share on May 13, 2019, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired RCI securities between February 14, 2018 and May 10, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, RCI's common stock actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of RCI common stock were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by RCI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of RCI; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

38. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

39. The market for RCI's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, RCI's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired RCI's securities relying upon the integrity of the market price of the Company's securities and market information relating to RCI, and have been damaged thereby.

40. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of RCI's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth

herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about RCI's business, operations, and prospects as alleged herein.

41.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about RCI's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

42.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

43.    During the Class Period, Plaintiff and the Class purchased RCI's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

44.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the

federal securities laws. As set forth elsewhere herein in detail, the Individual Defendant, by virtue of his receipt of information reflecting the true facts regarding RCI, his control over, and/or receipt and/or modification of RCI's allegedly materially misleading misstatements and/or his associations with the Company which made them privy to confidential proprietary information concerning RCI, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

45. The market for RCI's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, RCI's securities traded at artificially inflated prices during the Class Period. On July 26, 2018, the Company's share price closed at a Class Period high of $34.37 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of RCI's securities and market information relating to RCI, and have been damaged thereby.

46. During the Class Period, the artificial inflation of RCI's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about RCI's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of RCI and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47. At all relevant times, the market for RCI's securities was an efficient market for the following reasons, among others:

(a) RCI shares met the requirements for listing, and was listed and actively traded on

the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, RCI filed periodic public reports with the SEC and/or the NASDAQ;

(c) RCI regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) RCI was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

48. As a result of the foregoing, the market for RCI's securities promptly digested current information regarding RCI from all publicly available sources and reflected such information in RCI's share price. Under these circumstances, all purchasers of RCI's securities during the Class Period suffered similar injury through their purchase of RCI's securities at artificially inflated prices and a presumption of reliance applies.

49. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

50. The statutory safe harbor provided for forward-looking statements under certain

circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of RCI who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

51.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase RCI's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for RCI's securities in violation of Section 10(b) of the

Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about RCI's financial well-being and prospects, as specified herein.

55. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of RCI's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about RCI and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56. The Individual Defendant's primary liability and controlling person liability arises from the following facts: (i) the Individual Defendant was a high-level executive and/or director at the Company during the Class Period and member of the Company's management team or had control thereof; (ii) the Individual Defendant by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) the Individual Defendant enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) the Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57. Defendants had actual knowledge of the misrepresentations and/or omissions of

material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing RCI's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of RCI's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired RCI's securities during the Class Period at artificially high prices and were damaged thereby.

59. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that RCI was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their RCI securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendant

62. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63. The Individual Defendant acted as a controlling person of RCI within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendant had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendant was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64. In particular, Individual Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65. As set forth above, RCI and Individual Defendant each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of his position as controlling person, Individual Defendant is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: May 21, 2019                                   Respectfully submitted,

                                                      /s/ Joe Kendall
                                                      JOE KENDALL
                                                      Texas Bar No. 11260700
                                                      **KENDALL LAW GROUP, PLLC**
                                                      3811 Turtle Creek Blvd., Suite 1450
                                                      Dallas, Texas 75219
                                                      214-744-3000 / 214-744-3015 (Facsimile)
                                                      jkendall@kendalllawgroup.com

                                                      **GLANCY PRONGAY & MURRAY LLP**
                                                      Lionel Z. Glancy
                                                      Robert V. Prongay
                                                      Lesley F. Portnoy
                                                      Charles H. Linehan
                                                      Pavithra Rajesh
                                                      1925 Century Park East, Suite 2100
                                                      Los Angeles, CA 90067
                                                      Telephone:  (310) 201-9150
                                                      Facsimile:  (310) 201-9160

                                                      ***Attorneys for Plaintiff***