UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re RCI Hospitality Holdings, Inc. | Master File No. 4:19-cv-01841-AHB |
| Securities Litigation | |

**DEFENDANTS' MOTION TO DISMISS LEAD PLAINTIFFS' AMENDED CLASS
<u>ACTION COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................. 4

I.     The Complaint Fails To State A Claim Based On Related Party Transactions ................ 5

        A.     Purchases from Langan's relatives and employment of Anakar's brother ........... 5

        B.     Tannos and Tannos Construction are not alleged to be related persons ............... 7

II.    The Complaint Fails To State A Claim Based On The Imputed Compensation
     From The Use Of A Corporate Jet ................................................................................... 8

III.   The Complaint Fails To State A Claim Based On Jenkins' Bankruptcy Filings .............. 9

IV.   The Complaint Fails To State A Claim Based On Internal Controls Statements ............ 9

        A.     Sarbanes-Oxley certifications .............................................................................. 9

        B.     Statements in periodic filings about remedial measures .................................... 11

        C.     Langan's statements about internal controls ...................................................... 12

V.     A Holistic Review Confirms The Lack Of A Strong Inference Of Scienter .................. 13

        A.     The Complaint's allegations and omissions weigh against scienter ................... 13

        B.     BDO's resignation does not support scienter ..................................................... 15

CONCLUSION ....................................................................................................................... 16

## **TABLE OF AUTHORITIES**

### **Cases**

*Abrams v. Baker Hughes Inc.*, 292 F.2d 424 (5th Cir. 2002) ........................................5

*Alaska Electrical Pension Fund v. Flotek Industries, Inc.*, 915 F.3d 975 (5th Cir. 2019) ............8

*Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662 (D. Colo. 2007) ..............10

*Brennan v. Zafgen, Inc.,* 853 F.3d 606 (1st Cir. 2017) ...................................13

*Budde v. Global Power Equipment Group, Inc.*, No. 3:15-cv-1679-M, 2018 WL 4623108 (N.D. Tex. Sept. 26, 2018)...............................................................................15

*Central Laborers' Pension Fund v. Integrated Elec. Serv. Inc.*, 497 F.3d 546 (5th Cir. 2007) 4, 11

*Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666 (S.D. Tex. 2013) .........................................13

*Edgar v. Anadarko Petroleum Corp.*, No. H-17-1372, 2019 WL 1167786 (S.D. Tex. Mar. 13, 2019) ...............................................................................13

*Employees' Retirement Sys. v. Whole Foods Markets, Inc.*, 905 F.3d 892 (5th Cir. 2018)...........12

*Fire & Police Pension Ass'n v. Abiomed, Inc.*, 778 F.3d 228 (1st Cir. 2015)...............................13

*Greenhouse v. MGC Capital Corp.*, 392 F.3d 650 (4th Cir. 2004) ................................................14

*In re Advanced Battery Technologies, Inc. Sec. Litig.*, No. 11 Civ. 2279 (CM), 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012)...................................................................9

*In re Anadarko Petroleum Corp. Class Action Litig.*, 957 F. Supp. 2d 806 (S.D. Tex. 2013)......11

*In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240 (8th Cir. 2008) ...................................11

*In re China Valves Tech. Sec. Litig.*, No. 11 Civ. 0796 (LAK), 2012 WL 2012 WL 4039852 (S.D.N.Y. Sept. 12, 2012) ...............................................................................14

*In re Francesca's Holdings Corp. Sec. Litig.*, Nos. 13-cv-6882 (RJS) *etc.*, 2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015) ...............................................................................14

*In re Key Energy Sec. Litig.*, 166 F. Supp. 3d 822 (S.D. Tex. 2016).............................................10

*In re KBR, Inc. Sec. Litig.*, No. H-17-1375, 2018 WL 4208681 (S.D. Tex. Aug. 31, 2018).........15

*In re Plains All American Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583 (S.D. Tex. 2018)........11

*In re ZAGG Inc. Shareholder Litigation*, 826 F.3d 1222 (10th Cir. 2016)................................6, 7

*Indiana Electrical Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.,* 537 F.3d 527 (5th Cir. 2008)...............................................................................11

*Jasin v. VIVUS, Inc.*, No. 14-cv-03263-BLF, 2016 WL 1570164 (N.D. Cal. Apr. 19, 2016).......13

*Kumar v. Kulicke & Soffa Indus., Inc.*, No. 19-0362, 2019 WL 5081896 (E.D. Pa. Oct. 9, 2019) ...............................................................................15

*Levine v. Smith*, 591 A.2d 194 (Del. 1991)...................................................16

*Local 210 Unity Pension & Welfare Funds v. McDermott Int'l Inc.*, No. 4:13-CV-2393, 2015 WL 1143081 (S.D. Tex. Mar. 13, 2015) ...............................................................................12

*Maguire Fin., L.P. v. PowerSecure Int'l, Inc.*, 876 F.3d 541 (4th Cir. 2017) ...............................5

