**GLANCY PRONGAY & MURRAY LLP**
Kara M. Wolke (*pro hac vice*)
Melissa C. Wright (*pro hac vice*)
Jennifer M. Leinbach (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (*pro hac vice*)
Brian B. Alexander (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
pkim@rosenlegal.com
balexander@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the Class*

**KENDALL LAW GROUP, PLLC**
Joe Kendall
Texas Bar No. 11260700
jkendall@kendalllawgroup.com
3232 McKinney Ave., Suite 700
Dallas, Texas 75204
Telephone: (214) 744-3000
Facsimile: (214) 744-3015

*Liaison Counsel for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re RCI Hospitality Holdings, Inc. Securities Litigation | Master File No.: 4:19-cv-01841-AHB |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED CLASS COMPLAINT**

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     STATEMENT OF FACTS.................................................................................... 2

III.    APPLICABLE LEGAL STANDARDS DISFAVOR DEFENDANTS' MOTION..... 5

IV.     THE COMPLAINT ALLEGES ACTIONABLE MISSTATEMENTS....................... 5

      A.     Defendants Admit to Material False or Misleading Statements in Three
           Years of SEC Filings.................................................................................5

      B.     Defendants Failed to Disclose Material Transactions With Tannos
           Construction .............................................................................................7

      C.     Defendants' Misleading Statements And Omissions Regarding Internal
           Controls ....................................................................................................8

V.      THE COMPLAINT ALLEGES SCIENTER .................................................... 9

      A.     Defendants Acted Intentionally or Recklessly..........................................10

      B.     BDO's Resignation Further Supports Scienter..........................................14

      C.     A "Holistic Review" Supports a Strong Inference of Scienter .............................15

VI.     CONCLUSION ..................................................................................... 16

i

## TABLE OF AUTHORITIES

### CASES

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*,
2013 WL 1100819 (W.D. La. Mar. 15, 2013) ........................................................................ 15

*Barrie v. Intervoice-Bright, Inc.*,
397 F.3d 249 (5th Cir. 2005) .................................................................................................... 8

*Brown v. China Integrated Energy, Inc.*,
875 F. Supp. 2d 1096 (C.D. Cal. 2012) ................................................................................. 10

*Greenhouse v. MCG Capital Corp.*,
392 F.3d 650 (4th Cir. 2004) .................................................................................................... 7

*Haack v. Max Internet Commc'ns, Inc.*,
2002 WL 511514 (N.D. Tex. Apr. 2, 2002) ............................................................................. 5

*Hall v. The Children's Place Retail Stores, Inc.*,
580 F. Supp. 2d 212 (S.D.N.Y. 2008)..................................................................................... 14

*In re ArthroCare Corp. Sec. Litig.*,
726 F. Supp. 2d 696 (W.D. Tex. 2010)............................................................................. 13, 16

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y.2004)........................................................................................ 5

*In re Cannavest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)..................................................................................... 15

*In re China Valves Tech. Sec. Litig.*,
2012 WL 4039852 (S.D.N.Y. Sept. 12, 2012)......................................................................... 7

*In re Cylink Sec. Litig.*,
178 F. Supp. 2d 1077 (N.D. Cal. 2001) ................................................................................... 5

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
258 F. Supp. 2d 576 (S.D. Tex. 2003) ..................................................................................... 9

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
762 F. Supp. 2d 942 ................................................................................................................. 5

*In re Enron Corp.*,
2003 WL 21418157 (S.D. Tex. Apr. 24, 2003) ..................................................................... 12

*In re Francesca's Holdings Corp. Sec. Litig.*,
2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015) ......................................................................... 7

*In re OCA, Inc. Sec. & Derivative Litig.*,
2006 WL 3747560 (E.D. La. Dec. 14, 2006).................................................................. 8, 9, 16

*In re Paincare Holdings Sec. Litig.*,
541 F. Supp. 2d 1283 (M.D. Fla. 2008) ................................................................................. 11

*In re Spear & Jackson Sec. Litig.*,
399 F. Supp. 2d 1350 (S.D. Fla. 2005) ................................................................................... 14

*In re Urban Outfitters, Inc. Sec. Litig.*,
103 F. Supp. 3d 635 (E.D. Penn. 2015) ................................................................................. 14

*In re ZAGG Inc. S'holder Derivative Action*,
826 F.3d 1222 (10th Cir. 2016) ........................................................................................ 11, 12

*Jones v. Cain*,
   600 F.3d 527 (5th Cir. 2010) ........................................................................................... 5

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ..................................................................................... 5, 10

*Parmelee v. Santander Consumer USA Holdings, Inc.*,
   2018 WL 276338 (N.D. Tex. Jan. 3, 2018) ............................................................... 13

*Rok v. Identiv*,
   2017 WL 35496 (N.D. Cal. Jan. 4, 2017) .................................................................. 10

