# EXHIBIT C

2020 WL 5105243
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States District Court, D. New Jersey.

Tracy VANDERHOEF, Individually and On
Behalf of All Others Similarly Situated, Plaintiffs,

v.

CHINA AUTO LOGISTICS INC., Tong
Shiping, and Wang Xinwei, Defendants.

Case No. 2:18-cv-10174
|
Filed 08/31/2020

**OPINION**

CLAIRE C. CECCHI, U.S.D.J.

 **\*1** Before the Court is Defendant China Auto Logistics
Inc.'s ("Defendant" or "CALI") motion to dismiss the
amended class action complaint pursuant to Rule 12(b)(6)
of the Federal Rules of Civil Procedure and the Private
Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–
4 (the "PSLRA"). ECF No. 32. Lead Plaintiffs Zhengyu
He, Harold Brooks Moss, and Andrew Pagliara ("Plaintiffs")
opposed the motion (ECF No. 38) and Defendant replied
(ECF No. 40). The motion is decided without oral argument
pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth
below, Defendant's motion to dismiss (ECF No. 32) is
DENIED. The amended complaint also includes individual
defendants [1] Tong Shiping, Wang Xinwei, and Cheng
Weihong ("Individual Defendants"), and Howard Barth, Lv
Fuqi, Yang Lili, and Bai Shaohau ("Director Defendants"),
who have filed another motion to dismiss (ECF No. 93),
which the Court will handle separately.

## I. BACKGROUND

Plaintiffs filed this federal securities class action in the United
States District Court for the District of New Jersey on June 5,
2018. ECF No 1. Plaintiffs allege Defendant violated § 10(b)
and Rule 10b-5 of the Securities Exchange Act of 1934 (the
"Exchange Act") by not disclosing related party transactions
to shareholders, who then suffered losses when the alleged
misconduct surfaced and CALI's stock price fell. *See* ECF No.
17 ¶¶ 1–3.

Defendant CALI sells and trades imported automobiles in the
People's Republic of China ("PRC"). ECF No. 17 at ¶ 24.
CALI has consistently reported over $400 million in annual
revenue from the sale of imported cars and related activities.
Id. at ¶ 42. Despite such a high volume of sales, CALI's
operating margins fell below 1% in 2015 and 2016. Id.

In 2016, CALI's SEC filings showed CALI's two major
customers were Tianjin Jing Dian Automobile Sales
Information Ltd. Co. ("Jing Dian") and Tianjin Binhai
International Automall Ltd. Co. ("Binhai"). Id at ¶ 44. Jing
Dian accounted for over $100 million of CALI's total net
revenue in 2016 and Binhai accounted for over $70 million.
Id. at ¶ 87. Additionally, SEC filings showed CALI's two
major suppliers in 2016 were Tianjin Shi Mao International
Trading Ltd. Co. ("Shi Mao") and Tianjin Ying Zhi Jie
International Logistics Ltd. Co. ("Ying Zhi Jie"). Id. at ¶
47. Shi Mao accounted for over $74 million of CALI's net
purchases in 2016 and Ying Zhi Jie accounted for over $55
million. Id. at ¶ 90. Plaintiffs' contend that Jing Dian, Binhai,
Shi Mao, and Ying Zhi Jie were all related parties to CALI
and transactions involving these parties were material. Id. at
¶¶ 45–49,167. Plaintiffs' allege CALI did not disclose this
information. Id. at ¶ 86.

On April 2, 2018, CALI reported on a Form NT 10-
K that extra time was needed to identify certain related
party transactions. Id. at ¶ 128. The disclosure identified
material weakness in internal controls and procedures over
determining and reporting certain relationships and related
transactions. Id. Such disclosure resulted in a 19% drop
in CALI shares. Id. at ¶ 129. Then on April 10, 2018,
CALI revealed in a Form 8-K that an investigation into
alleged fraudulent activity would be initiated. Id. at ¶ 131.
CALI's release stated it intended to cooperate fully with
the investigation. Id. However, Plaintiffs assert on July 27,
2018 it was disclosed that CALI was actively impeding
the investigation. Id. at ¶ 145. When NASDAQ discovered
CALI had not complied with the investigation, CALI shares
were delisted from the exchange. Id at ¶ 147. When trading
resumed on the gray market, CALI's stock price had dropped
by over 70%. Id. at ¶ 149.

