United States District Court
Southern District of Texas
ENTERED
March 31, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARI HOFFMAN, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-1841 |
| | § | |
| RCI HOSPITALITY HOLDINGS, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court are Defendants' Motion to Dismiss Lead Plaintiffs' Amended Class Action Complaint (Doc. #37), Plaintiffs' Response (Doc. #38), and Defendants' Reply (Doc. #41). Having reviewed the parties' arguments and applicable legal authority, the Court denies the Motion.

## I. Background

This case involves a federal securities class action brought by lead plaintiffs[1] Roger DeMaggio, Patrick Prahl, Justin Kinslow, Joseph Milo, and Edgar Kee ("Plaintiffs") on behalf of all persons and entities who purchased or otherwise acquired RCI Hospitality Holdings, Inc. ("RCI") securities between December 13, 2016 and July 18, 2019 (the "Class Period"). Doc. #27 ¶ 1. RCI is a publicly traded holding company that operates live adult entertainment businesses ("Nightclubs") and bar-restaurant establishments ("Bombshells"). *Id.* ¶¶ 2, 37. Defendant RCI's officers and directors during the Class Period included outside directors Steven L. Jenkins ("Jenkins") and Nour-Dean Anakar, who both served as members of RCI's audit, compensation, and nominating committees, chief executive officer Eric Langan ("Langan"), and chief financial

[1] Ari Hoffman originally filed this collective action suit, but he is not included as a plaintiff in the Amended Complaint now before the Court. Doc. #1; *cf.* Doc. #27. Nevertheless, the caption for this case has not been updated.

officer Phillip Marshall ("Marshall") (collectively, "Individual Defendants" and with RCI, "Defendants" unless otherwise specified). *Id.* ¶¶ 38, 41, 43, 44. As the CEO and CFO, Defendants Langan and Marshall signed all of Defendant RCI's Form 10-K annual reports and Form 10-Q quarterly reports filed with the Security Exchange Commission ("SEC"). *Id.* ¶¶ 39, 42. Defendant Langan also signed a Definitive Proxy Statement on Schedule 14A for the 2017 Annual Meeting of Stockholders ("2017 Proxy Statement"). *Id.* ¶¶ 39, 111. As members of the audit committee, Defendants Jenkins and Nour-Dean Anakar were charged with reviewing and approving all related party transactions ("RPTs"), reviewing and helping to ensure the integrity of RCI's financial statements, and reviewing the adequacy of its internal controls. *Id.* ¶¶ 43, 44. Defendant Jenkins also served as the designated financial expert for the audit committee. *Id.* ¶ 43.

On May 10, 2019, RCI announced that the SEC had initiated an informal inquiry into its financial statements after a "series of negative articles" alleged that the company had omitted certain RPTs. *Id.* ¶¶ 24, 94. In response to the inquiry, RCI's audit committee established a special committee to conduct an internal, independent review of the matters raised by the SEC. *Id.* ¶¶ 25, 96. On July 18, 2019, RCI filed a Form 8-K with the SEC announcing that its independent auditor, BDO USA, LLP ("BDO"), had resigned based on what BDO found to be an insufficient review process and failure to take appropriate remedial action. *Id.* RCI's stock fell by 12.95 percent the next day. *Id.* ¶ 97. Three days later, RCI filed a second Form 8-K stating that the special committee had concluded that the company's Fiscal Year ("FY") 2018 Form 10-K annual report needed be supplemented to include previously undisclosed information. *Id.* ¶¶ 98–101. Defendant Jenkins resigned from RCI's board of directors two weeks later, and RCI subsequently disclosed that the SEC's informal inquiry had transitioned into a formal investigation. *Id.* ¶¶ 103, 104.[2]

---

[2] Plaintiffs filed a request for the Court to take judicial notice of the two SEC administrative orders published in September 2020 as a result of the investigations into RCI and Jenkins. Doc. #42.

