United States District Court
Southern District of Texas

**ENTERED**

July 19, 2021

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| | § | |
| In re RCI Hospitality Holdings, Inc. | § | Master File  No. 4:19-cv-01841-AHB |
| | § | |
| Securities Litigation | § | |
| | § | |
| | § | |

## AGREED STIPULATED PROTOCOL FOR ELECTRONICALLY STORED INFORMATION

Pursuant to the agreement reached between Plaintiffs and Defendants herein, this Court adopts and orders the following protocol (the "Protocol") relating to the Production of Documents and Electronically Stored Information (collectively "Discoverable Information") in these Proceedings, which binds all parties and their counsel of record in this action, whether they currently are involved or become so in the future (collectively, the "Parties"). This Protocol governs discovery of ESI in this case and incorporates relevant provisions of the Federal Rules of Civil Procedure and the Local Rules for the Southern District of Texas regarding the management of ESI and, as set forth herein, supplements those sources of authority. The failure of this Protocol to address any particular issue is without prejudice to any position that a Party may take on that issue. The proportionality standard set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure shall apply to discovery in this action. This Order shall be read consistently with the Federal Rules of Civil Procedure and the Local Rules for the Southern District of Texas.

## I.   DEFINITIONS

a.     "Action" means the above-captioned matter, and any and all cases consolidated or coordinated with it.

1

b.      "Confidentiality Designation" means the legend affixed to Documents designated as confidential as determined by, and subject to, the terms of the Parties' Agreed Stipulated Confidentiality Order governing the use and disclosure of any non-public and confidential proprietary information in this Action.

c.      "Electronically Stored Information" ("ESI") shall have the same definition as set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure, and shall specifically include Email and Electronic Communications as defined herein.

d.      "Documents" shall have the same definition as set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure.

e.      "Email" means electronic messages sent or received via web/HTML interface or through messaging applications or clients, whether on personal computing devices, smartphones, tablets, or any other similar device, including but not limited to Google (Android) Mail, GMail, Microsoft Outlook, Mozilla Thunderbird, and/or Apple Mail.

f.      "Electronic Communications" means communications through or via any collaboration application or platform, chat client, or SMS, including but not limited to G Suite (specifically including Google Meet, Google Talk, Google Currents, Google Hangouts, GChat, and deprecated or predecessor applications such as Google Allo), Slack, Microsoft Teams, Yammer, SharePoint, SalesForce, Asana, Trello, Skype, Bloomberg Chat, Facebook Messenger, Twitter, Reddit, Instagram, iMessage, WhatsApp, WeChat, Tencent QQ, TikTok, Snapchat, Telegram, Line, Signal, or any other chat or team collaboration system, specifically including any proprietary systems.

g.      "Extracted Text" means the text extracted from a native document, and includes all header, footer and document body information when available. A "Text File" is a file containing

2

the full text of native files extracted directly from the native file, or, in the case of paper/hard copy documents subject to OCR, a file containing the text resulting from the OCR.

h.      "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends.  A Load File will also contain data relevant to the individual Documents, including extracted and user created Metadata, as well as OCR or Extracted Text, should such data be available.

i.      "Media" means an object or device, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

j.      "Metadata" means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, or usage of the electronic file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such system.

k.      "Native format" means and refers to the file structure of a document created by the original creating application (in contrast to a Static Image, which is a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .tiff or .pdf).

l.      "OCR File" means optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based paper/hard copy documents and making such documents searchable using appropriate software.

m.      "Parties" collectively shall mean all named parties to any action in these

Proceedings, including any Party added or joined to any complaint in these Proceedings, as well as named parties to actions that may be consolidated into or coordinated with the above-captioned Action.

n.    "Production" or "Produced" includes any exchange of documents or electronically stored information between the Parties, whether voluntarily or in response to a formal or informal request.

o.    "Search Term" means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI, and includes strings of words and phrases joined by proximity and Boolean connectors.

p.    "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.  A Tagged Image File Format (TIFF) image is an example of a Static Image.

q.    "Structured Data" means ESI stored in a structured format, such as databases or data sets according to specific form and content rules as defined by each field of the database.

r.    "Unstructured Data" refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, such as word processing documents, slide presentations, email, and image files.

