**GLANCY PRONGAY & MURRAY LLP**
Kara M. Wolke (*pro hac vice*)
Melissa C. Wright (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Email: info@glancylaw.com
          kwolke@glancylaw.com
          mwright@glancylaw.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (*pro hac vice*)
Brian B. Alexander (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Email: pkim@rosenlegal.com
          balexander@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

**KENDALL LAW GROUP, PLLC**
Joe Kendall
Texas Bar No. 11260700
jkendall@kendalllawgroup.com
3232 McKinney Ave., Suite 700
Dallas, Texas 75204
Telephone: (214) 744-3000

*Liaison Counsel for Plaintiffs and the Settlement Class*

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re RCI Hospitality Holdings, Inc. Securities Litigation, | Master File No.: 4:19-cv-01841-AHB |

**PLAINTIFFS' UNOPPOSED MOTION FOR: (I) PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT
CLASS; AND (III) APPROVAL OF NOTICE OF THE SETTLEMENT AND
BRIEF IN SUPPORT THEREOF**

## TABLE OF CONTENTS

I.　INTRODUCTION ........................................................................................................... 1

II.　OVERVIEW OF THE LITIGATION ........................................................................... 2

III.　THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL .................................. 3

IV.　THE SETTLEMENT MEETS THE RULE 23(e)(2) AND *REED* FACTORS ..................... 4

    A.　Plaintiffs and Counsel Have Adequately Represented the Settlement Class.......... 4

    B.　The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel and There is No Fraud or Collusion.................................... 5

    C.　The Relief Provided for the Settlement Class is Adequate Considering the Duration, Costs, Risks, and Delay of Trial and Appeal.......................................... 5

    D.　The Stage of the Proceedings and the Amount of Discovery Completed.............. 7

    E.　The Probability of Plaintiffs' Success on the Merits ............................................ 7

    F.　The Range of Possible Recovery ........................................................................ 8

    G.　The Opinions of the Participants......................................................................... 9

    H.　All Settlement Class Members Are Treated Equitably........................................... 9

    I.　Other Factors Established by Rule 23(e)(2)(C) Support Approval ...................... 10

IV.　THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ..................................... 12

V.　THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE ........................ 14

    A.　The Method of Notice is Adequate .................................................................... 14

    B.　The Content of the Notice is Adequate ............................................................... 15

VI.　PROPOSED SETTLEMENT SCHEDULE ....................................................................... 16

VII.　CONCLUSION ............................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**<u>Cases</u>**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ......................................................................... 6

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
  2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ................................................ 11

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................... 13

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
  2015 WL 965693 (W.D. La. Mar. 3, 2015) ........................................... 10, 13

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) .............................................................. passim

*DeHoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) ................................................................. 7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ......................................... 5, 11

*Fishoff v. Coty Inc.*,
  2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) .................................................. 8

*Frost v. Oil States Energy Servs.*,
  2015 WL 12780763 (S.D. Tex. Nov. 19, 2015) .......................................... 11

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ......................................................................... 6

*Hays v. Eaton Grp. Attorneys, LLC*,
  2019 WL 427331 (M.D. La. Feb. 4, 2019) .................................................... 5

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................ 14

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .................................................... 8

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .......................................................................... 9

*In re Chesapeake Energy Corp.*,
  2021 WL 4776685 (S.D. Tex. Oct. 13, 2021) ........................................... 4, 7

*In re Enron Corp.*,
  2003 WL 22494413 (S.D. Tex. July 24, 2003) ........................................... 15

*In re Nissan Motor Corp. Antitrust Litig.*,
  552 F.2d 1088 (5th Cir. 1977) ..................................................................... 15

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ..................................................................... 5

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ......................................................................... 3

*Manchaca v. Chater*,
    927 F. Supp. 962 (E.D. Tex. 1996) ................................................................. 7

*Marcus v. J.C. Penney Co., Inc.*,
    2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) .............................................. 9

