# Exhibit 4

**NERA**
ECONOMIC CONSULTING

25 January 2022



# Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review

Over 10% of New Federal Filings Were Related to Special Purpose Acquisition Companies

Substantially Fewer Merger Objections Filed, Leading to a Decline in Aggregate New Filings

Total Resolutions, Average and Median Settlement Values Declined

By Janeen McIntosh and Svetlana Starykh

Insight in Economics™

## Foreword

I am excited to share NERA's Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review with you. This year's edition builds on work carried out over three decades by many members of NERA's Securities and Finance Practice. This year's report continues our analyses of trends in filings and settlements and presents new analyses related to current topics such as special purpose acquisition companies. Although space does not permit us to present all the analyses the authors have undertaken while working on this year's edition or to provide details on the statistical analysis of settlement amounts, we hope you will contact us if you want to learn more about our research or our work related to securities litigations. On behalf of NERA's Securities and Finance Practice, I thank you for taking the time to review our work and hope you find it informative.

Dr. David Tabak
Managing Director



Figure 22. **Median NERA-Defined Investor Losses and Median Ratio of Settlement to Investor Losses by Settlement Year**
January 2012–December 2021



In analyzing drivers of settlement amounts, NERA has identified the following key factors:

- NERA-Defined Investor Losses, as defined above;
- The market capitalization of the issuer immediately after the end of the class period;
- The types of securities, in addition to common stock, alleged to have been affected by the fraud;
- Variables that serve as a proxy for the merit of plaintiffs' allegations (such as whether the company has already been sanctioned by a governmental or regulatory agency or paid a fine in connection with the allegations);
- The stage of litigation at the time of settlement; and
- Whether an institution or public pension fund is lead or named plaintiff.

## Notes

1  This edition of NERA's report on "Recent Trends in Securities Class Action Litigation" expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, and others. The authors thank Dr. David Tabak and Benjamin Seggerson for helpful comments on this edition. We thank researchers in NERA's Securities and Finance Practice for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA's proprietary securities class action database and all analyses reflected in this report are limited to federal case filings and resolutions.

2  Data for this report were collected from multiple sources, including Institutional Shareholder Services, complaints, case dockets, Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, and public press reports.

3  NERA tracks class actions involving securities that have been filed in federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. However, the first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are directionally similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings.

4  Most securities class action complaints include multiple allegations. For this analysis, all allegations from the complaint are included and, as such, the total number of allegations exceeds the total number of filings.

5  It is important to note that, due to the small number of cases in some of these categories, the findings summarized here may be driven by one or two cases.

6  Here the word "dismissed" is used as shorthand for all cases resolved without settlement; it includes cases in which a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, or an unsuccessful motion for class certification.

7  See Janeen McIntosh and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review," NERA Economic Consulting, p. 13, Figure 11, available at https://www.nera.com/publications/archive/2021/recent-trends-in-securities-class-action-litigation--2020-full-y.html.

8  Analyses in this section exclude IPO laddering cases and merger-objection cases.

9  NERA's analysis of motions only includes securities class action suits involving common stock, with or without other securities, and an allegation of Rule 10b-5 violation alone or accompanied by Section 11, and/or Section 12 violation.

10 For our analysis, NERA includes settlements that have had the first hearing of approval of case settlement by the court. This means we do not include partial settlements or tentative settlements that have been announced by plaintiffs and/or defendants. When evaluating trends in average and median settlement values, we limit our data to non-merger-objection cases with settlements of more than $0 to the class.

11 NERA-Defined Investor Losses is only calculable for cases involving allegations of damages to common stock over a defined class period. As a result, we have not calculated this metric for cases such as merger objections.

## About NERA

NERA Economic Consulting (**www.nera.com**) is a global firm of experts dedicated to applying economic, finance, and quantitative principles to complex business and legal challenges. For more than six decades, we have been creating strategies, studies, reports, expert testimony, and policy recommendations for government authorities and the world's leading law firms and corporations. We bring academic rigor, objectivity, and real-world industry experience to issues arising from competition, regulation, public policy, strategy, finance, and litigation.

NERA's clients value our ability to apply and communicate state-of-the-art approaches clearly and convincingly, our commitment to deliver unbiased findings, and our reputation for quality and independence. Our clients rely on the integrity and skills of our unparalleled team of economists and other experts backed by the resources and reliability of one of the world's largest economic consultancies. Continuing our legacy as the first international economic consultancy, NERA serves clients from major cities across North America, Europe, and Asia Pacific.

## Contacts

For further information, please contact:



**Janeen McIntosh**
Senior Consultant
New York City: +1 212 345 1375
janeen.mcintosh@nera.com



**Svetlana Starykh**
Senior Consultant
White Plains, NY: +1 914 448 4123
svetlana.starykh@nera.com

*The opinions expressed herein do not necessarily represent the views of NERA Economic Consulting or any other NERA consultant.*



To receive publications, news, and insights from NERA, please visit **www.nera.com/subscribe**.





Visit **www.nera.com** to learn more about our practice areas and global offices.

© Copyright 2022
National Economic Research Associates, Inc.

All rights reserved.
Printed in the USA.