*Municipal Employees' Retirement Sys. v. Pier 1 Imports, Inc.*, 935 F.3d 424 (5th Cir. 2019) .....14

*Neiman v. Bulhman*, 854 F.3d 741 (5th Cir. 2017) ...................................14

*Owens v. Jastrow*, 789 F.3d 529 (5th Cir. 2015) ...............................................11, 14

*Plaisance v. Schiller*, No. H-17-3741, 2019 WL 1205628 (S.D. Tex. Mar. 14, 2019) .................7

*Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir. 2005) ....................................................4

*Prause v. TechnipFMC, PLC*, No. 4:17-CV-02368, 2019 WL 1211428 (S.D. Tex. Jan. 18, 2019) ......................................................................................................................3, 7

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008) ..........................................................8

*R2 Investments LDC v. Phillips*, 401 F.3d 638 (5th Cir. 2005) ......................................5

*Rok v. Identiv, Inc.*, 15-cv-5775-CRB, 2017 WL 35496 (N.D. Cal. Jan. 4, 2017), *aff'd*, 716 Fed.Appx. 663 (9th Cir. Mar. 23, 2018) .........................................................6, 7, 14, 16

*Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936 (S.D. Tex. 2016)..............................4, 6, 7

*Securities & Exch. Comm'n v. Saltsman*, No. 07-CV-4370 (NGG) (RML), 2016 WL 4136829 (E.D.N.Y. Aug. 2, 2016) ......................................................................8, 9

*Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308 (2007) ...........................2, 3, 13

*Wanca v. Super Micro Computer, Inc.*, No. 5:15-cv-04049-EJD, 2018 WL 3145649 (N.D. Cal. June 27, 2018) .........................................................................................10

*Zhang v. LifeVantage Corp.*, No. 2:16-CV-965 TS, 2017 WL 2599883 (D. Utah June 15, 2017) ......................................................................................................................10

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) ......................10

## Statutes

Securities Exchange Act of 1934 Section 10(b), 15 U.S.C. § 78j(b)....................................1, 7, 16

Securities Exchange Act of 1934 Section 20(a), 15 U.S.C. § 78t(a) ...............................16

Securities Exchange Act of 1934 Section 21D(b)(1), 15 U.S.C. § 78u-4(b)(1) ..............................4

Securities Exchange Act of 1934 Section 21D(b)(2), 15 U.S.C. § 78u-4(b)(2) ..............................4

15 U.S.C. §§7241(a)(1)-(4)..................................................................................10

## Rules And Regulations

Fed. R. Civ. P. 8(a) ..........................................................................................4

Fed. R. Civ. P. 8(a)(2) ......................................................................................4

Fed. R. Civ. P. 9(b) ..........................................................................................4

Fed. R. Civ. P. 12(b)(6)....................................................................................1

SEC Regulation S-K, Item 401, 17 C.F.R. § 229.401 .......................................1, 9

SEC Regulation S-K, Item 402, 17 C.F.R. § 229.402 .......................................1, 8

    Instruction 2 to Item 402(b)(2)(iii)(C) .......................................................9

    Instruction 4 to Item 402(c)(2)(ix)..............................................................9

SEC Regulation S-K, Item 403(b), 17 C.F.R. § 229.403(b) .............................6

SEC Regulation S-K, Item 404, 17 C.F.R. § 229.404 .............................1, 5, 7, 8

    Instruction 1 to Item 404(a) .......................................................................8

    Instruction 3 to Item 404(a) .......................................................................7

    Instruction 4 to Item 404(a) .......................................................................7

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ....................................................1, 7

Defendants RCI Hospitality Holdings, Inc. ("RCI"), Eric Langan, Phillip Marshall, Nour-Dean Anakar, and Steven Jenkins hereby move to dismiss Lead Plaintiffs' Amended Class Action Complaint ("Complaint" or "AC") under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION AND SUMMARY OF ARGUMENT

RCI is a public company based in Houston.  On July 22, 2019, RCI disclosed:  (i) it purchased furniture and maintenance services during the previous three years from companies owned by the brother and father of its CEO, Eric Langan; (ii) it employed the brother of an outside member of its Board of Directors during the previous three years; (iii) revised values for the imputed compensation benefit from the use of a corporate jet by two officers; and (iv) an outside Board member previously had filed for bankruptcy.  These matters had no effect on RCI's reported revenues, profits, assets, liabilities, cash position, business operations, or prospects.  However, RCI disclosed them under Items 404, 402, and 401 of SEC Regulation S-K as (respectively) related party transactions, compensation, and biographical information.

The main problem with Plaintiffs' Complaint is that it assumes the foregoing suffices to plead a securities fraud claim under Securities Exchange Act Section 10(b) and SEC Rule 10b-5. But errors in disclosure do not imply scienter, which must be pleaded with particularity.  The lack of the required strong inference of scienter is especially evident here because the related party disclosures are of ordinary business relationships that do not obviously resemble "transactions," there are multiple ways to calculate the benefit from a corporate jet, and the Complaint alleges that the outside Board member did not disclose his bankruptcy filings to RCI.