*Schott v. Nobilis Health Corp*,
   211 F. Supp. 3d 936 (S.D. Tex. 2016) ...................................................................... 11

*Shankar v. Imperva, Inc.*,
   2016 WL 2851859 (N.D. Cal. May 16, 2016) ........................................................... 8

*Snellink v. Gulf Res., Inc.*,
   870 F. Supp. 2d 930 (C.D. Cal. 2012) ....................................................................... 6

*Spitzberg v. Houston Am. Energy Corp.*,
   758 F.3d 676 (5th Cir. 2014) .................................................................................... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ........................................................................................... 10, 16

*TSC Industries, Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) .................................................................................................... 6

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
   2013 WL 2247394 (C.D. Cal. May 9, 2013) ............................................................ 10

*Wu Winfred Huang v. EZCORP, Inc.*,
   259 F. Supp. 3d 563 (W.D. Tex. 2017) ...................................................................... 6

*Zagami v. Nat. Health Trends Corp.*,
   540 F. Supp. 2d 705 (N.D. Tex. 2008) ............................................................... *passim*

## **RULES**

Fed. R. Civ. P. 15(a) ......................................................................................................... 16

## **REGULATIONS**

17 C.F.R. § 229.402 ............................................................................................................ 6

17 C.F.R. § 229.404 ................................................................................................... 6, 7, 11

71 Fed. Reg. 53158 ............................................................................................................ 7

## **OTHER AUTHORITIES**

Sec. Act Release 8732A ...................................................................................................... 7

SEC Staff Accounting Bulletin No. 99,
   64 Fed. Reg. 45150 (Aug. 19, 1999) ......................................................................... 6

Lead Plaintiffs ("Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Motion to Dismiss the Amended Complaint (ECF No. 37, "Mot.").[1]  The Complaint alleges that Defendants made misleading statements or omissions in violation of § 10(b) of the Securities Exchange Act of 1934 by omitting material related party transactions ("RPTs"), under-reporting executive compensation, and misrepresenting the efficacy of RCI's internal controls during the period December 13, 2016 through July 18, 2019, inclusive ("Class Period").

## I.      PRELIMINARY STATEMENT

On July 22, 2019, RCI announced that three years of SEC filings needed to be restated, thus admitting they were materially incorrect or incomplete.  Defendants explained that, among other disclosure violations, they failed to disclose material RPTs involving close relatives of CEO Eric Langan and Board member Nour-Dean Anakar, and under-reported compensation of Langan and another officer by excluding their personal use of RCI's corporate jet.  In their motion, Defendants admit, as they logically must, that they knew about the undisclosed transactions and compensation—all of which directly and personally benefitted them or close family members—at the time that they failed to disclose the information in RCI's SEC filings. Mot. 5-6.  Their core defense—they inadvertently omitted this material information from RCI's financial results—rings hollow.  Defendants knew that they were using RCI corporate funds as their own personal cookie jar while skirting their disclosure obligations to investors.  The most logical, and most compelling, inference to be drawn from the facts alleged is that Defendants did not want investors to know that they loaded up family and friends with lucrative contracts, while gallivanting around in the corporate jet with other close business associates, whom were also awarded rich RCI contracts.

Defendants also suggest that the Court should dismiss this case because RPTs are

---

[1] Defendants are: RCI Hospitality, Inc. ("RCI" or "the Company") and the Individual Defendants, CEO Eric Langan ("Langan"), CFO Phillip Marshall ("Marshall"), and outside Directors Nour-Dean Anakar ("Nour-Dean Anakar") and Steven L. Jenkins ("Jenkins").

unimportant to investors, as they do not effect "revenues, profits, assets, liabilities, cash position, business operations, or prospects." Mot. 1.  Defendants are wrong, and they certainly cannot show that the subject RPTs—which necessitated three years of restated records and revealed *admitted* material weaknesses in RCI's internal controls—were immaterial *as a matter of law*, as is required to sustain their motion.  In fact, investors are "***likely far more interested in related-party transactions***" because they show whether management has conflicts of interest, and disclosure of RPTs is therefore "essential" in evaluating a corporation's balance sheet.  *Zagami v. Nat. Health Trends Corp.*, 540 F. Supp. 2d 705, 712 (N.D. Tex. 2008).[2]

Moreover, Defendants not only were aware of the undisclosed RPTs, they were extremely reckless with respect to how concealing their potential self-dealing was likely to mislead investors. The Complaint sufficiently alleges scienter based on: (1) Defendants' accounting expertise; (2) the fact that Defendants signed filings that explicitly attested to review of RPTs; (3) the clear instructions concerning RPT disclosure set forth in Item 404 of Regulation S-K; (4) the fact that Defendants *did* disclose at least one relevant RPT—Langan's personal guarantee of RCI debt— showing that they fully understood Item 404's disclosure requirements and disclosed the one RPT that paints Langan in the best light; and (5) that RCI's auditor, BDO, resigned because Defendants refused to cooperate with BDO's investigation and refused to implement appropriate remedial action.  In short, the Complaint states a claim, and Defendants' motion should be denied.