## II. LEGAL STANDARD

 **\*2** For a complaint to survive dismissal pursuant to Federal
Rule of Civil Procedure 12(b)(6), it "must contain sufficient
factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "A pleading that offers labels and conclusions will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated ... Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' " Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

### III. DISCUSSION

Defendant filed a motion to dismiss arguing that a violation of securities fraud was not properly alleged because: (1) scienter was not adequately asserted as to the "Individual Defendants"; (2) scienter was not properly imputed to CALI; (3) loss causation was not properly alleged; and (4) the allegations only support a derivative claim. ECF No. 32 at 12, 17, 20. The Court will discuss each argument in turn.

### A. The Allegations Support a Strong Inference of Scienter as to the Individual Defendants

To state a viable claim for securities fraud under § 10(b) and Rule 10b-5, Plaintiffs must properly plead: "(1) a material misrepresentation or omission ...; (2) scienter (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 37–38 (2011) (citation omitted). Claims brought under § 10(b) and Rule 10b-5 are subject to the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA")

and Fed. R. Civ. P. 9(b), which requires allegations of fraud to be stated with particularity. 15 U.S.C. § 78u-4(b).

To establish scienter, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 879 (3d Cir. 2018) (citing § 78u–4(b)(2)(A)). Alleging facts that constitute circumstantial evidence of either reckless or conscious behavior is sufficient. See In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534–35 (3d Cir. 1999). A "strong" inference of scienter must be "more than merely plausible or reasonable-- it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007). However, an inference of scienter does not need to be irrefutable. Id. at 324.

Here, Defendant only challenges the elements of scienter and loss causation. Defendant argues that Plaintiffs' amended complaint is devoid of "facts from which the Court can derive a strong inference that the Individual Defendants had actual knowledge that the related party transactions were substantial enough to be deemed material and thus required disclosure, or that the danger of misleading an investor was so obvious that the individuals must have been aware of it." ECF No. 32-1 at 20. Defendant also argues that "the omitted information is not alleged to have had any [e]ffect on CALI's financial results" and therefore, the Plaintiffs cannot show the alleged omissions posed an obvious danger of misleading investors. Id.

**\*3** The facts alleged taken collectively give rise to a strong inference of scienter. See Tellabs I, 551 U.S. at 310 ("The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."). Plaintiffs assert that the related party transactions between CALI and its two major customers, Jing Dian and Binhai, accounted for over $100 million and over $70 million of CALI's 2016 net revenue respectively. ECF No. 17 ¶ 87. Similarly, the alleged related party transactions between CALI and its two major suppliers, Shi Mao and Ying Zhi Jie, accounted for over $74 million and over $55 million of CALI's purchases in 2016 respectively. Id. at ¶ 90. These facts suggest the Individual Defendants either knew the related party transactions were material and needed to be appropriately disclosed or were at least

reckless in failing to do so. See S.E.C. v. China Northeast Petroleum Holdings Ltd., 27 F.Supp.3d 379, 389 ("When a plaintiff pleads that a defendant raised shareholder money using misleading documents and then partook in a series of undisclosed related-party transactions, 'the inference that [the defendant] did so with fraudulent intent is not merely strong, it is inescapable.' ") (quoting In re Advanced Battery Techs., Inc. Sec. Litig., 2012 WL 3758085, at *11 (S.D.N.Y. Aug. 29, 2012)). Additionally, the amended complaint alleges CALI's fraudulent scheme resulted in decreased operating margins. Id. at ¶¶ 42, 43, 62. Decreased operating margins caused by fraud support an inference of scienter. See Institutional Inv'rs Grp. v. Avaya, Inc., 564 F.3d 242, 271 (3d Cir. 2009) (finding contracting operating margins to support an inference of scienter in a shareholder securities action). Further, Plaintiffs allege the Individual Defendants took steps to impede the internal investigation into related party transactions. ECF No. 17 ¶¶ 138, 140. Attempts to cover up fraud demonstrate a high degree of scienter. See S.E.C. v. Desai, 145 F.Supp.3d 329, 337 (D.N.J. 2015). Therefore, scienter is sufficiently alleged.

**B. The Amended Complaint Sufficiently Imputes Scienter to CALI**

To impute the fraud of an officer to a corporation, the alleged fraud must be committed in the officer's course of employment and for the benefit of the corporation. Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 358 (3d Cir. 2001). According to the adverse interest exception, allegedly fraudulent conduct will not be imputed to a corporation "if the officer's interests were adverse to the corporation and not for the benefit of the corporation." Id. at 359 (citation omitted). However, the Third Circuit recognizes imputation can still be appropriate when an employee is acting solely for his own benefit, as long as the employee's acts fall within his actual or apparent authority. Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 496 (3d Cir. 2013) ("a swindler may still act with apparent authority, even if he is acting for his own benefit."). The "underlying purpose of imputation" is "fair risk-allocation, including the affordance of appropriate protection to those who transact business with corporations." Id. When the officer of a company commits fraud, the "principal who has placed the agent in the position of trust and confidence should suffer, rather than an innocent stranger." Id. at 494–95

(quoting Aiello v. Ed Saxe Real Estate, Inc., 508 Pa. 553, 559 (1985)).