This lawsuit was filed on May 21, 2019. Doc. #1. Plaintiffs then filed an amended class action complaint ("Amended Complaint") on February 24, 2020, asserting a claim against Defendants RCI, Langan, and Marshall for violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b–5 promulgated thereunder and a secondary claim against the Individual Defendants for violations of Section 20(a) of the Exchange Act. *Id.* ¶¶ 1, 188, 202. Plaintiffs' Section 10(b) claim is based on six allegedly misleading statements or omissions on RCI's Form 10-K annual reports for FY 2016, FY 2017, and FY 2018 that violate various provisions of SEC Regulation S-K, referred to as "Items."

Plaintiffs' first three allegations address failures to disclose RPTs in violation of Item 404: first, that Defendant Nour-Dean Anakar, a director who sits on RCI's audit committee and compensation committee, is the brother of RCI's "director of operations – club division," Ed Anakar, whose salary rose from $375,000 in 2016 to $471,154 in 2018, *id.* ¶¶ 7, 15, 18, 48, 76; second, Sherwood Forest and its predecessor Creative Steel Designs, two companies that RCI paid a total of $633,429 to between 2016 and 2018, are owned by Defendant Langam's brother and father, respectively, *id.* ¶¶ 7, 15, 18, 77; and third, that the company that built numerous Bombshell establishments and RCI's headquarters, Tannos Construction & Development, LLC ("Tannos Construction"), is closely affiliated with five Tannos Land Holdings, LLC entities that Defendant Langan and Ed Anakar are officers, managers and members of.[3] *Id.* ¶¶ 7, 15, 18, 40, 50, 61, 79.

---

Because the Court finds that the Amended Complaint is sufficient to survive the Motion to Dismiss, the request is denied without prejudice as moot.

[3] The Amended Complaint alleges the following structure for five Tannos Land Holdings entities: 1) Holdings I has two directors: Langan and Louis Tannos ("LT"); 2) Holdings II has three members: Langan, LT, and Jonah Tannos; 3) Holdings III has three directors: LT, Langan, and Ed Anakar; 4) Holdings VI has one director, Langan, two managers, LT and Langan, and one member, Ed Anakar; and 5) Holdings V has one director, Langan, and two mangers, LT and Langan. Doc. #27 ¶ 50. The Amended Complaint further alleges "[o]n information and belief [that] Tannos Construction develops commercial and industrial real estate purchased and held by Tannos Land Holdings" entities and pleads a 2015 development in Friendswood, Texas as an example of

The Amended Complaint further alleges that the owner of Tannos Construction, Louis Tannos, is Defendant Langan's "friend and business associate" and that Defendant Langan downplayed his and RCI's relationship with Tannos Construction in a 2018 earnings call. *Id.* ¶¶ 21, 61, 117, 118.

Fourth, Plaintiffs allege that Defendants failed to disclose executive compensation to Defendant Langan and Travis Reese, RCI's executive vice president and board member, in the form of personal use of RCI-owned aircrafts for FY 2016 and FY 2017 and under-reported the same compensation for FY 2018, in violation of Item 402. *Id.* ¶¶ 7, 15, 18. Fifth, Plaintiffs allege that Defendants failed to disclose that Defendant Jenkins, the audit committee's designated financial expert, had filed two voluntary petitions for bankruptcy during his tenure on RCI's board of directors, in violation of Item 401. *Id.* ¶¶ 7, 15, 18, 67, 86. And finally, Plaintiffs allege that Defendants failed to disclose insufficient internal controls over financial reporting of RPTs, executive compensation, and required disclosures as one of RCI's material weaknesses as is required by the Sarbanes–Oxley Act. *Id.* ¶¶ 7, 15, 18, 129, 130, 138, 141.

Defendants filed a Motion to Dismiss ("Motion"), arguing that the Amended Complaint does not allege either falsity or scienter for the six alleged misrepresentations or omissions, as is required for a Section 10(b) violation, and therefore cannot allege a secondary Rule 20(a) violation as a matter of law. Doc. #37 at 16. Plaintiffs disagree. Doc. #38.

## II. Legal Standard

To survive a motion to dismiss Section 10(b) claims, a complaint must satisfy the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 683 (5th Cir. 2014). Rule 9(b) requires that the complaint "state with particularity the circumstances constituting the fraud."

---

Plaintiffs' basis for this belief. *Id.* ¶ 50, n11.