## II.    SCOPE

a.    **General.** The procedures and protocols outlined herein govern the Production of Discoverable Information by the Parties.  The Parties will take reasonable steps to comply with this agreed-upon Protocol for the Production of Documents and Electronically Stored Information, and the principles of proportionality and reasonableness shall at all times govern the production of

4

ESI. All Productions made pursuant to this Protocol are subject to any discovery stipulation and/or order ("Confidentiality Order") that may be agreed by the Parties and entered by the Court. Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Party requested to produce Discoverable Information ("Producing Party") or a Party requesting Discoverable Information ("Requesting Party"). Moreover, the terms and specifications of this Order shall only apply prospectively to productions made after the date of entry of this Order. Productions in this Action that were delivered before the date of entry of this Order are exempt from the terms of the Order, unless the Producing Party and Receiving Party otherwise agree. To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they shall be controlling.

b. **Limitations and Non-Waiver**. The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and the work-product doctrine. All Parties expressly reserve and do not waive their rights under attorney-client privilege, work product protection, and any other privileges. The Parties expressly reserve and do not waive the right to object to any discovery request on any grounds. Further, nothing in this Protocol shall be construed to affect the admissibility of Discoverable Information. All objections to admissibility of any Discoverable Information are preserved and may be asserted at any time.

c. **Modification by Agreement**. Any practice or procedure set forth herein may be varied by agreement of affected Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Discoverable Information. Any Party added or joined to any complaint in this Action and any Party to actions that may be

consolidated into or coordinated with the above-captioned Action after the date of this Protocol that seeks to deviate from Protocol set forth herein must obtain leave of Court to do so unless all affected Parties otherwise consent in writing. Before seeking Court intervention, Plaintiffs and all affected Defendants shall meet and confer in good faith regarding any modification.

d.    **Modification by Court Order.** Nothing in this Protocol waives the right of any party to petition the Court for an Order modifying its terms upon good cause shown, provided, however, that counsel for such party must first meet and confer with the counsel for the opposing party and the parties shall use reasonable best efforts to negotiate an exception from or modification to this Agreement and Order prior to seeking relief from the Court.

## III.    CUSTODIANS AND SEARCH TERMS

a.    **Custodians.** At the beginning of document discovery, the Producing Party will identify all custodians and all non-custodial sources likely to contain responsive information, including a description of the custodians' job title. The Parties retain the right to request that files from additional custodians be searched and to meet and confer regarding such request.

b.    **Search Terms.** Where the Parties agree that potentially responsive ESI shall be searched through the use of search terms, the Parties will meet and confer to arrive at an agreed-upon set of search terms prior to conducting any such search. The Requesting Party will provide a list of proposed search terms, which will contain all search terms that it believes would lead to the identification of relevant documents. The Producing Party will provide any additional search terms that it believes are necessary to identify responsive documents. The Producing Party will provide a search term hit list or hit report after global de-duplication. The Parties will use best efforts to agree upon search terms. The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that

additional search terms be run from additional custodial or non-custodial data sources be searched and meet and confer regarding such request. Documents that are easily identifiable as responsive will be collected without the use of search terms or other agreed upon advanced search methodology.

c.      **Advanced Search Term Methogy.** Parties will not use predictive coding or technology assisted review without meeting and conferring with the other party about its use.

## IV.   PRODUCTION FORMAT FOR UNSTRUCTURED ELECTRONICALLY-STORED INFORMATION

The Parties agree to produce unstructured Electronically-Stored Information in TIFF format along with text files (.txt) produced from text extracted from the native files of those documents, unless the Producing Party deems another production format more suitable based on the nature of the data and that format is reasonably useable. The documents will be organized how they are maintained in the ordinary course of business, to the extent reasonably practicable and/or not unduly burdensome. For document types that are difficult to read in TIFF format, including spreadsheets (Microsoft Exel, .CSV, or similar) and PowerPoint and similar presentation files, the producing party will produce native files in lieu of TIFF images, unless the Producing Party deems another production format more suitable based on the nature of the data and that format is reasonably useable. When a native file is produced in lieu of TIFF images, the Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that only the native file was produced) along with the file itself in native format. The parties agree that metadata will be produced to the extent it is available and reasonably practicable and not unduly burdensome.