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 233- (E.D. Mich. 2016) ............................................................. 11

*ODonnell v. Harris Cty., Texas*,
    2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) .............................................. 4

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ...................................................................... 4, 7

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) (reversing ................................................... 8

*Rooney v. EZCORP, Inc.*,
    330 F.R.D. 439 (W.D. Tex. 2019) ........................................................... 12, 13

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ............................................... 8

*Stott v. Cap. Fin. Servs., Inc.*,
    277 F.R.D. 316 (N.D. Tex. 2011) ................................................................. 7

*Zeidman v. J. Ray McDermott & Co.*,
    651 F.2d 1030 (5th Cir. 1981) .................................................................... 12

## Statutes

15 U.S.C. §78u-4(a)(4) ..................................................................................... 10

15 U.S.C. § 78u-4(a)(7) ................................................................................... 15

## Rules

Fed. R. Civ. P. 23 ................................................................................... passim

Court-appointed Lead Plaintiffs Roger DeMaggio, Patrick Prahl, Justin Kinslow, Joseph Milo, and Edgar M. Kee (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this unopposed motion pursuant to Rule 23(e) of the Federal Rules of Civil Procedure (the "Rules") seeking: (i) preliminary approval of the proposed Settlement as set forth in the Stipulation and Agreement of Settlement dated April 14, 2022 (the "Stipulation");[1] (ii) certification of the proposed Settlement Class for purposes of approving the Settlement (iii) approval of the form and manner of providing notice to Settlement Class Members; and (iv) a hearing date for the Court to consider (a) final approval of the Settlement, (b) approval of the proposed Plan of Allocation; and (c) Lead Counsel's application for an award of attorneys' fees and Litigation Expenses. Plaintiffs met and conferred with Defendants and they do not oppose entry of the Preliminary Approval Order.

## I.    INTRODUCTION

Plaintiffs and Defendants[2] have agreed to settle the above-captioned action (the "Action") for a total of $2,200,000 in cash (the "Settlement"), the terms of which are set forth in the Stipulation. The Settlement was reached after more than two years of contested litigation, during which Lead Counsel, *inter alia*, (i) conducted a thorough investigation, including the retention of a private investigator and damages and accounting experts; (ii) drafted the comprehensive and factually detailed 79-page Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"); (iii) successfully opposed Defendants' motion to dismiss;

---

[1] Unless otherwise defined herein, all capitalized terms have the same meanings as set forth in the Stipulation. The Stipulation and its exhibits are collectively attached as Exhibit ("Ex.") 1 to the Declaration of Kara M. Wolke, filed concurrently with this Motion. In addition, all emphasis is added and all internal citations and quotations are omitted.

[2] Defendants are: RCI Hospitality, Inc. ("RCI" or "the Company"), and the Individual Defendants, CEO Eric Langan ("Langan"), CFO Phillip Marshall ("Marshall"), and outside Directors Nour-Dean Anakar ("Nour-Dean Anakar") and Steven L. Jenkins ("Jenkins").

and (iv) served document requests and subpoenas and reviewed 45,936 pages of documents. Additionally, in preparation for mediation, Lead Counsel drafted a detailed mediation statement and response to Defendants' mediation statement. The Parties then engaged in an all-day mediation overseen by a highly respected mediator, Michelle Yoshida, Esq. of Phillips ADR, which ended without an agreement to settle. Following the conclusion of that mediation session, the Parties continued to negotiate and both sides ultimately accepted the mediator's settlement proposal. The proposed Settlement is, therefore, the result of arm's-length negotiations among well-informed, highly experienced counsel. Plaintiffs and Lead Counsel believe that the proposed Settlement meets the standards for preliminary approval and is in the best interests of the putative Settlement Class. Thus, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