The Complaint also fails to plead a claim based on the certifications about internal controls made pursuant to the Sarbanes-Oxley Act ("SOX") by Langan and RCI's CFO, Phillip Marshall. A certification is not an absolute statement; it is qualified as being based on personal knowledge. Thus, certifications cannot be false or misleading unless a certifier knows they were false when

made, which is not alleged.  Nor did RCI publicly assure that internal control weaknesses it had disclosed in 2018 would be remedied, as the Complaint alleges without basis.

The record also gives rise to inferences <u>against</u> scienter that must be considered under *Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308 (2007).  Among other things, there were no insider stock sales; the materiality of the information disclosed on July 22, 2019 is marginal at best; and Plaintiffs do not dispute that RCI tried to improve internal controls.

## <u>STATEMENT OF FACTS</u>

RCI operates adult entertainment and restaurant establishments.  AC ¶¶2, 52-54.  The purported Class Period begins on December 13, 2016, when RCI filed its Form 10-K for Fiscal Year 2016.  *Id.* ¶¶5, 108 ("2016 10-K").  RCI's next two Forms 10-K disclosed certain material weaknesses in internal controls over financial reporting.  The 10-K for Fiscal Year 2017 filed February 14, 2018 ("2017 10-K") disclosed weaknesses regarding complex accounting and management estimates relating to assets held for sale, the accuracy of disclosures in the 10-K, and information technology access to certain systems and data.  *Id.* ¶¶12, 88, 133.  The 10-K for Fiscal Year 2018 filed December 31, 2018 ("2018 10-K") reported the same weaknesses and two others. *Id.* ¶¶16, 91, 137.  The 10-Ks also disclosed steps RCI had taken or planned to take to address the weaknesses.  *Id.* ¶¶13, 17, 89, 92, 133, 137.

The 2018 10-K also disclosed the imputed compensation value from two officers' use of a corporate jet:  $30,493 for CEO Langan and $5,535 for RCI's Chief Operating Officer, Travis Reese, as calculated "based on hourly flight charges and other variable charges."  *Id.* ¶¶65, 125. The two prior 10-Ks had not disclosed compensation from the use of a corporate jet.

Plaintiffs do not allege that the foregoing statements misrepresented RCI's revenues, earnings, cash flows, assets, liabilities, other performance or balance sheet metrics, cash position,

business, or prospects.  Rather, Plaintiffs claim that the Forms 10-K and a proxy statement failed to disclose information that RCI disclosed on July 22, 2019.  *See* Argument Sections I-III, *infra*.

On May 10, 2019, RCI filed a Notification Of Late Filing on Form 12b-25.  AC ¶94.  It stated that the SEC had initiated an informal inquiry following a series of anonymous short-seller attacks on RCI, and that a special committee of the Audit Committee was conducting an internal review.  *Id*.  On July 22, 2019, RCI filed a Form 8-K which stated that based on the special committee's preliminary findings, RCI had decided to supplement the disclosures in the 2018 10-K.  *See* Declaration of Margaret Austin Exhibit 2 ("July 22 8-K"), *referenced in* AC ¶¶46, 98-102; *Prause v. TechnipFMC, PLC*, 2019 WL 1211428, *2 (S.D. Tex. Jan. 18, 2019) (court may take notice of document referenced in complaint) (*citing Tellabs*, 551 U.S. at 322).

The July 22 8-K disclosed that in Fiscal Years 2016-2018, (i) RCI purchased furniture and maintenance services from a company owned by Langan's brother, and previously a predecessor company owned by Langan's father, in the amount of $135,222 to $321,353 per year; and (ii) RCI employed Ed Anakar, the brother of outside Board member Nour-Dean Anakar, as a director of operations, and paid him $375,000 to $471,154 per year.  AC ¶99.

The July 22 8-K also disclosed that the imputed compensation from the corporate jet had been incorrectly calculated for Fiscal Year 2018 and inadvertently left out of the 2017 and 2016 Forms 10-K.  *Id*. ¶100.  The error arose from reliance on a calculation by a third-party consultant based on a standard industry fare level rate, an accepted compensation basis for IRS purposes.  *Id*. RCI revised the calculation method to use a cost-per-flight hour charge developed by a nationally recognized independent service, plus airport/hangar fees.  *Id*.  Under the revised method, the value of the jet to Langan was $96,797 in 2018 and lower amounts the previous two years, and the value to Reese was $20,410 in 2018 and less than $10,000 the previous two years.  *Id*.

The July 22 8-K also disclosed that an outside member of the Board and its Audit Committee, Steven Jenkins, had filed for bankruptcy in 2010 and 2015. *Id*. ¶¶43, 86, 101.

RCI's stock price increased by over $1 per share the next day. By the end of the week, it closed at $17.80 per share, higher than before the event that ends the Class Period (a July 18, 2019 announcement of the resignation of RCI's auditors, BDO US, LLP). *Id*. ¶¶25, 96-97, 186.