## II.      STATEMENT OF FACTS

RCI operates adult entertainment establishments ("Nightclubs") and bar/restaurants ("Bombshells") in Texas.  ¶2.  Langan has been RCI's CEO, President, and Chairman since 1999 and was RCI's CFO from 1999 to 2007.  ¶38.  Marshall has been RCI's CFO since 2007 and a

---

[2] Unless otherwise indicated, all emphasis is added and quotations and citations are omitted. Further, all "¶__" citations are to the Amended Complaint (ECF No. 27, the "Complaint").

CPA since 1974.  ¶41.  Defendants Jenkins and Nour-Dean Anakar served as Directors and were on RCI's Audit Committee, and Jenkins was designated RCI's "financial expert."  ¶¶43-44.

Defendant have admitted that RCI's Form 10-Ks for the years 2016, 2017, and 2018 (the "10-Ks") and its 2017 Proxy Statement all failed to disclose material RPTs.  ¶99.  Langan and Marshall signed each of the 10-Ks and accompanying Sarbanes-Oxley ("SOX") certifications, and Langan signed the 2017 Proxy Statement.  ¶¶39, 42, 128, 135, 141.  Jenkins and Nour-Dean Anakar signed each of the 10-Ks.  Wolke Decl. Exs. 1, 3, 4.  From 2016 to 2018, Defendants failed to disclose $633,539 in transactions ($176,864 in 2016, $135,322 in 2017, and $321,353 in 2018) with a furniture fabrication company, first owned by Langan's father, and then by Langan's brother.  ¶77.  RCI also failed to disclose $1,296,154 in salary ($375,000 in 2016, $450,000 in 2017, and $471,154 in 2018) paid to Defendant Nour-Dean Anakar's brother, Ed Anakar, as RCI's Director of Operations (club division).  ¶76.  Defendants failed to disclose these RPTs even though the 10-Ks and 2017 Proxy Statement stated that RPTs were reviewed "in light of the affiliations of the director, officer, or employee and the ***affiliations of such person's immediate family***."  Wolke Decl. Exs. 1-4.  While omitting these material RPTs, the 2017 Proxy Statement and 2017 and 2018 10-Ks disclosed that Langan personally guarantees all of RCI's commercial bank indebtedness, demonstrating Defendants understood their disclosure obligations.  ¶¶111, 113, 115.

Defendants also concealed material transactions between RCI and close Langan affiliate Tannos Construction & Development, LLC ("Tannos Construction").  Langan maintains interests in *at least* five Tannos Land Holdings companies, which own land developed by Tannos Construction.  ¶50; *see also* ¶61 (Langan and Louis Tannos enjoying personal use of the RCI jet). The only other directors, members, or managers of those five companies were Louis Tannos, a relative of Mr. Tannos, and RCI's Ed Anakar.  ¶50.  Despite the obvious potential conflicts of interest posed by these overlapping business interests, RCI failed to disclose in its public filings

3

that it hired Tannos Construction to build its new headquarters, at least one Nightclub, and at least four Bombshells locations in fiscal years 2016 to 2018.  ¶¶110, 114, 116.  During a December 31, 2018 earnings call, Langan vaguely conceded he "made some investments" with Tannos, but misleadingly downplayed his substantial financial interest in Tannos activities and concealed the fact that RCI had repeatedly awarded Tannos with lucrative construction projects.  ¶¶21-22, 117.

RCI's 2016 and 2017 10-Ks and 2017 Proxy Statement also failed to disclose that Langan and Travis Reese, RCI's Executive VP and Board Member, received compensation in the form of personal use of RCI's corporate jet in 2016 and 2017.  Defendants omitted this information even though the 2016 and 2017 10-Ks disclosed the executives' automobile expenses and attested that the filing "reflects all forms of compensation."  ¶¶119, 123.  The 2017 Proxy Statement explicitly stated that RCI's officers had no significant perquisites except for an automobile.  ¶121.  In total, RCI understated Langan's compensation by $201,153, more than 5% each year.  ¶¶100, 125.

Despite these numerous disclosure violations, Langan and Marshall certified the efficacy of RCI's internal controls in the 2016 10-K.  ¶¶127-28.  While Defendants admitted some limited control weaknesses in the 2017 and 2018 10-Ks, they failed to disclose RCI's ongoing control deficiencies with respect to reporting RPTs and executive compensation.  ¶¶133-35, 137-38.

On May 10, 2019, RCI announced that it could not timely file its quarterly report because the SEC commenced an inquiry relating to non-disclosure of certain RPTs, and that RCI formed a Special Committee of the Audit Committee to conduct its own internal investigation.  ¶94.  On July 18, 2019, RCI admitted in a Form 8-K that its auditor, BDO, resigned due to RCI's insufficient investigatory procedures and obstruction of BDO's investigation.  ¶¶25, 96.  After the May 10 and July 18 disclosures, RCI's share price fell over 7% and 12.95%, respectively.  ¶¶95, 97.