CALI argues Plaintiffs have failed to impute scienter. ECF No. 32-1 at 19–20. However, in Carmack v. Amaya, Inc., this District found the adverse interest exception does not apply where an officer put a company at risk of regulatory backlash when the fraud was committed for personal benefit. Carmack v. Amaya, Inc., 258 F.Supp.3d 454, 468 (D.N.J. 2017). The Court reasoned the company ultimately benefited from the officers misleading statements, which attracted investors and prevented a decrease in stock price. Id. Even when one places the company at risk of harm, "the company should not benefit at the detriment of the innocent third party." Id. at 468–69. Here, Plaintiffs allege misleading statements and omissions, which benefited CALI by artificially inflating the price of its stock. ECF No. 17 ¶ 167.

Further, CALI argues Carmack and Belmont are distinguishable from the case at hand because it received no benefit from the alleged fraud. ECF No. 40 at 10. As discussed above, it is alleged that CALI received a benefit from the alleged fraud. See ECF No. 17 ¶ 167. Defendant also argues Belmont is distinguishable because the amended complaint states management was an active participant in the fraud and it is not alleged Defendant was on notice of the alleged fraud. ECF No. 40 at 9. However, notice is imputed to a company when necessary to protect the rights of a third party who dealt with the principal in good faith. In re ChinaCast Educ. Corp. Sec. Litig., 809 F.3d 471, 476 (9th Cir. 2015) (citing Restatement (Third) of Agency § 504 (2006)). Thus, arguing CALI was not on notice of the alleged fraud does not relieve Defendant of liability. Additionally, the assertion by Defendant that this case is distinguishable because CALI management is alleged to have taken part in the fraud (ECF No. 40 at 9) is not helpful. If anything, it strengthens the position that the rights of innocent investors should be protected. Therefore, the allegations adequately impute scienter to CALI.

**C. Loss Causation Is Sufficiently Alleged**

**\*4** The loss causation element of a § 10(b) claim is not subject to the heightened pleading requirements of Fed. R. Civ. P. 9 (b) and the PSLRA. Marsden v. Select Med. Corp., No. CIV.A. 04-4020, 2007 WL 1725204, at *1 (E.D. Pa. June 12, 2007). To adequately allege loss causation a plaintiff must show there was a misrepresentation or omission that affected the market price of a security and that plaintiff

suffered subsequent economic loss. In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig., 2011 WL 3444199, at *29 (D.N.J. Aug. 8, 2011). Specifically, "the plaintiff must show that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff." Id. at *29 (quoting McCabe v. Ernst & Young, LLP, 494 F.3d 418, 424 (3d Cir. 2007)). Such an inquiry may be highly factual and is "often unsuited to disposition based on the pleadings alone." Id.

Loss causation is properly alleged "if it meets Rule 8(a)'s standard by giving a 'short and plain statement' of economic loss and its causal connection to the alleged misrepresentations and/or omissions." Id. (quoting Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341–42 (2005)). A plaintiff does not need to allege a specific corrective disclosure to properly allege loss causation. Marsden, 2007 WL 1725204, at *2 n.7. This District has recognized that loss causation "can be predicated on a series of partial corrective disclosures ... each of which partially revealed the truth." Merck, 2011 WL 3444199, at *31.

Defendant asserts the statements do not identify "any actionable misrepresentation or omission that can be tied to the losses which Plaintiffs claim to have suffered because the statements do not 'reveal' any fraudulent practices." ECF No. 32-1 at 22. Defendant argues even when the partial corrective disclosures are taken together, they do not reveal an actionable misrepresentation or omission since they do not reveal a previously undisclosed truth. ECF No. 40 at 12. Additionally, Defendant argues that even if statements released were of a type that could establish loss causation, "they are all too remote from the alleged harm." ECF 32-1 at 25.

A corrective disclosure only needs to relate to the same subject as the misrepresentation and there is no requirement that the disclosure mirror the earlier misrepresentation. Marsden, 2007 WL 1725204, at *2 n.7. Plaintiffs satisfy this standard by alleging CALI's corrective disclosures were related to earlier misrepresentations. See ECF No. 17 ¶¶ 7–15. These disclosures are alleged to reveal previously undisclosed information regarding CALI's financial condition. Id. at ¶ 175. The disclosures, taken together, support the claim that CALI had engaged in previously undisclosed related party transactions and had misrepresented CALI's cooperation with an ongoing investigation. Id. at ¶¶ 128,133. Such allegations are actionable when disclosure of the information results

in economic loss and economic loss is alleged here. See Freudenberg v. E*Trade Fin. Corp., 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010) (discussing that the relevant truth required under Dura is not that a fraud was committed per se, but that the truth about the company's underlying condition, when revealed, causes the economic loss); see also ECF No. 17 ¶¶ 129, 135, 149.