FED. R. CIV. P. 9(b). Under this standard, plaintiffs alleging fraud must "describe, in short, the who, what, when, and where supporting their fraud allegations." *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020) (quotation omitted). Additionally, under the PSLRA, a plaintiff must "allege with particularity why each one of defendant's representations or omissions was 'misleading' under 15 U.S.C. § 78u–4(b)(1) and, second, allege with particularity those facts giving rise to a 'strong inference' that the defendant acted with the required state of mind under 15 U.S.C. § 78u–4(b)(2)." *Spitzberg*, 758 F.3d at 683.

## III. Analysis

To state a private claim under Section 10(b), a plaintiff must allege: (1) a material misrepresentation or omission by the defendant, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 238–39 (5th Cir. 2009). Defendants moves for dismissal based on failure to allege a strong inference of scienter and failure to allege a false statement.[4] Doc. #37 at 9, 11–15.

### a. Scienter

Defendants argue that the Amended Complaint fails to plead a strong inference of scienter for the allegations regarding the Anakar brothers, the companies owned by Defendant Langan's brother and father, executive compensation, or Defendant Jenkins' bankruptcies. Doc. #37 at 11–13. "The required state of mind for scienter is an intent to deceive, manipulate, or defraud or

---

[4] In the Motion, Defendants argue that because Plaintiff has failed to sufficiently plead that the transactions with Tannos Construction were RPTs, Plaintiff has failed to plead falsity and "as a result, [the Amended Complaint] also does not plead scienter or loss causation." Doc. #37 at 11, n1. In the Reply, Defendants argue that "falsity is not pled for . . . the Item 404 claim based on Tannos Construction (which also lacks loss causation)." To the extent Defendants are attempting to raise an independent argument regarding loss causation in their Reply, "[a]rguments raised for the first time in reply briefs are forfeited." *Am. Guarantee & Liab. Ins. Co. v. United States Fire Ins. Co.*, 255 F. Supp. 3d 677, 691 (S.D. Tex. 2017), *aff'd*, 898 F.3d 574 (5th Cir. 2018).

severe recklessness." *Spitzberg*, 758 F.3d at 684. "A complaint will survive [a motion to dismiss] only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). "As a matter of efficiency, if any single allegation, standing alone, create[s] a strong inference of scienter," courts do "not need to consider additional allegations of scienter." *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015).

As to the Anakar brothers and the companies owned by Defendant Langan's family, Defendants argue that they did not have the requisite scienter because they did not perceive these employment and vendor relationships as "transactions" that needed to be disclosed. *Id.* at 11. Item 404 requires that financial statements filed with the SEC describe "any transaction, since the beginning of the registrant's last fiscal year, in which the registrant was or is to be a participant and the amount involved exceeds $120,000, and in which any related person had or will have a direct or indirect material interest." 17 C.F.R. § 229.404(a). Item 404 defines "transaction" to include "any financial transaction, arrangement or relationship (including any indebtedness or guarantee of indebtedness) or any series of similar transactions, arrangements or relationships." *Id.* A related person includes "any director or executive officer," as well as a sibling of a director or executive officer. *Id.*

RCI's 2017 Proxy Statement, 2017 Form 10-K, and 2018 Form 10-K all disclosed as an RPT that Defendant Langan was personally guaranteeing all of RCI's commercial bank indebtedness. Doc. #27 ¶¶ 111, 113, 115. None of these documents disclosed the relationship between the Anakar brothers or the relationship between Defendant Langan and the companies owned by his brother and father. Based on the disclosure that was made and the clear instructions for Item 404, Defendants' plea of ignorance is unpersuasive. The Court finds that the Amended Complaint contains sufficient specific factual allegations to infer that Defendants knew of the RPT

requirements and acted with "an intent to deceive, manipulate, or defraud" when they signed the 2017 Proxy Statement, 2017 Form 10-K, and 2018 Form-10K, all of which stated that aside from Defendant Langan's personal guarantee, the signatories "kn[e]w of no related transactions that have occurred." *Spitzberg*, 758 F.3d at 684. While the Court must credit allegations that weigh against scienter in Defendants' favor, the Court finds that Plaintiffs' allegations of scienter create an inference that is "at least as compelling as any opposing inference one could draw from the facts alleged." *See Tellabs*, 551 U.S. at 324.