Documents should be provided with an Opticon Cross-Reference File and Concordance data Load File using standard Concordance delimiters. All rows will contain the same number of delimiters and fields. The multi-value field delimiter must be consistent across all fields. For

example, if the CC field contains semi-colons between email addresses, the Tag field should also contain semi-colons.  Concordance-compatible image and data Load Files should be provided in a "Data" folder.

## V.   PRODUCTION OF HARD-COPY DOCUMENTS

Hard copy documents that a Party produces in electronic format shall be produced as they are maintained in the ordinary course of business, to the extent reasonably practicable and/or not unduly burdensome.

## VI.   ASSERTIONS OF PRIVILEGE

a.   **Privilege Logs.** Privilege Logs shall be provided containing the following information:

1.   a sequential number associated with each Privilege Log record;

2.   the date of the document;

3.   the Bates numbers of documents redacted;

4.   to the extent possible, the identity of all persons who sent, authored, signed or otherwise prepared the document, and identification of which of them are attorneys;

5.   to the extent possible, the identity of all persons designated as addressees or copyees and identification of which of them are attorneys;

6.   a description that, without revealing information itself privileged or protected, is sufficient to establish in accordance with the law the basis of the claim of privilege or immunity;

7.   the type or nature of the privilege asserted (*i.e.*, attorney-client privilege; work product doctrine).

| Privilege Log #/ Bates # | Date | Author | From or Sender | Recipient | CC | BCC | Privilege Log Description | Privilege |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |

b.    **Scheduling.** The parties agree to negotiate a reasonable schedule for exchanging Privilege Logs.

c.    **Document Categories Presumptively Excluded.** The following documents presumptively need not be included on a privilege log:

1.    Communications exclusively between a party and its outside counsel regarding this litigation at any time after this Action was filed;

2.    Work product created by outside counsel, or by an agent of outside counsel other than a party, regarding this Action and created after commencement of this Action;

3.    Communications regarding litigation holds or preservation, collection, or review of documents in this Action; and,

4.    Communications involving the undersigned counsel that post-date the initiation of this Action.

d.    **Other Exclusions to be Negotiated.** In the interest of the parties' time, and to minimize litigation costs, the parties shall in good faith negotiate the exclusion of any other categories of documents that while technically responsive and privileged are relatively irrelevant to the issues in the litigation.

e.    **Challenges to Privilege Logs.** Following the receipt of a privilege log, a receiving party may identify, in writing, the particular documents that it believes require further explanation. Within fourteen (14) days of such an identification, the Producing Party must respond to the request. If a party challenges a request for further information, the parties shall meet and confer to

try to reach a mutually agreeable solution. If they cannot agree, the matter shall be brought to the Court.

## VII.   REDACTION

**Intelligibility and Usability**. The Parties agree that they shall use their good-faith best efforts to minimize redaction in order to preserve the intelligibility and usability of the unredacted portions of affected documents. Where the Requesting Party in good faith believes that redaction renders any unredacted portion of the document unclear or susceptible to misinterpretation, or deprives the reader of context necessary to a full and fair interpretation of the text, the Parties shall meet and confer in good faith in an attempt to resolve the issue.

## VIII.   INADVERTENT DISCLOSURE OF ATTORNEY-CLIENT PRIVILEGED OR WORK-PRODUCT PROTECTED ELECTRONICALLY-STORED INFORMATION

a.      **Inadvertent production.** The inadvertent production of ESI that includes privileged material, including attorney/client or attorney work product material, is not a waiver in the pending case or in any other federal or state proceeding. FRE 502(d).

b.      **Clawback Procedures**. If, in connection with the Action, information subject to a claim of attorney-client privilege or attorney work-product protection is inadvertently disclosed ("Inadvertently Produced Privileged Document"), the disclosure of the Inadvertently Produced Privileged Document is not a waiver or forfeiture of any claim of privilege or work product protection that a Party would otherwise be entitled to assert with respect to the Inadvertently Produced Privileged Document and its subject matter. Any claim regarding Inadvertently Produced Privileged Document shall be subject to the terms of the Court's Confidentiality Order(s), which shall control over the provisions of this Protocol—otherwise the following procedures shall apply:

1.      **Identification by Producing Party**. Upon written notice of an

unintentional production by the Producing Party or oral notice if notice is delivered on the record at a deposition, the Requesting Party must promptly return, sequester or destroy the specified document and any hard copies the Requesting Party has and may not use or disclose the information until the privilege claim has been resolved. The Producing Party shall also provide an updated privilege log for such documents setting forth the author, recipient(s), subject matter of the document, along with the basis for the claim of privilege or evidentiary protection, as well as any portion of the document that does not contain privileged or protected information. The Producing Party should maintain unaltered copies of all such returned materials under the control of Counsel of record.

2.      **Identification by Requesting Party.** If any document produced by another party is on its face subject to a legally cognizable privilege or evidentiary protection, the Requesting Party shall: (a) refrain from reading the document any more closely than is necessary to ascertain that it is privileged; (b) immediately notify the Producing Party in writing that it has discovered documents believed to be privileged or protected; (c) specifically identify the documents by Bates number range or hash-value range, and, (d) where possible, return, sequester, or destroy all copies of such documents, along with any notes, abstracts or compilations of the content thereof, within five (5) days of discovery by the Requesting Party. Where such documents cannot be destroyed or separated it shall not be reviewed, disclosed, or otherwise used by the receiving party. Notwithstanding, the Requesting Party is under no obligation to search or review the Producing Party's documents to identify potentially privileged or work product protected documents.

3.      **Contesting Clawback.** The Requesting Party shall have fourteen (14) days from receipt of notification of an inadvertent production to determine in good faith whether

to contest such claim and to notify the Producing Party in writing of an objection to the claim of privilege and the grounds for that objection. Either party may submit the specified Documents to the Court under seal for a determination of such claim.

c.      **Limitations and Non-Waiver.**  Nothing in this Order limits the right of any Party to petition the Court for an *in camera* review of the Inadvertently Produced Privileged Document. This provision is procedural and return of materials pursuant to this Protocol is without prejudice to any substantive right to assert, or oppose, waiver of any protection against disclosure. Nothing in this Order limits the right of any Party to petition the Court for an Order finding that disclosure was not inadvertent or that the holder of the privileged or protected information failed to take reasonable steps to prevent disclosure.

## IX.    AUTHENTICATION

The Parties will meet and confer regarding an authentication stipulation concerning documents produced in the Action.

Dated: June 17, 2021

By: */s/ Kara M. Wolke*
**GLANCY PRONGAY & MURRAY LLP**
Kara M. Wolke (*pro hac vice*)
*Attorney-In-Charge for Plaintiffs*
California Bar No. 241521
Melissa C. Wright (*pro hac vice*)
California Bar No. 291120
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160
Email: info@glancylaw.com

*Co-Lead Counsel for Plaintiffs and the Class*

**KENDALL LAW GROUP, PLLC**
Joe Kendall
Texas Bar No. 11260700
jkendall@kendalllawgroup.com
3232 McKinney Ave., Suite 700
Dallas, Texas 75204
Telephone: (214) 744-3000
Facsimile: (214) 744-3015

*Liaison Counsel for Plaintiffs and the Class*

By: */s/ Jason S. Lewis*
**DLA PIPER LLP (US)**
Jason S. Lewis
Attorney-In-Charge For Defendants
Texas Bar #24007551, SDTX #430226
Jason M. Hopkins
Texas Bar # 24059969, SDTX# 2108564
Marina Stefanova
Texas Bar #24093200, SDTX #3026496
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
jason.lewis@dlapiper.com
jason.hopkins@dlapiper.com
marina.stefanova@dlapiper.com
David Priebe (admitted pro hac vice)
California Bar #148679

Stipulated to and Agreed to by:

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (*pro hac vice*)
New York Bar No. 4145397
Brian B. Alexander (*pro hac vice*)
New York Bar No. 4731022
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
pkim@rosenlegal.com
balexander@rosenlegal.com

13

2000 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 833-2000
david.priebe@dlapiper.com

*Counsel for Defendants*

It is so ORDERED.


JUL 1 6 2021

Date

_____
The Honorable Alfred H. Bennett
United States District Judge