## II.    OVERVIEW OF THE LITIGATION

This is a class action asserting claims against Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). On February 24, 2020, Plaintiffs filed the Complaint. (ECF No. 27). The Complaint alleged Defendants made materially false and misleading statements by failing to disclose: (i) related party transactions ("RPTs") between RCI and furniture fabrication companies, Creative Steel Designs and Sherwood Forest Creations LLC, owned by Defendant Langan's father and brother, respectively; (ii) Defendant Nour-Dean Anakar's brother's salary earned as RCI's Director of Operations; (iii) Langan's and RCI's Executive VP and Board Member, Travis Reese's executive compensation received in the form of personal use of RCI's corporate jet; and (iv) Defendant Jenkins' 2010 and 2015 bankruptcies. The Complaint further alleged that Defendants made false and misleading statements concerning: (i) transactions between RCI and Tannos Construction & Development, LLC ("Tannos Construction"), and (ii) the efficacy of RCI's internal controls.

2

On April 24, 2020, Defendants moved to dismiss the Complaint. (ECF No. 37). On June 23, 2020, Plaintiffs filed their opposition to the motion to dismiss (ECF No. 38) and on July 23, 2020, Defendants filed their reply (ECF No. 41). On March 31, 2021, the Court denied Defendants' motion to dismiss. (ECF No. 44). Defendants answered the Complaint on April 14, 2021 and the Parties filed a joint discovery and case management plan on April 30, 2021, which the Court entered on June 14, 2021. (ECF Nos. 45, 52 & 55). Plaintiffs served their first request for production of documents on Defendants on June 29, 2021, a subpoena on Tannos Construction on July 8, 2021, and subpoenas on Creative Steel Designs and Sherwood Forest Creations LLC on August 24, 2021. At the time the Parties reached a settlement, Defendants and third parties had produced 45,936 pages of documents.

On January 13, 2022, Parties engaged in an all-day, in-person mediation with Michelle Yoshida, Esq., of Phillips ADR Enterprises, a nationally-recognized mediator of complex class action cases. The Parties were unable to reach a resolution during the mediation. However, the mediator continued to discuss a potential resolution with the Parties, and, on January 22, 2022, the Parties accepted the mediator's proposal to settle the matter for $2,200,000 in cash.

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Public policy strongly favors settlements in complex class actions. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (when considering a class action settlement "the court should not decide the merits of the action or attempt to substitute its own judgment for that of the parties."). Under Rule 23(e), a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval" and it requires notice to the proposed class members before the court can finally approve a settlement. To warrant preliminary approval, the parties must show "that the court will

likely be able to...approve the proposal under Rule 23(e)(2)" and "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

"Rule 23(e)(2) was amended in 2018 to provide 'uniform guidance' to courts evaluating class settlements." *In re Chesapeake Energy Corp.*, 2021 WL 4776685, at *5 (S.D. Tex. Oct. 13, 2021). Before 2018, the Fifth Circuit required district courts considering whether a class settlement was fair, reasonable, and adequate under Rule 23(e)(2) to apply the factors set forth in *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). *Id.* "The Advisory Committee notes to the 2018 amendments indicate that the changes to the rule are meant to 'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal,' rather than 'displace any factor' sanctioned by the circuit courts." *Id.* "Because the Rule 23 and Reed factors overlap, 'courts in this circuit often combine them in analyzing class settlements.'" *Id.* (quoting *ODonnell v. Harris Cty., Texas*, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019)). The combined Rule 23 and *Reed* factors are: (1) whether the class representatives and counsel have adequately represented the class; (2) whether the proposed class settlement was negotiated at arm's length or was a product of fraud or collusion; (3) whether the relief is adequate considering the duration, costs, risks, and delay of trial and appeal; (4) the stage of the proceedings and the amount of discovery completed; (5) the probability of success on the merits; (6) the range and certainty of recovery; (7) the opinions of the participants, including class counsel, class representatives, and the absent class members; and (8) whether the proposal treats class members equitably in relation to each other. *Id.* at *13-*19.