## **ARGUMENT**

Under the applicable Federal Rule of Civil Procedure 8(a), the Court credits well-pleaded factual allegations but does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Central Laborers' Pension Fund v. Integrated Elec. Serv. Inc*., 497 F.3d 546, 550 (5th Cir. 2007). Rule 8(a)(2) also requires "a short and plain statement of the claim," which the Complaint violates by unnecessary repetition. AC ¶¶1-25, 55-102, 108-49.

The Complaint also must "state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). This requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Schott v. Nobilis Health Corp*., 211 F. Supp. 3d 936, 948 (S.D. Tex. 2016), *citing Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir. 2005).

The Complaint also must satisfy the Private Securities Litigation Reform Act ("PSLRA"). For the element of falsity, it must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, ... state with particularity all facts on which that belief is formed." 15 U.S.C. §78u-4(b)(1). For the element of scienter, it must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* §78u-4(b)(2); *see also* Section V(A), *infra* (other scienter rules).

I.      **The Complaint Fails To State A Claim Based On Related Party Transactions**

A.      **Purchases from Langan's relatives and employment of Anakar's brother**

The 2016 Form 10-K stated that RCI knew of no related party transactions for its fiscal years ended September 20, 2015 and 2016.  AC ¶109.  A proxy statement and the later Forms 10-K disclosed that Langan personally guaranteed RCI's debts, but repeated that RCI knew of no other related party transaction.  *Id.* ¶¶111, 113, 115.  Plaintiffs claim these statements were false and misleading because they failed to disclose RCI's purchases from companies owned by Langan's relatives and RCI's employment of Anakar's brother.  *Id.* ¶¶76-77.  Plaintiffs invoke Regulation S-K, Item 404 (17 C.F.R. §239.404), which covers transactions between RCI and a related party (technically, a "related person") valued over $120,000, and GAAP.  *Id.* ¶¶7, 69, 72.

Even assuming the nondisclosures created a materially false or misleading statement and Defendants knew of the purchases and employment relationship, that does not suffice.  Making an error in applying disclosure rules or GAAP is not enough.  Liability requires scienter, which under the PSLRA must be pled by a strong inference.  *See Maguire Fin., L.P. v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 547-48 (4th Cir. 2017) (plaintiff "fuses an inference that [the CEO] knew enough to realize that his characterization was technically incorrect with an inference that he intended it to deceive.  Yet scienter and knowledge with respect to misrepresentation are distinct components of the requisite analytical framework.  To conflate the two ... would read the scienter element out of the analysis in contravention of the PSLRA's exacting pleading standard."); *R2 Investments LDC v. Phillips*, 401 F.3d 638, 644 (5th Cir. 2005) ("Knowledge of an omission does not itself necessarily raise a strong inference of scienter."); *Abrams v. Baker Hughes Inc*., 292 F.3d 424, 432 (5th Cir. 2002) ("mere ... failure to follow GAAP, without more, does not establish scienter").

Scienter requires a false statement made with the intent to deceive investors into purchasing stock at an inflated price.  Scienter is <u>not</u> the making of a false statement for a purpose other than

inducing investment, including obtaining or granting compensation.  *Rok v. Identiv, Inc.*, 2017 WL 35496 (N.D. Cal. Jan. 4, 2017), *aff'd*, 716 Fed.Appx. 663 (9th Cir. Mar. 23, 2018), is on point.  In *Rok*, a special committee investigation found that a company had overpaid an officer by $110,000 due to deficient expense requests approved by its CEO.  The court dismissed because "[t]he scienter [plaintiff] is required to allege is an intent to defraud investors—not an intent to get reimbursed for personal items, or an intent to reimburse someone else for personal items."  2017 WL 35496 at *11 (emphasis in original).

In re ZAGG Inc. Shareholder Litigation*, 826 F.3d 1222 (10th Cir. 2016), also is highly instructive.  It addressed a derivative lawsuit alleging a failure to disclose a transaction by the CEO as required by Regulation S-K Item 403(b), 17 C.F.R. §239.403(b).  The complaint did not plead that making a demand would have been futile because it did not allege any director "knew that he or she was acting wrongfully" or faced a substantial likelihood of personal liability.  In particular, it did not plead the directors knew that Item 403(b) required disclosure; as the court reasoned, "[w]e doubt that board members are expected to know the minutiae of SEC regulations."  826 F.3d at 1234.  The court also held that the company's requirement that its Audit Committee comply with SEC regulations did not require the directors to have detailed knowledge of those regulations: "Corporations have lawyers and accountants for that purpose.  Who would take on that responsibility as a board member?"  *Id*. at 1235.

In *Schott v. Nobilis Health Corporation*, this Court held that scienter was not pleaded even though a company issued false financial statements.  As the Court reasoned: "The alleged frauds—improperly accounting for warrants and options and accounts receivable—do not concern central functions of [the company's] operation, the maintenance and marketing of ambulatory surgical centers."  211 F. Supp. 3d at 952.  Also, the issues concerned only a small part of one acquisition,

and the complaint suggested the company was at most negligent in relying on its auditors to apply the pertinent accounting rules. *Id.* at 954, 956; *accord*, *Prause*, 2019 WL 1211428 at *3 ("Section 10(b) and Rule 10b-5 do not protect investors against negligence or corporate mismanagement.").