On July 22, 2019, RCI admitted that it needed to restate three years of its public filings because it: (i) failed to disclose material RPTs with Langan's father and brother, and with Nour-

4

Dean Anakar's brother, Ed Anakar; (ii) understated Langan's and Reese's compensation; and (iii) omitted Jenkins' 2010 and 2015 bankruptcies. ¶¶99-101. On September 24, 2019, RCI admitted that the SEC converted its inquiry into a formal investigation. ¶104. RCI's 2019 Form 10-K admitted, for the first time, material weaknesses concerning disclosure of RPTs. ¶¶106-07.

## III.   APPLICABLE LEGAL STANDARDS DISFAVOR DEFENDANTS' MOTION

In the Fifth Circuit, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). "In the securities context, Rule 12(b)(6) dismissals are difficult to obtain because the cause of action deals primarily with fact-specific inquiries." *Haack v. Max Internet Commc'ns, Inc.*, 2002 WL 511514, at *3 (N.D. Tex. Apr. 2, 2002). "When faced with a Rule 12(b)(6) motion to dismiss a §10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true" and "draw all reasonable inferences in the plaintiff's favor." *Lormand*, 565 F.3d at 232. The Exchange Act does not alter the contours of a Rule 12(b)(6) ruling for any element other than scienter. *Id.* at 239. Here, Defendants contest only falsity and scienter; they have thus waived their right to challenge the other elements of §10(b). *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived.").

## IV.   THE COMPLAINT ALLEGES ACTIONABLE MISSTATEMENTS

### A.   Defendants Admit to Material False or Misleading Statements in Three Years of SEC Filings

RCI's restatement constitutes an admission that previously reported information is materially false or misleading. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 762 F. Supp. 2d 942, 982, n. 25 (W.D. Tex. 2010) (citing, *inter alia*, *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y.2004) ("the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made."); *In re Cylink*

*Sec. Litig.*, 178 F. Supp. 2d 1077, 1084 (N.D. Cal. 2001) ("the mere fact that … statements were restated at all" is sufficient to establish falsity at the pleading stage).  Thus, Defendants cannot contest that they made material false and misleading statements in RCI's 10-Ks and 2017 Proxy Statement.

Defendants admit that they failed to disclose material RPTs—$633,539 to Langan's father and brother's furniture fabrication company, and $1,296,154 to Ed Anakar, Defendant Nour-Dean Anakar's brother, in violation of Regulation S-K Item 404 (17 C.F.R. § 229.404 ("Item 404")).  Mot. 5.   These undisclosed RPTs exceeded the SEC's related party disclosure threshold of $120,000.  *See TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, n.10 (1976) (SEC's view of the threshold for civil liability relevant to materiality); *see also Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 941 (C.D. Cal. 2012) ("[c]ommon sense dictates that [disclosure of RPTs] is material information and indeed, Regulation S–K devotes an entire section and notes that it is one of the core disclosures that companies have to report."); *Nat. Health Trends Corp.*, 540 F. Supp. 2d at 712 (disclosure of material RPTs "essential" information for investors).  Moreover, the relative value of the concealed RPTs makes them presumptively material information: the RPTs involving Langan and Anakar alone accounted for about 5.2% of RCI's net income in 2016 and 7% in 2017.  *See* ¶¶76-77 and Ex. 3; SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150, 45151 (Aug. 19, 1999) (5% of net income is presumptively material).  By the restatement, Defendants also admit that they materially misstated Langan and Reese's compensation by omitting their personal use of the RCI jet in fiscal 2016 and 2017, and underreporting their use in fiscal 2018, in violation of Regulation S-K Item 402 (17 C.F.R. §229.402) ("Item 402").  Mot. 8. In fact, Langan's undisclosed compensation exceeded 5% of his salary each year.  ¶¶100, 125.  For these misstatements, the only question is whether Plaintiffs pled scienter.  *See Wu Winfred Huang v. EZCORP, Inc.*, 259 F. Supp. 3d 563, 574 (W.D. Tex. 2017) (addressing only scienter where

6

falsity conceded in, *inter alia*, company's 8-Ks and restatements).

Defendants rely on inapposite cases that do not involve a restatement to argue immateriality here.  Mot. 14 n.5 (citing *In re Francesca's Holdings Corp. Sec. Litig.*, 2015 WL 1600464, at *4 (S.D.N.Y. Mar. 31, 2015) (no restatement and offering documents in fact *disclosed* RPTs); *In re China Valves Tech. Sec. Litig.*, 2012 WL 4039852, at *7 (S.D.N.Y. Sept. 12, 2012) (no restatement, and unclear when or whether loan at issue was collected); *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 658 (4th Cir. 2004) (no restatement, no omitted RPT, and holding whether CEO actually obtained a B.A. in economics is immaterial)).