Additionally, Plaintiffs' allegations are of a type that could establish loss causation and are not too attenuated. The amended complaint delineates company disclosures, alleges such disclosures revealed previously undisclosed information, and then cites to drops in CALI's stock price as a result. See ECF No. 17 ¶¶ 128–29. This is sufficient to plead loss causation. See Dura, 544 U.S. at 346–47 (stating a plaintiff only needs to plead a short and plain statement providing Defendant with some indication of the loss and causal connection plaintiff has in mind); see also Semerenko v. Cendant Corp, 223 F.3d 165, 184 (3d Cir. 2000) ("where the claimed loss involves the purchase of a security at a price that is inflated due to an alleged misrepresentation, there is a sufficient causal nexus between the loss and the alleged misrepresentation to satisfy the loss causation requirement."). Therefore, Plaintiffs have sufficiently alleged loss causation.

**D. The Allegations are Sufficient to Support a Claim for Securities Fraud**

**\*5** A breach of fiduciary duty is not actionable under § 10(b) and Rule 10b-5 of the Exchange Act absent deception, misrepresentation, or nondisclosure. Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 476 (1977). While "allegations of failure to disclose mismanagement alone do not state a claim under federal securities law, a claim that defendants failed to disclose material facts may be actionable." Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 639 (3d Cir. 1989). "An omitted fact is material if there is a 'substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.' " Id. (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 1976)).

CALI argues "Plaintiffs' claims are premised on the proposition that the Individual Defendants diverted the profits and assets of CALI to themselves, and thereby deprived CALI of such profits and assets." ECF No. 32-1 at 13.

Defendant argues that such claims cannot be brought in a direct shareholder action because, "at best," they amount to no more than corporate mismanagement Id. at 13–14. However, while Plaintiffs acknowledge diversion of revenue from CALI to its executives supports a derivative claim for breach of fiduciary duty (ECF No. 38 at 13), these are not the claims pleaded. See ECF No. 17 ¶¶ 166–68. Instead, Plaintiffs allege CALI made misleading misrepresentations and omissions of material fact in their public filings in violation of SEC regulations, which induced Plaintiffs to purchase CALI stock at artificially inflated prices. ECF No. 17 ¶ 167. Allegations of material misrepresentation in violation of SEC regulations are actionable under § 10(b) and Rule 10b-5. See Bogart v. Nat'l Cmty. Banks, Inc., 1992 WL 203788, at *6 (D.N.J. Apr. 25, 1992) (finding material misrepresentations and omissions amount to more than corporate mismanagement and are actionable for securities fraud); see also In re Midlantic Corp. S'holder Litig., 758 F. Supp. 226, 234 (D.N.J. 1990) (finding Santa Fe does not bar a securities fraud claim where defendants have engaged in conduct forbidden by statute).

Further, Defendant argues that Plaintiffs overstate the "incremental value" of the alleged nondisclosure(s). ECF No. 40 at 4. Defendant also contends that the "incremental value" of such disclosure(s) would be "solely to place investors on notice" of potential culpability for a "breach of faith." Id. Defendant's argument is without merit. Here, accurate disclosures could have alerted investors to multi-million dollar related party transactions. See S.E.C. v. China Northeast Petroleum Holdings Ltd., 27 F.Supp.3d 379, 391 (finding it "hard to imagine" a "reasonable investor" would find 176 related party transactions totaling approximately $59 million "not to be important"). This alleged omitted information amounts to more than just placing investors on notice of mismanagement. See In re Tyco Int'l, Ltd., 2004 WL 2348315, at *4 (finding undisclosed related party transactions transferring hundreds of millions of dollars from Tyco to the individual defendants to be material and more than mere mismanagement). Therefore, Plaintiffs sufficiently allege a claim for securities fraud.

### IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss the amended class action complaint (ECF No. 32) is **DENIED.** An appropriate Order accompanies this Opinion.

**All Citations**

Slip Copy, 2020 WL 5105243

## Footnotes

1    In the opposition papers, Defendant also includes Director Defendants in its definition of "Individual Defendants." ECF No. 32-1 at 3 n.2. The Court uses the definition given in the amended complaint.

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.