The Court finds Defendants' disclosure of an encouraging RPT and simultaneous failure to disclose less flattering RPTs sufficient to create a strong inference of scienter. Therefore, it need not address the Amended Complaint's alleged failure to plead scienter regarding executive compensation and Defendant Jenkin's prior bankruptcies. *See Owens*, 789 F.3d at 537.

**b. False Statements**

Defendants also argue that the Amended Complaint fails to allege a material misrepresentation or omission regarding Tannos Construction or the public statements about RCI's internal controls. Doc. #37 at 11, 13. "[B]y signing documents filed with the [SEC], [signatories] implicitly indicate that they believe that the filing is accurate and complete." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 588 (S.D. Tex. 2003). As is true with all federal pleadings at the motion to dismiss stage, the Amended Complaint's factual "allegations must . . . be taken as true." *Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008). And unlike the PLSRA requirements for scienter, all reasonable inferences must be drawn in Plaintiffs' favor when determining whether the Amended Complaint alleges a material misrepresentation or omission. *Lormand*, 565 F.3d at 239.

As to Tannos Construction, Defendants argue that the Amended Complaint contains nothing more than a legal conclusion that Tannos Construction and Louis Tannos are related

persons as defined under Item 404. Doc. #37 at 11. Defendants' arguments focus on the wrong actors and entities. Defendants do not dispute that Defendant Langan and Ed Anakara, two RCI officers, are related persons who serve as members, directors, and managers of five Tannos Land Holdings, LLC entities. *Id.*; Doc. #27 ¶ 50. The Amended Complaint alleges a specific development as an example for its belief that Tannos Construction develops real estate purchased by Tannos Land Holdings entities. *Id.* ¶ 50 n11. The Court finds these allegations sufficient to plausibly allege that RCI's transactions with Tannos Construction should have been disclosed because of Defendant Langen and Ed Anakar's indirect material interests in the transactions. *See* 17 C.F.R. § 229.404(a).

With regard to disclosures about RCI's internal controls, Plaintiffs allege that Defendants filed misleading statements with the SEC when they did not include insufficient internal controls for reporting of RPTs, executive compensation, and required disclosures as material weaknesses in their annual Form 10-Ks. Doc. #27 ¶¶ 55–60. Defendants argue that because each certification is signed by the CFO and CEO "based on [their] knowledge," statements in the SEC filings cannot be false unless the signatories knew of the falsity at the time of the signing. Doc. #37 at 14.

Even under Defendants' standard, the Amended Complaint alleges sufficient facts to plausibly allege that Defendants Langan and Marshall knew that the filings were false when they signed them. For example, Defendant Langan knew that he had used RCI's jet for personal use when he signed the 2017 Proxy Statement stating that "[t]he Company does not provide named executive officers with any significant perquisites or other personal benefits except for an automobile for each executive's business use." Doc. #27 ¶ 121. Additionally, Defendants do not dispute that Defendants Marshall and Langan knew of the undisclosed RPTs when they signed the Form 10-Ks stating that aside from Defendant Langan's personal guarantee, they "kn[e]w of no related transactions that have occurred since the beginning of the fiscal year." *Id.* ¶¶ 109, 113,

115. By extension, Defendants Marshall and Langan knew that the list of material weaknesses for internal controls should have included RPTs. That the Form 10-Ks disclosed weaknesses Defendants characterize as "more extensive and significant" does not negate the fact that the SEC filings signed by Defendants Langan and Marshall did not tell an "accurate and complete" story regarding internal control weaknesses. *See* Doc. #41 at 5; *In re Enron*, 258 F. Supp. 2d at 588. Therefore, the Court finds that the Amended Complaint sufficiently alleges misleading statements or omissions regarding RCI's internal controls.

## IV. Conclusion

In conclusion, the Court finds that the Amended Complaint sufficiently alleges that Defendants made material misrepresentations or omissions with the requisite level of scienter to state a Section 10(b) securities fraud claim. Defendants' argument that the Section 20(a) claim must fail based on the failure to allege a Section 10(b) claim is therefore unpersuasive. For the foregoing reasons, the Motion is hereby DENIED.

It is so ORDERED.

MAR 3 1 2021

Date

The Honorable Alfred H. Bennett
United States District Judge