## IV.    THE SETTLEMENT MEETS THE RULE 23(e)(2) AND *REED* FACTORS

### A.    Plaintiffs and Counsel Have Adequately Represented the Settlement Class

There can be no dispute that Plaintiffs and their Counsel adequately represented the Settlement Class. Plaintiffs' claims are coextensive with the claims of the Settlement Class, and

they have no antagonistic interests. Furthermore, Plaintiffs' interest in obtaining the largest possible recovery is aligned with the Settlement Class. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest….").

Plaintiffs also retained counsel who are highly experienced in securities litigation. *See* Exs. 2-3 (Plaintiffs' Counsel's resumes). Moreover, as set forth above, Plaintiffs' Counsel vigorously prosecuted Plaintiffs' claims prior to reaching the Settlement. *See supra*, § II. Accordingly, Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Class. *See Hays v. Eaton Grp. Attorneys, LLC*, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019) (representation adequate where proposed settlement was "negotiated by experienced, informed counsel . . .with substantial experience in litigating complex class actions" and where lead plaintiff was "familiar with the factual and legal issues").

**B.     The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel and There is No Fraud or Collusion**

The proposed settlement was achieved only after an all-day, in-person mediation session – followed by additional arm's length negotiations – overseen by a well-respected third party mediator, Michelle Yoshida, Esq. That "the settlement was obtained through formal mediation…strongly suggests that the settlement was not the result of improper dealings." *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018).

**C.     The Relief Provided for the Settlement Class is Adequate Considering the Duration, Costs, Risks, and Delay of Trial and Appeal**

The Settlement is adequate because it provides significant immediate relief and "a trial would be lengthy, burdensome, [] would consume tremendous time and resources of the Parties and the Court [and] any judgment would likely be appealed." *Hays*, 2019 WL 427331, at *10.

The $2,200,000 non-reversionary all cash Settlement Amount is well within the range of

reasonableness. Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on their Exchange Act claims at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory, the ***total maximum damages*** would be approximately $15.6 million. Thus, the Settlement Amount represents more than 14% of the total ***maximum*** damages ***potentially*** available in this Action. A recovery of 14% of ***maximum*** recoverable damages is well within the range of what is considered reasonable. *See* Ex. 4 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) at p. 24, Fig. 22 (median recovery in securities class actions in 2021 was approximately 1.8% of estimated damages).

The duration, costs, risks, and delay of trial and appeal also strongly favor preliminary approval of the Settlement. There is no question that continued litigation would have been costly, risky, and protracted. "It is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331. Indeed, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). Plaintiffs and their counsel recognized the significant risk, time, and expense involved in prosecuting Plaintiffs' claims through class certification, completion of fact and expert discovery, summary judgment, trial, and appeals. Opposition to Defendants' expected motions for summary judgment would have to be successfully briefed and argued, and trials are by their very nature expensive, risky, and uncertain. While Plaintiffs were confident in the arguments they presented and would have made in the future, success is never guaranteed. *See*, *e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 413-414 (7th Cir. 2015) (reversing jury verdict of $2.46 billion after 13 years of litigation).

These uncertainties pose a significant risk that continued litigation would have yielded a smaller recovery – or no recovery at all – several years in the future. Instead, the $2,200,000 Settlement provides an extremely favorable, immediately-realizable recovery and eliminates all of the risk, delay, and expense of continued litigation. *See Stott v. Cap. Fin. Servs., Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) ("[s]ecurities claims are difficult to prove, and without agreeing to a settlement, Plaintiffs no doubt face unpredictable and significant delays and expense in prosecuting this case.").