Here, the matters disclosed in the July 22 8-K were ongoing vendor and employment relationships. These are not discrete, formal financial agreements such as a lease, loan, or merger agreement, when Item 404 and the accompanying Instructions are replete with language identifying "transaction" with such discrete, one-time events.[1] It would not be evident to a layperson that there were disclosable "transactions" under Item 404 at all.

Thus, as in *Rok*, *ZAGG*, and *Schott*, the most the Complaint alleges is a failure to follow technical disclosure requirements regarding relatively minor compensation matters that do not concern RCI's central function (operating adult entertainment and restaurant establishments). There are no particularized facts suggesting that any Defendant intended to deceive investors into purchasing stock at an inflated price by not making these disclosures until the July 22 8-K.

**B.** **Tannos and Tannos Construction are not alleged to be related persons**

Plaintiffs also claim that RCI failed to disclose related party transactions with Louis Tannos. A firm owned by Tannos, Tannos Construction, built RCI's headquarters in 2016 and two RCI-owned restaurants. AC ¶¶78-79, 114. The Complaint does not plead the element of falsity because these are not related party transactions.[2] Plaintiffs' assertion of Tannos or Tannos Construction's status as related persons (*id.* ¶51) is a legal conclusion the Court need not accept as true, and false at that. Plaintiffs admit that "related person" includes "any director or executive

---

[1] For example, Item 404(a) requires disclosure of information about "the transaction," meaning a singular event, including the "approximate dollar value of the amount"; and Instructions 3 and 4 include leases, loans, and indebtedness as transactions.

[2] As a result, it also does not plead scienter or loss causation. *Plaisance v. Schiller*, 2019 WL 1205628, **21, 22 (S.D. Tex. Mar. 14, 2019).

officer of the Company, any nominee for director, or any immediate family member of a director or executive officer of the registrant or of any nominee for director, or any 5% or greater shareholder." *Id.* ¶70; *accord*, Instruction 1 to Item 404(a).  Tannos and Tannos Construction are not in any of these categories, which have nothing to do with any relationship between Tannos and <u>Langan</u>.  There is no allegation that Langan has any interest in Tannos Construction.  *Securities & Exch. Comm'n v. Saltsman*, 2016 WL 4136829, *13 (E.D.N.Y. Aug. 2, 2016) (no Item 404 claim where complaint "failed to allege what material interest Defendant had in the … transactions.").

## II.   The Complaint Fails To State A Claim Based On The Imputed Compensation From The Use Of A Corporate Jet

Plaintiffs allege that RCI's Forms 10-K and 2017 proxy statement underreported the compensation to Langan and Reese by failing to include or miscalculating the value of their use of a corporate jet, based on the numbers later disclosed in the July 22 8-K, in violation of Regulation S-K Item 402, 17 C.F.R. §239.402.  AC ¶¶7, 61-65, 119-25.

Even assuming that the nondisclosure or inaccurate disclosure created a materially false or misleading statement, the Complaint does not plead a strong inference of scienter.  As explained above, an error in disclosure does not imply scienter.  Inferring scienter also is unwarranted because the Complaint admits there are different ways to calculate the value of the use of a corporate jet.  RCI originally used the method used to determine income for IRS purposes.  *Id.* ¶65 n.14.  That method would appear reasonable on its face to a layperson because it measures a statistic linked to personal compensation (*i.e.*, taxes).  That RCI later changed method suggests mistake, not scienter.  *See Alaska Electrical Pension Fund v. Flotek Industries, Inc.*, 915 F.3d 975, 984 (5th Cir. 2019) (no scienter for public statement based on incorrectly calculated well data where company did not know correct data at time); *Pugh v. Tribune Co.*, 521 F.3d 686, 694 (7th Cir. 2008) (complexity of rules for counting newspaper circulation weighed against argument that

falsity of publicly reported numbers was obvious).  Indeed, <u>Plaintiffs</u> make a mistake here:  they cite Instruction 2 to Item 402(b)(2)(iii)(C) for the proposition that an aggregate incremental cost method is required, but no such Instruction exists and the aggregate incremental cost method actually is referenced in Instruction 4 to Item 402(c)(2)(ix).  AC ¶65 n.14.

### III.    <u>The Complaint Fails To State A Claim Based On Jenkins' Bankruptcy Filings</u>

Plaintiffs allege RCI's Forms 10-K and proxy statement failed to disclose that outside director Jenkins had filed for personal bankruptcy in 2010 and 2015, as required by Regulation S-K, Item 401.  17 C.F.R. §239.401; AC ¶¶67, 85, 142-48.