**B.**      **Defendants Failed to Disclose Material Transactions With Tannos Construction**

Defendants also violated Item 404 by failing to disclose RCI's transactions with Tannos Construction in their public filings.  Item 404 requires public companies to disclose transactions where they are "a participant and the amount involved exceeds $120,000, and in which any related person had or will have a direct or ***indirect material interest***."  17 C.F.R. §229.404(a).  The SEC stated when adopting the most recent amendments (2006) to Item 404 that "[t]he materiality of any interest will continue to be determined on the basis of the significance of the information to investors in light of all the circumstances" and that "the relationship of the related persons to the transaction…the importance of the interest to the person having the interest and the amount involved in the transaction are among the factors to be considered in determining the materiality of the information to investors."  Sec. Act Release 8732A, 71 Fed. Reg. 53158, at 53198.

Here, Langan had an indirect material interest in RCI's transactions with Tannos Construction due to Langan's involvement in at least five Tannos Land Holdings entities, one of which owned a $10 million-dollar project.  ¶¶40, 50-51.  Accordingly, "the importance of the interest" to Langan was clearly high.  Further, the "amount involved in the transaction[s]" between RCI and Tannos Construction was material. Tannos Construction built RCI's new headquarters in

7

2016, and at least four Bombshells and at least one Nightclub location from 2017 to 2018. ¶¶110, 114, 116.  Given Langan's substantial entangled financial interests with Tannos, and the potential conflict of interest those entanglements presented, Item 404 required the disclosure of those transactions due to the "significance of the information to investors in light of all the circumstances."  Item 404; *Barrie v. Intervoice-Bright, Inc.,* 397 F.3d 249, 257 (5th Cir. 2005) (defendants' fact-based arguments insufficient to support a motion to dismiss).

Langan's generic descriptions of Tannos as only "a contractor that does some contracting work for us," and his own affiliation with Tannos as "I've made some investments, but that's about the end of it…there's nothing to tell," also were materially false and misleading. ¶¶51, 117.  In response to direct analyst inquiry, Langan misleadingly downplayed (1) the size and frequency of the projects Tannos Construction performed for RCI; and (2) Langan's own affiliation with the Tannos companies, thereby concealing his potential conflict of interest from investors. *Shankar v. Imperva, Inc.*, 2016 WL 2851859, at \*6-\*7 (N.D. Cal. May 16, 2016) (evasive and incomplete responses to direct analyst questions misleading).

### C.       Defendants' Misleading Statements And Omissions Regarding Internal Controls

The Complaint sufficiently alleges that Defendants' SOX certifications are false and actionable.  In RCI's Class Period Form 10-Ks and 10-Qs, Langan and Marshall certified that they had disclosed all significant deficiencies and material weaknesses in the design or operating of internal control over financial reporting, as well as any fraud that involved management or other employees with a significant role in RCI's internal control over financial reporting.  ¶¶127-141. Despite these specific reassurances, Defendants failed to disclose material weaknesses regarding RPTs and reporting executive compensation, which Defendants exploited for their own benefit and for their family and close business associates.  ¶¶60-87.  Defendants' failure to disclose known material weaknesses in RCI's internal controls in their SOX certifications is actionable.  *See In re*

*OCA, Inc. Sec. & Derivative Litig.*, 2006 WL 3747560, at \*16 (E.D. La. Dec. 14, 2006) (SOX certifications actionable where defendants failed to disclose weaknesses in internal controls); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 258 F. Supp. 2d 576, 588 n.7 (S.D. Tex. 2003) (SOX disclosure requirements are "broader than" GAAP and require "a materially accurate and complete picture of an issuer's financial condition").[3]

Defendants also misled investors about the remedial measures the Company was taking to address its weak internal controls.  ¶¶133-141.  While Defendants assured investors that RCI was remediating its internal control problems during the Class Period, Defendants continued to exploit RCI's weak internal controls, allowing, *inter alia*, **more** RPTs to go undisclosed.  Defendants' actions materially contradicted their public assertions, and such misleading statements are actionable.  *See OCA*, 2006 WL 3747560, at \*15-16 (defendants' repeated assurances that the company was taking steps to enhance its internal controls were misleading because the opposite was true).  Indeed, even *after* the Special Committee concluded RCI needed to adopt an amended RPT policy strengthening the review process by the audit committee with respect to RPTs and employment of family members, Defendants' new auditor expressed an adverse opinion on RCI's internal controls over financial reporting as of September 30, 2019, finding material weaknesses *still* existed in the areas of "management review of financial statement information, independent review of journal entries, **disclosure of related party transactions** and accounting for loss contingencies."  ¶107.