**D.     The Stage of the Proceedings and the Amount of Discovery Completed**

Under this factor, the inquiry is whether the plaintiff has obtained a sufficient understanding of the strengths and weaknesses of the case and the adequacy of the settlement. *Cotton*, 559 F.2d at 1332. Even in cases where "very little formal discovery was conducted" and where "there is no voluminous record in the case," the Fifth Circuit has declared that "the lack of such does not compel the conclusion that insufficient discovery was conducted." *Id.*

Here, Defendants and third parties produced 45,936 pages of documents, including many significant documents concerning the RPTs and SEC filings at issue. As discussed above, Plaintiffs conducted their own thorough investigation. Thus, by the time the Settlement was reached, they and their counsel had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

**E.     The Probability of Plaintiffs' Success on the Merits**

This factor relates to trial and appeal risk. *Chesapeake Energy*, 2021 WL 4776685, at *15. "[T]he Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007) (citing *Reed*, 703 F.2d at 172). However, "the trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical

or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330.

As in every complex case of this kind, Plaintiffs faced formidable obstacles to recovery at trial. Although Plaintiffs believe that the allegations of the Complaint would be borne out by the evidence, they also recognize that they faced significant hurdles at trial. Defendants had argued, and would continue to argue, on summary judgment and at trial, that Plaintiffs could not demonstrate scienter. Indeed, scienter is often considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011). Furthermore, "avoiding dismissal at the pleading stage does not guarantee that scienter will be adequately proven at trial." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006). Defendants would also continue to assert that RCI's transactions with Tannos were not RPTs.

While Plaintiffs believe that they have meritorious counter-arguments, success was not a foregone conclusion since "the issues would be hotly disputed by the parties. Litigation relating to such fact-intensive and difficult-to-prove claims would thus be extraordinarily complicated and time consuming." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *18 (N.D. Tex. Nov. 8, 2005). Additionally, "if Plaintiffs were to succeed at trial, they still could expect a vigorous appeal by Defendants and an accompanying delay in the receipt of any relief." *Id.* at *19. And, of course, there was no guarantee they would prevail. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1446, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing securities action with prejudice). Accordingly, this weighs in favor of preliminary approval.

### F.    The Range of Possible Recovery

As discussed above, based on Plaintiffs' own calculations, maximum recoverable damages are approximately $15.6 million. Such a recovery was, however, predicated on

Plaintiffs ***proving*** loss causation and damages through expert testimony. This is an inherently difficult task. Defendants would have presented their own experts who would have asserted that there was no causal connection between RCI's alleged misstatements and drops in the Company's stock price, and, even if there were such a connection, that the damages suffered by the Settlement Class were a mere fraction of the amount sought by Plaintiffs. This would have required a jury to decide the "battle of the experts" – "with no guarantee whom the jury would believe." *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001). Thus, the substantial and guaranteed payment of $2,200,000 clearly weighs heavily in favor of approving the Settlement.

### G.    The Opinions of the Participants

"Significant weight is given to the opinion of class counsel concerning whether the settlement is in the best interest of the class and the court is not to substitute its own judgment for that of counsel." *Marcus v. J.C. Penney Co., Inc.*, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017), *report and recommendation adopted,* No. 6:13CV736, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018) "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330. Here, Plaintiffs' Counsel have considerable experience in securities class actions and believe the Settlement merits approval. Plaintiffs also support the proposed Settlement. Accordingly, this factor weighs in favor of preliminary approval.

### H.    All Settlement Class Members Are Treated Equitably

Under the proposed Plan of Allocation,[3] each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Because the proposed Plan of Allocation does not provide preferential treatment to any Settlement Class Member, segment of the Settlement

---

[3] The proposed Plan of Allocation is set forth at pages 12-16 of the Notice, which is attached as Ex. A-1 to the Stipulation.

Class, or to Plaintiffs, this factor supports preliminary approval of the proposed Settlement. *See City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at *15 (W.D. La. Mar. 3, 2015) (approving plan of allocation where each class member would receive their *pro rata* share of the funds based on calculation of recognized losses).[4]

## I.    Other Factors Established by Rule 23(e)(2)(C) Support Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).

First, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. Here, Strategic Claims Services ("SCS") – the Claims Administrator selected by Lead Counsel subject to Court approval – will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval.[5] The manner of processing Claims proposed here is standard in securities class action settlements and has long been found to be effective, as well as necessary, since neither Plaintiffs nor Defendants possess the

---

[4] Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), Plaintiffs may separately seek reimbursement of costs (including lost wages) incurred as a result of their representation of the Settlement Class. *See* 15 U.S.C. §78u-4(a)(4).