Even assuming that the nondisclosures created a materially false or misleading statement, the Complaint does not plead a strong inference of scienter.  Again, an error in disclosure is not scienter. Moreover, the Complaint alleges that Jenkins "intentionally or recklessly failed to disclose this information to be included in the Company's public statements."  AC ¶156.  This undermines an inference of scienter because RCI would not have known the information to be disclosed.  *See*, *e.g.*, *In re Advanced Battery Technologies, Inc. Sec. Litig.*, 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012) (allegation that undisclosed related party transaction was kept a secret from company negated scienter); *Saltsman*, 2016 WL 4136829 at *19 (no claim for failure to disclose payment to CEO's brother where complaint "alleges facts that indicate that [CEO] did not know about the … payment").  Furthermore, bankruptcy filings are a matter of public record. Neither Jenkins nor any other Defendant could have concealed the bankruptcies from the public in order to mislead investors into purchasing at inflated prices even if they wanted to do so.

### IV.    <u>The Complaint Fails To State A Claim Based On Internal Controls Statements</u>

#### A.    <u>Sarbanes-Oxley certifications</u>

Plaintiffs also claim that the SOX certifications of internal controls over financial reporting made by Langan and Marshall were false and misleading as a result of the matters that were not

disclosed until the July 22 8-K.  AC ¶¶55-59, 88, 127-28, 130, 133, 135-37.

The Complaint does not plead falsity or scienter because it misapprehends the nature of certifications.  Certifications use statutory language mandated by Congress.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1003 (9th Cir. 2009), *citing* 15 U.S.C. §§7241(a)(1)-(4).  This language does not render certifications as absolute, objective, or global statements about financial statements or internal controls, nor as guarantees.  Rather, certifications are personal, subjective statements by the CEO and CFO.  Each states that (s)he has reviewed the periodic report and that "[b]ased on my knowledge," it does not contain any untrue statement of material fact or material omission required to make a statement not misleading, and that "the financial statements and other financial information fairly present in all material respects the financial condition, results of operations and cash flows…."  Each certifier also states she had evaluated controls, disclosed any material changes in controls, and disclosed all significant deficiencies and material weaknesses reasonably likely to adversely affect the ability to record, process, summarize and report financial information to the auditors and Audit Committee.

As certifications are personal statements by the CEO and CFO, to be actionable it is not enough to plead objective falsity—"defendants must also have had knowledge of that falsity" at the time, as alleged by particularized facts.  *Zhang v. LifeVantage Corp.*, 2017 WL 2599883, *8 (D. Utah June 15, 2017); *see also Wanca v. Super Micro Computer, Inc.,* 2018 WL 3145649, *6 (N.D. Cal. June 27, 2018); *In re Key Energy Sec. Litig.*, 166 F. Supp. 3d 822, 866 (S.D. Tex. 2016).

Under these standards, the Complaint does not allege the certifications were false or misleading.  It does not allege that "the financial condition, results of operations and cash flows" were inaccurately reported at any time.  It does not allege that Langan or Marshall failed to undertake the internal control review and design steps set forth in the certifications.  *See Andropolis*

*v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 683 (D. Colo. 2007).

Moreover, any argument that Langan and Marshall must have known about the errors in disclosure at the time of their earlier certifications constitutes fraud by hindsight, and as explained above there are no allegations suggesting fraudulent rather than erroneous nondisclosure. *Owens v. Jastrow*, 789 F.3d 529, 544-45 (5th Cir. 2015) (PSLRA bars fraud by hindsight); *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 248 (8th Cir. 2008) (allegations that accounting errors were discovered later do not plead strong inference that certifications were knowingly false when made).

Thus, the Complaint does not plead false certifications. It follows that the certifications do not support scienter. *Indiana Electrical Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 545 (5th Cir. 2008); *Central Laborers' Pension Fund*, 497 F.3d at 555.

### B.      Statements in periodic filings about remedial measures

The 2017 and 2018 10-Ks disclosed the steps RCI had already taken or planned to take to address the internal control weaknesses disclosed in those filings. AC ¶¶13, 17, 89, 92, 133, 137. Plaintiffs claim the statements falsely assured that RCI had taken sufficient steps that would remedy the weaknesses. *Id.* ¶¶18-19, 88-90, 92.[3]

This claim must be dismissed for lack of a false or misleading statement. Courts have not hesitated to reject textually unsupported spin on a defendant's public statements. *In re Plains All American Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 620 (S.D. Tex. 2018); *In re Anadarko Petroleum Corp. Class Action Litig.*, 957 F. Supp. 2d 806, 832 (S.D. Tex. 2013) ("The Court agrees with Defendants that Plaintiffs have mischaracterized the statements at issue."). Here, none of the words quoted by Plaintiffs gave any impression of assurance, effectiveness, or sufficiency of

---

[3]  A related allegation that the 2017 10-K stated that the weaknesses disclosed therein "only existed as of September 30, 2017" is absurd. AC ¶¶88, 134. The 10-K reported on internal controls as of September 30, 2017 because that was the last day of Fiscal Year 2017.