## V.    THE COMPLAINT ALLEGES SCIENTER

To plead scienter, a complaint must state facts giving rise to the strong inference that

---

[3] Moreover, Defendants do not dispute Langan and Marshall's knowledge of the subject RPTs; given their contemporaneous knowledge of the transactions, Defendants' suggestion that Plaintiffs allege mere fraud by hindsight (Mot. 10-11) is untenable.

defendants acted "intentionally or with severe recklessness."  *Lormand*, 565 F.3d at 252.  The scienter inquiry is holistic, "whether all of the facts alleged, taken collectively, give rise to a strong plausible inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Id.* at 251.  Allegations of circumstantial evidence, therefore, may suffice to justify a strong inference of scienter.  *Id.*  "*[A] tie favors the plaintiff*" with competing inferences of scienter on a motion dismiss.  *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 686 (5th Cir. 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).

### A.    Defendants Acted Intentionally or Recklessly

A wealth of case law supports a finding that Defendants' failure to disclose RPTs that they had knowledge of gives rise to a strong inference of scienter.  For example, the court in *Natural Health Trends* inferred the defendant CEO's scienter based on his knowing failure to disclose a $256,000 loan from the defendant company to an entity controlled by the CEO's parents.  540 F. Supp. 2d at 712-13.  Other courts have similarly inferred scienter from a CEO's failure to disclose RPTs between the defendant company and a company controlled by the CEO or his family members.  *See Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1124 (C.D. Cal. 2012) (scienter where CEO signed statements omitted information that his son would benefit from transactions and noting "[i]t is natural to conclude that an executive is aware of the business dealings of his own son, particularly when those dealings were with the executive's own company"); *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2013 WL 2247394, at *17 (C.D. Cal. May 9, 2013) (scienter inferred from CEO signing financial statements that omitted transactions between defendant company and CEO's other companies).  Defendants cite *Rok v. Identiv*, 2017 WL 35496 (N.D. Cal. Jan. 4, 2017) to argue against scienter (Mot. 14), but *Rok* did not address nondisclosure of an RPT.

Defendants attempt to excuse Langan and Marshall's conceded knowledge of the subject

10

RPTs by arguing that it "would not be evident to layperson that there were disclosable 'transactions' under Item 404 at all" because they were not "discrete, one-time events."  Mot. 7. *First*, Defendants' position that the instructions of Item 404 would lead someone to believe that RPTs are limited to "one-time events" is simply not supported, and, if adopted, would actually encourage companies to skirt RPT disclosure requirements concerning ongoing transactions that are even more susceptible to abuse.  *See* 17 C.F.R. §229.404, Instruction 2 ("a transaction includes, but is not limited to, any financial transaction, arrangement or relationship (including any indebtedness or guarantee of indebtedness) or any series of similar transactions, arrangements or relationships."); *Natural Health Trends*, 540 F. Supp. 2d at 713 ("[t]he definition of a related-party transaction is clear" and a person in defendants' "positions need not have memorized the language of Item 404 to have understood the nature of these transactions and that they should have been disclosed.").  Here, the violation was so clear RCI had to restate three years of its SEC filings.

*Second*, Langan and Marshall are ***not*** laypersons.  Langan was RCI's CEO for 16 years prior to the Class Period and doubled as RCI's CFO for 8 of those years.  ¶38.  Marshall is a CPA with extensive experience prior to working for RCI, including serving as an audit partner at KPMG and partner in charge of audit practice at Jackson & Rhodes in Dallas.  ¶41.  *In re Paincare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283, 1293 (M.D. Fla. 2008) ("experience and accounting backgrounds" of CEO and CFO supported inference of scienter).  Defendants suggest that despite their deep experience, they were unaware of SEC reporting requirements and, thus, did not act with scienter.  Mot. 6-7 (citing *In re ZAGG Inc. S'holder Derivative Action*, 826 F.3d 1222 (10th Cir. 2016) and *Schott v. Nobilis Health Corp*, 211 F. Supp. 3d 936, 952-56 (S.D. Tex. 2016)).  These cases are inapposite; neither involves RPTs.  In *Schott*, the court found scienter lacking because the alleged improper accounting did not benefit the defendant or consistently line up with a motive.  211 F. Supp. 3d at 954-55.  By contrast here, Defendants had clear benefit and motive

11

to omit the RPTs. *ZAGG* is a derivative case, and unlike here, the complaint did not allege facts providing an indication as to why the defendants would have perceived accounting irregularities or how the information that would have come to their attention.  826 F.3d at 1235.

*Third*, the 10-Ks and 2017 Proxy Statement signed by Langan and Marshall state that RPTs are reviewed "in light of the affiliations of the director, officer, or employee and *the affiliations of such person's immediate family*."  Wolke Decl. Ex. 1-4.  This review, if performed, would have revealed transactions benefitting Langan's father and brother, and Defendant Anakar's brother, thereby exposing Defendants' self-dealing and knowing failure to pursue arm's-length transactions to siphon off corporate funds to family and friends.  Instead, Defendants purposely concealed these transactions from investors.  *See In re Enron Corp.*, 2003 WL 21418157, at *18 (S.D. Tex. Apr. 24, 2003) (defendant's affirmations that he consistently reviewed RPT disclosures while simultaneously allowing numerous RPTs to go undisclosed contributed to scienter).