[5] SCS has substantial experience serving as the claims administrator in securities class action cases and was selected by Lead Counsel following an RFP process in which it was the low bidder. *See* Ex. 5 (SCS securities settlement experience).

individual investor trading data required for a claims-free distribution process.[6]  *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 233-34, 245 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process ), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

Second, as disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services they have rendered on behalf of the Settlement Class. Attorneys' fees of up to 33⅓% of the Settlement Fund (including interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained and is also consistent with awards in similar complex class action cases. *See, e.g.*, *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) ("The fee represents one-third of the . . . settlement fund, which is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Halliburton*, 2018 WL 1942227, at *12 ("The 33⅓% requested by Class Counsel is within the range of typical awards, and is not the highest fee awarded in securities class action cases."); *Frost v. Oil States Energy Servs.*, 2015 WL 12780763, at *2 (S.D. Tex. Nov. 19, 2015) ("The Court approves Class Counsel's request for 33⅓% of the Settlement Fund as reasonable attorneys' fees"). Approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based upon any ruling with respect to attorneys' fees. *See* Stipulation ¶ 15.

Third, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement that establishes certain conditions under which RCI may terminate the Settlement if Settlement Class Members, who collectively purchased a specific number of shares of the

---

[6] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶ 13.

Company's common stock, request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *5 (approving settlement with similar confidential agreement).

## IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court should certify this case as a class action for purposes of the Settlement because it meets the certification requirements under Rule 23(a) and (b)(3).[7]

*First*, the Rule 23(a)(1) numerosity requirement is satisfied here. There are likely thousands of members of the Class since RCI stock is traded publicly on the New York Stock Exchange and millions of shares were traded during the Settlement Class Period. Thus, the Class is likely so large that joinder of all class members is impracticable. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981) ("The [numerosity] prerequisite . . . is generally assumed to have been met in class action suits involving nationally traded securities.").

Second, the Rule 23(a)(2) commonality requirement is satisfied because the proposed class representatives share at least one question of fact or law with the claims of the prospective class, including, without limitation: (i) whether Defendants made misrepresentations and omissions in violation of Section 10(b) of the Exchange Act; (ii) whether those alleged misrepresentations and omissions were material and made with scienter; and (iii) whether the Settlement Class Members have sustained damages and the proper measure of such damages. *See Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 445-446 (W.D. Tex. 2019) ("Plaintiff alleges Defendants made uniform representations and omissions to the class," which "implicate multiple questions common to the class").

Third, Rule 23(a)(3) typicality requirement is satisfied because Plaintiffs' claims and

---

[7] Defendants do not object to certification for settlement purposes only.

those of the Settlement Class arise from the same alleged conduct by Defendants. *Id.* at 446 (noting that "[a]ll putative class members, including Plaintiff, allegedly purchased EZCORP stock during the class period at prices inflated by Defendants' misstatements and omissions").

Fourth, Rule 23(a)(4) adequacy is satisfied because there are "no conflicts between Plaintiff[s] and the members of the proposed class," and Plaintiffs have "demonstrated [they are] willing and able to vigorously prosecute the interests of the class through qualified counsel" during the more than two years that they prosecuted this case until settlement. *Id*. at 446-47.

Additionally, the Settlement Class meets the Rule 23(b)(3) predominance and superiority requirements, which are satisfied when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). Here, the existence of common questions predominates over individual issues because if each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (predominance is "readily met" in securities fraud cases); *LHC Group*, 2015 WL 965693, at *13 (stating that "the issues of falsity [and] materiality . . . are common to all Class members").