remediation.  *Local 210 Unity Pension & Welfare Funds v. McDermott Int'l Inc.*, 2015 WL 1143081, *8 (S.D. Tex. Mar. 13, 2015) (dismissing where court was "hard pressed to conclude that any of the ... statements expresses or creates assurances about [the company's] future profitability that would lead a rational investor to rely on them.").  To the contrary, RCI stated that until all the steps it disclosed were implemented, tested and deemed effective, the material weaknesses identified in the Forms 10-K "will continue to exist."  AC ¶¶89, 92.[4]

### C.  Langan's statements about internal controls

The Complaint also fails to state a claim based on other statements made by Langan:

•Statements that RCI had "developed sophisticated systems for management, cash handling, purchasing and other best practices" and had "a disciplined capital allocation strategy" (AC ¶¶10, 137) are nonactionable puffery and not alleged to be false.  *Employees' Retirement Sys. v. Whole Foods Markets, Inc.*, 905 F.3d 892, 901-02 (5th Cir. 2018) (public commitments to transparency, quality, and corporate responsibility nonactionable puffery).

•The Complaint admits that RCI is an audited public company as Langan stated.  AC ¶¶16, 25 (BDO audited RCI), 170 (RCI common stock trades on NASDAQ).

•Langan stated on December 31, 2018 that BDO had given an unqualified opinion on RCI's financial statements, which meant "the numbers all checked out."  *Id*. ¶20.  That was true then and remains true today.  The Complaint does not allege otherwise.

•Langan stated the same day that RCI had hired a consultant, added software, and had "been working on this throughout the year in order to get a clean bill of health on these internal control requirements."  *Id*. ¶¶19, 139.  The Complaint does not allege otherwise.

---

[4]  *See also* 2018 10-K at 12 (cautioning while remediation had been planned, "if these material weaknesses are determined to have not been remediated, it could adversely affect our ability to report our financial condition and results of operations in a timely and accurate manner....").

## V.     A Holistic Review Confirms The Lack Of A Strong Inference Of Scienter

### A.     The Complaint's allegations and omissions weigh against scienter

Under the Reform Act, courts must conduct a holistic analysis of scienter that credits in defendants' favor (i) allegations that weigh against scienter and (ii) the <u>absence</u> of allegations one would expect to see if the purported fraud occurred.  *Tellabs*, 551 U.S. at 323-24, 326.  Thus, in *Edgar v. Anadarko Petroleum Corp.*, 2019 WL 1167786, **9-10 (S.D. Tex. Mar. 13, 2019), scienter was not pled for a defendant who allegedly attended meetings at which pressing issues were discussed, but was not alleged to have learned adverse information at those meetings.

Several allegations and omissions here weigh against scienter.  There are ***no alleged insider stock sales***, even though the Class Period is more than two years.  That the Defendants did not try to take advantage of the stock price they supposedly tried to inflate weighs against scienter.  *Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 689-90 (S.D. Tex. 2013).

The ***marginal materiality*** of the undisclosed information also weighs against scienter.  *Fire & Police Pension Ass'n v. Abiomed, Inc.*, 778 F.3d 228, 242 (1st Cir. 2015), recognized that "[i]f it is questionable whether a fact is material or its materiality is marginal, that tends to undercut the argument that defendants acted with the requisite intent or extreme recklessness in not disclosing the fact."  *See also Jasin v. VIVUS, Inc.*, 2016 WL 1570164, *15 (N.D. Cal. Apr. 19, 2016); *Brennan v. Zafgen, Inc.,* 853 F.3d 606, 616 (1st Cir. 2017) (marginal materiality of two adverse events during clinical trial undermined scienter for claim asserting nondisclosure).

Here, the matters disclosed in the July 22 8-K did not affect RCI's revenues, earnings, assets, liabilities, cash flows, or prospects.  Rather, they concerned operational matters.  Even then, the impact was small.  The largest annual invoices from companies owned by Langan's relatives were $321,000 (in 2018) when RCI reported $165 million in revenue; the largest annual compensation to Anakar's brother was $470,000; the largest difference between the original and

13

revised jet compensation amounts in 2018 was $68,000; all jet compensation was tiny in comparison to the recipients' salaries (the largest yearly jet compensation was $98,000 for Langan in 2018, who earned over $1 million in salary that year); and Jenkins' personal bankruptcies were matters of public record that do not erase his qualifications or challenge his integrity.

The insignificance of this information weighs against an inference that Defendants sought to deceive investors by omitting it. *Rok*, 2017 WL 35496 at *13 (relative size of $110,000 in improper compensation to officer, compared to $3.75 million in disclosed compensation and $155 million in company revenue, weighed against scienter). Indeed, some courts have found information of such relative insignificance immaterial as a matter of law.[5]

The ***public disclosure and attempted remediation of internal control weaknesses*** also weighs against scienter. Plaintiffs claim that Defendants intended to hide matters that showed a lack of internal controls, yet RCI disclosed material weaknesses in the 2017 and 2018 10-Ks. This is contrary to scienter. *Owens*, 789 F.3d at 540 (disclosure of adverse facts "negates the inference that defendants acted with scienter"); *Municipal Employees' Ret. Sys. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 433 (5th Cir. 2019) (plaintiffs claimed company knew prospects were poor because it cancelled bonuses, but "this bonus information was repeatedly disclosed to the public and therefore does not reveal any 'secret' information [defendants] were trying to hide"); *Neiman v. Bulhman*, 854 F.3d 741, 750 (5th Cir. 2017) ("the fact that [company] continuously disclosed its worsening cash position belies a claim of scienter" in lawsuit alleging concealment of liquidity problems).