*Fourth*, the 2017 Proxy Statement and 2017 and 2018 10-Ks *did* disclose Langan's personal guarantees of RCI's commercial bank indebtedness under Item 404, completely discrediting Defendants' ignorance argument.  ¶¶111, 113, 115; *Nat. Health Trends Corp.*, 540 F. Supp. 2d at 713 (compliance with Item 404 on other occasions supported an inference of scienter). This underscores Defendants' awareness of their RPT disclosure obligations, but that they chose to reveal the one RPT that cast Langan in a favorable light to investors, and concealed others that would have revealed apparent conflicts of interest, thus adding to a strong inference of scienter.

Similarly, Langan's and Marshall's signed SEC filings show that they knowingly or recklessly failed to disclose Langan and Reese's RCI jet use as compensation under Item 402.  The 10-Ks attest that they "reflect[] all forms of compensation" and include charts with automobile expenses.  ¶¶119,123.  The 2017 Proxy statement said that RCI "*does not provide named executive officers with any significant perquisites or other personal benefits except for an automobile*..."

12

¶121.  No reasonable corporate executive could read those attestations to allow the omission of personal use of a corporate jet.  Indeed, Langan signed the 2017 Proxy Statement specifically attesting that no other significant perqs existed, while knowing that statement was untrue (because Langan himself was using the jet).  This supports scienter.  *Cf. In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 724 (W.D. Tex. 2010) (defendants' knowledge of facts contrary to SOX certification contribute to scienter).  While Defendants argue scienter is lacking because they disclosed a fraction of 2018 jet use (Mot. 8-9), their partial disclosure—which continued to omit 2017 and 2016 usage and materially downplayed the perq's value in 2018 (and its cost to RCI and shareholders)—only reinforces the inference of intentional or reckless failure to disclose.  ¶125.

Additionally, Langan and Marshall executed SOX certifications for each 10-K that attested Defendants did not omit any material facts.  ¶¶128, 135, 141.  Defendants concede the 10-Ks did not comply with GAAP.  Mot. 5.  The law is clear that SOX certifications "contribute significantly" to scienter if defendants had "reason to know or suspect the financial statements they were then signing contained material misrepresentations or omissions."  *ArthroCare*, 726 F. Supp. 2d at 724; *see also Parmelee v. Santander Consumer USA Holdings, Inc.*, 2018 WL 276338, at *4 (N.D. Tex. Jan. 3, 2018) (errors in basic GAAP principles contributed to a strong inference of scienter).[4]

Langan's knowing failure to disclose RCI's material transactions with Tannos Construction further supports scienter.  Langan's extensive ties to Tannos reinforces his pattern of abusing his position as CEO for self-dealing, and undermines Defendants' claim that failure to disclose RPTs and compensation was inadvertent.  While Defendants argue that Langan disclosed that he invested in Tannos businesses (Mot. 15), they ignore the Complaint's allegations that he materially downplayed his involvement and thus misled investors as to his potential conflict of

---

[4] Additionally, Defendants' failure to disclose Jenkins' bankruptcies under Item 401, even though Jenkins was an RCI Board member at the time and the bankruptcies were publicly filed, supports the inference that Langan and Marshall were, at minimum, severely reckless when certifying.

13

interest during the December 31, 2018 earnings call.  *In re Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 653 (E.D. Penn. 2015) ("maybe the most powerful evidence of scienter is the content and context" of defendants' statements "in response to analyst… questions").[5]

Finally, corporate defendant RCI acted with scienter because Langan and Marshall's scienter along with each high-ranking officer or director,[6] is imputable to the Company.  *See Nat. Health Trends Corp.,* 540 F. Supp. 2d at 714 (imputing scienter to corporation in RPT case).

### B.    BDO's Resignation Further Supports Scienter

An outside auditor's resignation "add[s] to the overall pleading of circumstantial evidence of fraud."  *Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 233 (S.D.N.Y. 2008); *see also In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1358 (S.D. Fla. 2005) ("auditor resignations" supported scienter).  RCI admitted BDO resigned because the Special Committee had "not taken timely and appropriate remedial action in response to certain deficiencies…in the internal review."  ¶96.  BDO's *first* reason listed for resigning, "undue restriction on the scope of the internal review," shows that RCI thwarted its investigation.  *Id.* Defendants erroneously claim that BDO resigned for "idiosyncratic" reasons by solely focusing on BDO's *fifth* reason—RCI did not waive privilege.  *Id.*; Mot. 16.[7]  Defendants' obstruction of BDO's investigation supports the inference that their disclosure failures were intentional.