Finally, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). "[I]ndividual class members have little interest in controlling the prosecution because the cost of bringing individual suits to seek recovery would in most cases outweigh the recovery obtained"; "this forum is as desirable a forum as any given the geographic dispersal of investors and [RCI's] headquarters in [Houston], Texas"; and given that the Parties have already reached a settlement, "this putative class action presents no likely management difficulties." *See EZCORP*, 330 F.R.D. at 451-52.

Accordingly, class certification for the purposes of settlement is appropriate.

## V.     THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE

### A.     The Method of Notice is Adequate

Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(e) is less specific, requiring only that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal."

Lead Counsel proposes to mail, by first-class mail, individual copies of the Postcard Notice (Ex. A-4 to the Stipulation) to all potential Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock. Contemporaneously with the mailing of the Postcard Notice, copies of the Notice (Ex. A-1 to the Stipulation) and the Claim Form (Ex. A-2 to the Stipulation) will be posted on a website to be developed for the Settlement. From this website, potential Settlement Class Members will be able to download copies of the Notice and Claim Form and submit claims online. Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form. No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Ex. A-3 to the Stipulation) will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

It is "more than sufficient" to use "a combination of a mailed postcard directing class members to a more detailed online notice." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) (citing cases). Thus, Plaintiffs respectfully submit that the combination of the mailed Postcard, published Summary Notice, and availability online of the Notice provides the best notice practicable under the circumstances.

**B.     The Content of the Notice is Adequate**

With respect to content, the notice must contain the information outlined in Rule 23(c)(2)(B) and the additional information required by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). The proposed Notice satisfies these requirements and will provide Settlement Class Members with the information necessary for them to make a decision whether to remain in, opt-out, or object to, the Settlement. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977) (notice must contain "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment."). It describes: (i) the nature, history, and status of the Action; (ii) the Settlement; (iii) the definition of the Settlement Class; (iv) how to exclude oneself from the Settlement Class; (v) the process by which Settlement Class members may enter an appearance through their own counsel; (vi) the binding effect of the Settlement approval proceedings; (vii) the proposed plan of allocation; and (viii) the reasons the Parties are proposing the Settlement. It also supplies the date, time, and place of the Settlement Fairness Hearing, and the procedures for commenting on or objecting to the Settlement or request for attorneys' fees and Litigation Expenses and appearing at the hearing.

Additionally, the notice program satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7), by setting forth: (i) the amount of the Settlement proposed to be distributed to the Parties to the Action, determined in the aggregate and on an average per-share basis; (ii) a statement concerning the parties disagreement about the damages that would be recoverable if Plaintiffs prevailed; (iii) a statement of attorneys' fees and costs sought; (iv) the name, telephone number, and address of counsel for Plaintiffs; and (v) a brief statement explaining the reasons why the Parties are proposing the Settlement. Courts routinely find that comparable notice programs meet the requirements of due process, Rule 23 and the PSLRA. *See, e.g. In re Enron*

*Corp.*, 2003 WL 22494413, at *3 (S.D. Tex. July 24, 2003).

## VI.    PROPOSED SETTLEMENT SCHEDULE

Plaintiffs respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| | |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") | 20 business days after entry of the Preliminary Approval Order |
| Deadline to publish the Summary Notice | 10 business days after the Notice Date |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and Litigation Expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for requesting exclusion | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Fairness Hearing | At least 100 days after entry of the Preliminary Approval Order |
| Deadline for submitting Claim Forms | Postmarked 120 calendar days from the Notice Date |

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement and enter the proposed order.

Dated: April 15, 2022

Respectfully submitted,

By: /s/ *Kara M. Wolke*
Kara M. Wolke (*pro hac vice*)
**Glancy Prongay & Murray LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorney-In-Charge for Plaintiffs and Class*

**CERTIFICATE OF SERVICE**

I certify that on April 15, 2022, a copy of this document was served on all counsel of record by operation of the Court's electronic filing system.

*s/ Kara M. Wolke*
Kara M. Wolke