---

[5] *See In re Francesca's Holdings Corp. Sec. Litig.*, 2015 WL 1600464, *16 (S.D.N.Y. Mar. 31, 2015) ($250,000 in purchases, even assuming related party transaction, immaterial in light of $79 million reported quarterly revenue); *In re China Valves Tech. Sec. Litig.*, 2012 WL 4039852, *7 (S.D.N.Y. Sept. 12, 2012) ($322,000 receivable, even assuming related party transaction, immaterial as a matter of law); *Greenhouse v. MGC Capital Corp.*, 392 F.3d 650 (4th Cir. 2004) (misrepresentation that CEO had college degree immaterial as a matter of law).

RCI also stated it had taken and planned steps to address these deficiencies.  The absence of allegations in the Complaint that these steps did not occur or were not planned deepens the inference against scienter. *Kumar v. Kulicke & Soffa Indus., Inc.*, 2019 WL 5081896, *9 (E.D. Pa. Oct. 9, 2019) (anti-scienter that company took remedial measures after it disclosed material weakness); *Budde v. Global Power Equipment Group, Inc.*, 2018 WL 4623108, *7 (N.D. Tex. Sept. 26, 2018) (hiring of consultants to address auditors' concerns factor against scienter).

Defendants also ***publicly disclosed other relevant information***.  Langan disclosed that he invested in real estate LLCs operated by Tannos—information underlying Plaintiffs' false assertion of Tannos' related person status. AC ¶¶21, 50, 117; *see also id.* ¶80 & Ex. A (RCI posted pictures of Tannos Construction projects on its website).  The 2018 10-K disclosed that Langan and Reese used a corporate jet.  RCI's voluntary disclosure of the informal SEC inquiry also counts against scienter. *In re KBR, Inc. Sec. Litig.*, 2018 WL 4208681, *11 (S.D. Tex. Aug. 31, 2018).

### B.      BDO's resignation does not support scienter

Plaintiffs allege that BDO's resignation as RCI's auditors supports scienter.  AC ¶¶160-62. Plaintiffs ignore the reasons for the resignation as set forth in the 8-K filed July 18, 2019 as referenced in the Complaint.  *See* Austin Decl. Ex. 1.  BDO said nothing about the transactions, compensation, or bankruptcy disclosed in the July 22 8-K, or about the time period covered by those disclosures.  (This suggests another anti-scienter factor:  BDO did not state that it did not know about these matters at the time of its 2017 and 2018 audits, nor does the Complaint so allege.)

Rather, BDO resigned due to its opinions on how to conduct an <u>after</u> <u>the</u> <u>fact</u> investigation of these matters, such as its presumptuous insistence that RCI waive privilege. *Id.*[6] *Rok v. Identiv*

---

[6]  The July 18 8-K does not state that BDO opined that the investigation had been "thwarted by Defendants" or that it could not rely on RCI "to provide accurate information" as Plaintiffs spin. AC ¶¶161-62.  Rather, BDO's criticisms were more idiosyncratic.

addressed identical circumstances.  In that case, too, a corporation conducted a special committee investigation of compensation-related claims, BDO was the audit firm, and BDO resigned after it "advised the Board that [it] disagrees with the scope and the remediation of the special investigation that was undertaken by the Special Committee of the Board."  2017 WL 35496 at *3. The court rejected plaintiffs' argument that the resignation supported scienter because the resignation was tied to BDO's opinions about the after the fact investigation, not to the underlying allegations or their time period.  *Id*. at *14.

*Rok* is sound.  When responding to an accusation of wrongdoing (a shareholder demand to recover damages to the corporation), "there is obviously no prescribed procedure that a board must follow."  *Levine v. Smith*, 591 A.2d 194, 224 (Del. 1991).  BDO's idiosyncratic opinions about investigations cannot abrogate the judgment and discretion of the Board and its special committee.

## CONCLUSION

The Complaint does not state a Section 10(b) claim, and *a fortiori* does not state a controlling person claim under Section 20(a), 15 U.S.C. §78t(a).  Plaintiffs initiated this action in May 2019 and filed their amended pleadings on February 24, 2020.  No amendment could cure the Complaint's defects.  It should be dismissed.

Dated:  April 24, 2020

Respectfully submitted,

By: /s/ *Jason Lewis*
Jason S. Lewis
Texas Bar #24007551
SDTX #430226
**DLA Piper LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
jason.lewis@dlapiper.com

*Attorney-In-Charge For Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been

served electronically via the Court's CM/ECF system on April 24, 2020 on all counsel of record.

*/s/ Jason S. Lewis*
Jason S. Lewis