BDO's resignation stemmed from its conflicts with RCI during BDO's brief tenure as RCI's auditor, not, as Defendants argue, simply because BDO disagreed with RCI on how to

---

[5] Defendants also misrepresent Complaint Ex. A.  Mot. 15.  *RCI* did not post pictures of Tannos construction projects for RCI on its website.  *Tannos* posted them on *its* website and social media.

[6] As members of RCI's Audit Committee, Anakar and Jenkins reviewed RCI's public filings. Anakar surely knew that his brother had an undisclosed lucrative salary and Jenkins obviously knew that RCI had failed to disclose his bankruptcies.  ¶156.

[7] Defendants' assertion that BDO was "presumptuous" is illogical.  Mot. 16.  Defendants' claim that BDO may have known about the RCI's disclosure failures at the time of the 2017 and 2018 audits is implausible, as it is highly unlikely that BDO would have knowingly allowed RCI to file false statements with the SEC.

conduct an internal investigation.  BDO found weaknesses in RCI's internal controls in 2017 and 2018—BDO's two years as auditor—and then quit when the Company thwarted its investigation.  ¶¶93, 96; Ex. 3.  "Poor internal controls over a sustained period of time" alone support scienter.  *In re Cannavest Corp. Sec. Litig.,* 307 F. Supp. 3d 222, 246 (S.D.N.Y. 2018).  Notably, RCI's new independent auditor expressed an adverse opinion regarding RCI's internal controls for fiscal 2019 after the Special Committee concluded its internal review.  ¶107.

### C.      A "Holistic Review" Supports a Strong Inference of Scienter

Despite virtually uncontested allegations that Defendants knowingly or recklessly made material misstatements, Defendants argue that the Complaint does not plead scienter under a holistic analysis.  Defendants' argument is wrong: the allegations and omissions they point out do nothing to undermine the inference scienter and, in fact, actually support the case for scienter.

Defendants contend that RCI's disclosure of some internal weaknesses in the 2017 and 2018 10-Ks weighs against scienter.  Mot. 14-15.  Defendants did disclose some internal control deficiencies, but they concealed RCI's ongoing weakness related to reporting RPTs.  *See* Sec. I.C., *supra*; *City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*, 2013 WL 1100819, at *4 (W.D. La. Mar. 15, 2013) (defendants' signed certifications falsely attesting to company's internal controls contributed to holistic inference of scienter).[8]  The inference is strengthened by the fact that after Defendants allegedly undertook a deep review of RCI's internal controls and reporting requirements, they *still* omitted known ongoing weaknesses related to reporting RPTs.  ¶¶88-93.

The Court should not consider Defendants' improper factual assertion that they took steps to address RCI's internal control deficiencies (Mot. 15) on a motion to dismiss.  Drawing all reasonable inferences in Plaintiffs' favor, the Complaint properly alleges that Defendants made

---

[8] Defendants' cited cases are irrelevant because they do not stand for the proposition that disclosing negative information unrelated to the case weighs against scienter.  Mot. 14.

misleading statements about the remedial actions they were taking (*see* Sec. I.C, *supra*), which further supports a strong inference of scienter. *See OCA*, 2006 WL 3747560, at *19.

In addition, Defendants are under SEC investigation relating to the very facts alleged in the Complaint. While Defendants tout RCI's supposed "voluntary" disclosure of the SEC inquiry (Mot. 15), they only did so after news of the investigation was leaked on the internet (¶94). Moreover, the SEC converted its inquiry into a formal investigation that is still pending. ¶¶94, 104-05. Although a government investigation alone does not establish scienter, it contributes to the circumstances that add up to a strong inference of scienter. *See ArthroCare*, 726 F. Supp. 2d at 707 (SEC inquiry transitioning from informal to formal supported holistic finding of scienter).

Finally, it is well established that scienter does not depend on insider selling allegations (Mot. 13), especially where, as here, the Complaint alleges Defendants admit their statements were false. *See Tellabs*, 551 U.S. at 325 (motive allegations unnecessary); *see also Nat. Health Trends Corp.*, 540 F. Supp. 2d at 713 (strong inference of scienter, absent allegations of insider sales, because "implausible" defendants were unaware of undisclosed RPTs involving family members).

## VI.    CONCLUSION

For the reasons set forth above, Defendants' motion should be denied. If the Court is inclined to grant Defendants' motion, Plaintiffs respectfully request leave to amend to cure any pleading deficiencies.

Dated: June 23, 2020                    Respectfully submitted,

By: /s/ *Kara M. Wolke*
Kara M. Wolke (*pro hac vice*)
**Glancy Prongay & Murray LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorney-In-Charge for Plaintiffs and the Class*

16

## CERTIFICATE OF SERVICE

I certify that on June 23, 2020, a copy of this document was served on all counsel of record by operation of the Court's electronic filing system.

*s/ Kara M. Wolke*
Kara M. Wolke
