**GLANCY PRONGAY & MURRAY LLP**
Kara M. Wolke (*pro hac vice*)
Melissa C. Wright (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: info@glancylaw.com
　　　kwolke@glancylaw.com
　　　mwright@glancylaw.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (*pro hac vice*)
Brian B. Alexander (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Email: pkim@rosenlegal.com
　　　balexander@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

**KENDALL LAW GROUP, PLLC**
Joe Kendall
Texas Bar No. 11260700
jkendall@kendalllawgroup.com
3232 McKinney Ave., Suite 700
Dallas, Texas 75204
Telephone: (214) 744-3000

*Liaison Counsel for Plaintiffs and the Settlement Class*

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re RCI Hospitality Holdings, Inc. Securities Litigation | Master File No.: 4:19-cv-01841-AHB<br><br>CLASS ACTION |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY ...........................................3

III.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS......3

IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ..............................4

        A.      Plaintiffs And Their Counsel Adequately Represented The Settlement Class........4

        B.      The Settlement Is The Product Of Arm's-Length Negotiations Between
                Experienced Counsel And There Is No Fraud Or Collusion ...................................5

        C.      The Relief Provided To The Settlement Class Is Adequate Considering The
                Duration, Costs, Risks, And Delay Of Trial And Appeal ......................................6

        D.      The Stage Of Proceedings And The Amount Of Discovery Completed.................7

        E.      The Probability Of Plaintiffs' Success On The Merits............................................7

        F.      The Range And Certainty Of Recovery ................................................................10

        G.      The Opinions Of The Participants.........................................................................11

        H.      All Settlement Class Members Are Treated Equitably .........................................11

        I.      Other Factors Established By Rule 23(e)(2)(C) Support Final Approval Of The
                Proposed Settlement .............................................................................................12

V.      THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED ...........................13

VI.     THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS ....................13

VII.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ...................................14

VIII.   CONCLUSION ................................................................................................................16

**CASES**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ...................................................................................... 6

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
    2015 WL 965693 (W.D. La. Mar. 3, 2015) ...................................................... 6, 12, 16

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............................................................... 9

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ............................................................................. 3, 6, 7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ....................................... 6, 10, 11, 13

*Fishoff v. Coty Inc.*,
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) .............................................................. 8

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S 263 (2014) ..................................................................................................... 9

*Hays v. Eaton Grp. Attorneys, LLC*,
    2019 WL 427331 (M.D. La. Feb. 4, 2019) ............................................................ 5, 6

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................................................................... 16

*In re AOL Time Warner, Inc.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................................................ 8

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ....................................................................................... 8

*In re Chesapeake Energy Corp.*,
    567 F. Supp. 3d 754 (S.D. Tex. 2021) .................................................................... 4, 7

*In re Chicken Antitrust Litig. Am. Poultry*,
    669 F.2d 228 (5th Cir. 1982) .................................................................................... 14

*In re Datatec Sys., Inc. Sec. Litig.*,
    2007 WL 4225828 (D.N.J. Nov. 28, 2007) ............................................................. 15

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................. 15

*In re Mut. Funds Inv. Litig.*,
    2010 WL 2342413 (D. Md. May 19, 2010) ............................................................. 14

*In re OCA, Inc. Sec. & Derivative Litig.*,
    2009 WL 512081 (E.D. La. Mar. 2, 2009) ............................................................. 8, 9

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................................... 5

*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. 2010) ............................................................. 10

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) .............................................................................. 4

*Manchaca v. Chater*,
    927 F. Supp. 962 (E.D. Tex. 1996) ..................................................................... 7

*Newby v. Enron Corp.*,
    394 F.3d 296 (5th Cir. 2004) .............................................................................. 3

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) ................................................................... 12

*ODonnell v. Harris Cty., Tex.*,
    2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) ................................................... 4

*Parker v. Anderson*,
    667 F.2d 1204 (5th Cir. 1982) ...................................................................... 3, 10

*Quintanilla v. A & R Demolition Inc.*,
    2008 WL 9410399 (S.D. Tex. May 7, 2007) ..................................................... 9

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ................................................................. 4, 10, 11

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ......................................................................... 9

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ................................................ 8, 9

*Stott v. Capital Fin. Servs., Inc.*,
    277 F.R.D. 316 (N.D. Tex. 2011) ....................................................................... 7

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007) .............................................................. 11

*U.S. v. Tex. Educ. Agency*,
    679 F.2d 1104 (5th Cir. 1982) ........................................................................... 3

## STATUTES

15 U.S.C. § 77z-1(a)(4) ............................................................................................ 12

## RULES

Fed. R. Civ. P. 23 ............................................................................................. *passim*

Pursuant to Fed. R. Civ. P. 23(e) and the Court's April 28, 2022 Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 71, the "Preliminary Approval Order"), Court-appointed Lead Plaintiffs Roger DeMaggio, Patrick Prahl, Justin Kinslow, Joseph Milo, and Edgar M. Kee (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this Motion and Memorandum of Law in support of final approval of the proposed Settlement and Plan of Allocation. [1]

## I. INTRODUCTION

After nearly three years of contested litigation, Plaintiffs obtained a $2,200,000 all cash, non-reversionary settlement for the benefit of the Settlement Class. As described below and in the Wolke Declaration, the Settlement is a fair and adequate result, providing significant and certain recovery in a case that presented numerous hurdles. Moreover, the Parties reached the Settlement only after a full-day of arm's-length negotiations conducted by experienced counsel with a highly respected mediator, Michelle Yoshida, Esq. of Phillips ADR. Following the conclusion of that session, the Parties continued negotiations which culminated in a mediator's recommendation, which both sides accepted. ¶¶33-36. The Settlement is, therefore, both substantively and procedurally fair.

The substantial efforts of Plaintiffs and their Counsel and their well-developed understanding of the Action also support final approval. Plaintiffs' Counsel's efforts, included:

- drafting two different initial complaints on behalf of named plaintiffs Ari Hoffman and Ning Gu (¶18);

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated April 14, 2022 (ECF No. 70-1) ("Stipulation") or the concurrently-filed Declaration of Kara M. Wolke in Support of: (I) Plaintiffs' Motion for: Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Wolke Declaration" or "Wolke Decl."). All citations herein to "¶__" and "Ex.__" refer, to the Wolke Declaration.

- moving for consolidation of related cases and appointment of Lead Plaintiffs (¶19);

- conducting a thorough investigation, including the retention of a private investigator and experts in accounting, market efficiency, loss causation, and damages (¶20);

- drafting the comprehensive and factually detailed 79-page Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") (¶¶20-21);

- researching and successfully opposing Defendants' motion to dismiss (¶¶22-26);

- engaging in substantial discovery, including, *inter alia*, (i) exchanging initial disclosures, (ii) negotiating a protective order and an ESI protocol, (iii) serving document requests, subpoenas, and a Freedom of Information Act request, and (iv) reviewing and analyzing approximately 46,000 pages of documents (¶¶27-30);

- prepared to file a motion for class certification by, *inter alia*, working with Dr. Adam Werner, an economics expert, to draft a report on the efficiency of the market for RCI common stock (¶¶31-32);

- drafting a detailed opening mediation statement and rebuttal statement (¶34);

- participating in an all-day mediation session overseen by Ms. Yoshida, followed by weeks of follow-up negotiations (¶¶35-36);

- drafting and then negotiating the Stipulation and related exhibits (¶36); and

- drafting the preliminary approval and final approval briefs. ¶36.

Accordingly, Plaintiffs and their Counsel had sufficient information to make an informed decision regarding the fairness of the Settlement before presenting it to the Court. ¶14.

Plaintiffs and their Counsel's belief that the Settlement is a fair and adequate result is further supported by, among other things: (1) the certainty of a $2,200,000 recovery today versus the significant risk of a smaller or even no recovery following years of additional litigation; (2) an analysis of the facts adduced to date; (3) past experience in litigating complex securities class actions; (4) the serious disputes between Parties concerning the merits; and (5) the favorable reaction of the Settlement Class. ¶¶38-48. Plaintiffs, therefore, submit that the Settlement is fair, reasonable, and adequate.

Plaintiffs also move for approval of the Plan of Allocation. Plaintiffs' Counsel developed the Plan in conjunction with Plaintiffs' damages expert, and it is designed to fairly and equitably distribute the proceeds of the Net Settlement Fund to Settlement Class Members. ¶¶60-68.

For these reasons, and those set forth below and in the Wolke Declaration, Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation and grant final certification of the Settlement Class for settlement purposes.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Wolke Declaration is an integral part of this submission and the Court is respectfully referred to it for a detailed description of, *inter alia*, the factual and procedural history of the Action (¶¶18-36); the nature of the claims asserted (¶17); the risks of continued litigation (¶¶38-48); and the negotiations leading to the Settlement (¶¶33-36).

## III.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

In determining the propriety of granting final approval of a class action settlement, courts determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004).[2] When a settlement, such as this one, is reached as the result of arm's-length negotiations between competent counsel on both sides, it "is entitled to a presumption of validity, which ordinarily may be overcome only if its provisions are not within reasonable bounds or are illegal, unconstitutional or against public policy." *U.S. v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).

Evaluating the propriety of a complex class action settlement is within the sound discretion of the district court, which should exercise it while giving appropriate consideration to the strong public policy interests favoring the settlement. *See Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982) ("[A]n approved settlement will not be upset unless the court clearly abused its discretion."); *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.").

---

[2] Unless otherwise noted, all internal citations and quotations are omitted, and emphasis is added.

Thus, "the court should not decide the merits of the action or attempt to substitute its own judgment for that of the parties." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983).

"Rule 23(e)(2) was amended in 2018 to provide 'uniform guidance' to courts evaluating class settlements." *In re Chesapeake Energy Corp.*, 567 F. Supp. 3d 754, 767-68 (S.D. Tex. 2021). Before 2018, the Fifth Circuit required district courts considering whether a class settlement was fair, reasonable, and adequate under Rule 23(e)(2) to apply the factors set forth in *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). *Id.* "The Advisory Committee notes to the 2018 amendments indicate that the changes to the rule are meant to 'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal,' rather than 'displace any factor' sanctioned by the circuit courts." *Id.* at 768. "Because the Rule 23 and *Reed* factors overlap, 'courts in this circuit often combine them in analyzing class settlements.'" *Id.* at 768. (quoting *ODonnell v. Harris Cty., Tex.*, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019)).

The combined Rule 23 and *Reed* factors are: (1) whether the class representatives and counsel have adequately represented the class; (2) whether the proposed class settlement was negotiated at arm's length or was a product of fraud or collusion; (3) whether the relief is adequate considering the duration, costs, risks, and delay of trial and appeal; (4) the stage of the proceedings and the amount of discovery completed; (5) the probability of success on the merits; (6) the range and certainty of recovery; (7) the opinions of the participants, including class counsel, class representatives, and the absent class members; and (8) whether the proposal treats class members equitably in relation to each other. *Id.* at 778-84.

## IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. Plaintiffs And Their Counsel Adequately Represented The Settlement Class

Plaintiffs adequately represented the Settlement Class by actively pursuing their shared

claims against Defendants, including regularly communicating with Lead Counsel on case developments and conferring with Lead Counsel throughout the settlement negotiations. ¶93. Moreover, Plaintiffs—investors who purchased RCI common stock during the Settlement Class Period and suffered damages as a result—suffered the same injury as other Settlement Class Members, thereby aligning Plaintiffs' interest in obtaining the largest possible recovery in the Action with the Settlement Class. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest….").

Plaintiffs' Counsel also have adequately represented the Settlement Class. As set forth above, Plaintiffs' Counsel vigorously prosecuted the Action against skilled opposing counsel and achieved a favorable result. The Parties achieved the Settlement only after Plaintiffs' Counsel: (1) thoroughly investigated the claims; (2) consulted with accounting, market efficiency, loss causation and damages experts; (3) drafted initial complaints, as well as the Complaint; (4) successfully opposed Defendants' Motion to Dismiss; (5) exchanged initial disclosures, negotiated an ESI Protocol, served document requests, subpoenas, and a FOIA request to the SEC, and reviewed 45,936 pages of documents; (6) prepared a mediation statement and reply; and (7) engaged in vigorous arm's-length settlement discussions before, during, and after the in-person mediation session. ¶¶18-36. *See Hays v. Eaton Grp. Attorneys, LLC*, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019) (adequate representation where settlement was "negotiated by experienced, informed counsel . . .with substantial experience in litigating complex class actions" and where lead plaintiff was "familiar with the factual and legal issues").

**B.  The Settlement Is The Product Of Arm's-Length Negotiations Between Experienced Counsel And There Is No Fraud Or Collusion**

The Settlement was reached only after extensive arm's-length negotiations between

experienced counsel who thoroughly evaluated the merits of the claims in light of the strengths and weaknesses of the case. ¶¶18-36 (detailing the investigation and work performed by Lead Counsel); ¶¶38-48 (risks of the litigation). The mediation process—which included a full-day mediation session that ultimately resulted in a mediator's recommendation—was led by Ms. Yoshida, a well-respected mediator who has significant experience mediating securities class actions and other complex litigation. That "the settlement was obtained through formal mediation…strongly suggests that the settlement was not the result of improper dealings." *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018).

### C. The Relief Provided To The Settlement Class Is Adequate Considering The Duration, Costs, Risks, And Delay Of Trial And Appeal

This factor is satisfied where the relief afforded the Settlement Class falls within the range of reasonableness and where "[a] trial would be lengthy, burdensome, [] would consume tremendous time and resources of the Parties and the Court [and] [a]ny judgment would likely be appealed." *Hays*, 2019 WL 427331, at *10. "It is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331. Furthermore, Courts have repeatedly recognized that securities litigation "is a highly technical and specialized area of the law" and that claims brought pursuant to the federal securities laws are "extremely complex." *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at *7 (W.D. La. Mar. 3, 2015). Indeed, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

Further litigation of the Action would have necessitated continued fact and extensive expert discovery, a motion for class certification, dispositive motion practice, pre-trial preparation, trial, and post-trial appeals. ¶¶39-47. Considering the costs, risks, complexity and

delay at stake, Plaintiffs and their counsel recognized the very real risk that continuing to prosecute their claims could have resulted in a smaller—or even non-existent—recovery for the Settlement Class years in the future. ¶11. In contrast, the Settlement provides a substantial and immediate recovery of $2.2 million for the Settlement Class, without subjecting it to the significant risks, expenses, and delay of continued litigation. ¶14. Accordingly, this factor supports final approval of the Settlement. *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) ("[s]ecurities claims are difficult to prove, and without agreeing to a settlement, Plaintiffs no doubt face unpredictable and significant delays and expense in prosecuting this case").

### D. The Stage Of Proceedings And The Amount Of Discovery Completed

Under this factor, the inquiry is whether the plaintiff obtained sufficient understanding of the case to gauge its strengths and weaknesses and the adequacy of the settlement. *Cotton*, 559 F.2d at 1332. Here, as discussed above, Defendants and third parties produced 45,936 pages of documents, including many significant documents concerning the alleged related party transactions and SEC filings at issue. ¶30. Additionally, Plaintiffs conducted their own thorough investigation. ¶20. Thus, by the time the Settlement was reached, they and their counsel had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

### E. The Probability Of Plaintiffs' Success On The Merits

This factor relates to trial and appeal risk. *Chesapeake Energy*, 567 F. Supp. 3d at 779-80 As in every complex case of this kind, Plaintiffs and the Settlement Class faced formidable obstacles to recovery at trial, both with respect to liability and damages. Although Plaintiffs believe they would be successful and that the allegations of the Complaint would ultimately be borne out by the evidence, they also recognize that they faced significant hurdles.

*First,* Defendants argued, and would continue to argue on summary judgment and at trial, that Plaintiffs cannot prove liability. The element of scienter, which Defendants would continue to contest, is considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010). Furthermore, "avoiding dismissal at the pleading stage does not guarantee that scienter will be adequately proven at trial." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006). Defendants would also continue to assert that RCI's transactions with Tannos were not related party transactions that required disclosure, and that Plaintiffs could not show Defendants' knowledge of the falsity of RCI's internal control certifications and other false statements alleged in this case. ¶42. While Plaintiffs believe they would have succeeded in proving their claims, success was not a foregone conclusion. "If litigation were to proceed, the issues would be hotly disputed by the parties. Litigation relating to such fact-intensive and difficult-to-prove claims would thus be extraordinarily complicated and time consuming, and require expert testimony." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *18 (N.D. Tex. Nov. 8, 2005).

*Second*, even if Plaintiffs were successful in establishing liability, they would still face substantial risks in establishing damages on a class-wide basis. For example, Defendants would certainly have disputed damages by claiming that there was no causal connection between RCI's allegedly misleading disclosures and drops in the Company's stock price, and even if there were such a connection, the damages suffered by the class were a mere fraction of the amount sought by Plaintiffs. ¶45. This dispute would have required a jury to decide the "battle of experts"—an intrinsically expensive and unpredictable process. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *In*

*re OCA, Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *14 (E.D. La. Mar. 2, 2009) ("Because the jury would have been faced with competing expert opinions, the resulting damage award would have been highly unpredictable.").

*Third*, while Plaintiffs were confident that they would successfully obtain class certification, such success was not guaranteed. ¶¶39-40. Class certification requires substantial briefing and extensive and costly expert discovery on the issue of market efficiency. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S 263, 280 (2014) (finding defendants may rebut the presumption of reliance at the class certification stage by showing the alleged misrepresentations did not impact the stock price). Thus, class certification would have involved substantial risk to the Settlement Class and considerable expense to both Parties. Moreover, "the law of class actions is developing at a rapid clip, and it is always possible that some new Supreme Court decision would counsel in favor of decertification." *City of Providence v. Aeropostale, Inc.,* 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014).

*Finally*, even "if Plaintiffs were to succeed at trial, they still could expect a vigorous appeal by Defendants and an accompanying delay in the receipt of any relief." *Schwartz*, 2005 WL 3148350, at *19; *see also OCA*, 2009 WL 512081, at *11 ("After trial, the parties could still expect years of appeals."). And, of course, there was no guarantee they would prevail. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing securities action with prejudice);

Accordingly, "[t]aking into account the risks inherent in this litigation, as well as the costs of litigation, the settlement amount is fair and reasonable." *Quintanilla v. A & R Demolition Inc.*, 2008 WL 9410399, at *5 (S.D. Tex. May 7, 2007).

### F. The Range And Certainty Of Recovery

The Court is also required to determine whether the terms of the Settlement "fall within *a reasonable range of recovery*, given the likelihood of the plaintiffs' success on the merits." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010). In making this assessment, "courts will compare the settlement amount to the relief the class could expect to recover at trial, *i.e.*, the strength of the plaintiff's case." *Halliburton*, 2018 WL 1942227, at *5. The Court should not, however, "try the case via the fairness hearing because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Id.* at *5 (quoting *Reed*, 703 F.2d at 172); Accordingly, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Parker*, 667 F.2d at 1210 n.6. Indeed, "final approval is frequently given to settlements even when the settlement amount is a very small fraction of the damages amount projected by the Plaintiffs." *Halliburton*, 2018 WL 1942227, at *5.

The $2,200,000 non-reversionary, all cash settlement is well within the range of reasonableness. Plaintiffs' damages expert estimates that if Plaintiffs fully prevailed on their claims, the Court certified the same class period as the Settlement Class Period, and the Court and jury accepted Plaintiffs' damages theory, the ***maximum damages*** would be approximately $15.6 million. Thus, the Settlement Amount represents more than 14% of the ***maximum*** damages ***potentially*** available in this Action. A recovery of 14% of ***maximum*** recoverable damages is well within the range of what is considered reasonable. *See* Ex. 6 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) at p. 24, Fig. 22 (median recovery in securities class actions in 2021 was approximately 1.8% of estimated damages). This is especially true when the recovery

is balanced against the risks of continued litigation. *See* § IV.C., *infra*.

### G. The Opinions Of The Participants

Courts also consider "the opinions of the class counsel, class representatives, and absent class members" concerning the settlement. *Reed*, 703 F.2d at 172. "Counsel are the Court's main source of information about the settlement . . . and therefore…give weight to class counsel's opinion regarding the fairness of settlement." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007). Here, Plaintiffs' Counsel possess substantial experience litigating securities class actions, have a thorough understanding of the strengths and weaknesses of this case, and believe the Settlement merits approval. *See* Exs. 2-5 (firm resumes); ¶82. In addition, counsel for Defendants, an international law firm that vigorously represented the interests of its client during the Action, agreed to the Settlement. Finally, the Court should consider the reaction of the Settlement Class. While the deadline to file objections and requests for exclusion is July 22, 2022, to date, none have been received. ¶59; Ex. 1 (Bravata Decl.) at ¶¶13-14. This reaction weighs in favor of final approval. *See Halliburton*, 2018 WL 1942227, at *5 ("Receipt of few or no objections can be viewed as indicative of the adequacy of the settlement").[3]

### H. All Settlement Class Members Are Treated Equitably

The Settlement "treats class members equitably relative to each other" as required by Rule 23(e)(2)(D). Under the proposed Plan of Allocation,[4] each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Because the proposed Plan of Allocation does not provide preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to Plaintiffs, this factor supports final approval. *See City of Omaha*, 2015

---

[3] If any objections or requests for exclusions are received after the date of this submission, Lead Counsel will address them in the reply brief, which will be filed no later than August 5, 2022.

[4] The proposed Plan of Allocation is set forth in the Notice. Ex. 1-B (Notice at pp. 9-12).

WL 965693, at *15 (approving plan of allocation where each class member would receive their *pro rata* share of the funds based on calculation of recognized losses).[5]

## I. Other Factors Established By Rule 23(e)(2)(C) Support Final Approval Of The Proposed Settlement

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).

*First*, the Net Settlement Fund will be allocated to Settlement Class Members who submit valid Claim Forms in accordance with the Plan of Allocation. *See* § VII., *infra*. Strategic Claims Services ("SCS")—the Claims Administrator selected by Lead Counsel and approved by the Court—will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund, after Court-approval. The manner of processing Claims proposed here is standard in securities class action settlements and courts have found this process effective, as well as necessary, since neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process.[6] *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34, 245 (E.D. Mich. 2016) (approving settlement with similar distribution process).

---

[5] Pursuant to the Private Securities Litigation Reform Act of 1995, Plaintiffs may separately seek reimbursement of costs (including lost wages) incurred as a result of their representation of the Settlement Class. *See* 15 U.S.C. § 78u-4(a)(4).

[6] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶13.

*Second*, as discussed in detail in the accompanying Fee Memorandum, the relief provided for the Settlement Class is also adequate when the terms of the proposed award of attorneys' fees are considered. The proposed attorneys' fee of 33⅓%, to be paid upon approval by the Court, is reasonable in light of the substantial work and efforts of Plaintiffs' Counsel, the risks that they faced in the litigation, the results achieved, and awards in similar complex cases. Most importantly, the Court's consideration of the proposed award of attorneys' fees is entirely separate from approval of the Settlement, and neither Plaintiffs nor their counsel may terminate the Settlement based on the ultimate award of attorneys' fees or expenses.

*Third*, with respect to Rule 23(e)(2)(C)(iv), the Parties entered into a confidential agreement establishing conditions under which Defendants may terminate the Settlement if a certain threshold of Settlement Class Members submit valid and timely requests for exclusion. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See Halliburton*, 2018 WL 1942227, at *5 (approving settlement with similar confidential agreement).

## V. THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Court's April 28, 2022 Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 71, ¶¶1-3. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' Preliminary Approval Brief (*see* ECF No. 69, at pp. 12-14), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## VI. THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

The Court approved the proposed notice program in the Preliminary Approval Order, and

Lead Counsel executed it. ¶¶49-59. As of July 7, 2022, either a copy of the Postcard Notice was timely mailed or a link to Notice and Claim Form was emailed, to an aggregate of 13,638 potential Settlement Class Members and the largest brokerage firms, banks, institutions, and other nominees. ¶56; Ex. 1 (Bravata Decl.) at ¶8.

On June 6, 2022, the Court-approved Summary Notice was published in *Investors' Business Daily* and over the *PR Newswire*. ¶57; Ex. 1 (Bravata Decl.) at ¶10. The published Summary Notice clearly and concisely provided information concerning the Settlement and the means to obtain a copy of the Notice. *See* Ex. 1-D. Finally, SCS posted the Notice, Claim Form, and other relevant documents online at the Settlement Website, www.RCIHoldingsSecuritiesSettlement.com, and provided a toll-free telephone number for Settlement Class Members to call with any questions concerning the Settlement. ¶58; Ex. 1 (Bravata Decl.) at ¶¶11-12. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6-7 (D. Md. May 19, 2010) (approving combination of postcard notice, summary notice, and detailed notice available online as "the best notice practical").

## VII.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

In the Preliminary Approval Order, the Court preliminarily approved the Plan of Allocation and Plaintiffs now request final approval. Assessment of a plan of allocation under Rule 23 is governed by the same standards of review applicable to approval of the settlement as a whole—the plan must be "fair, adequate and reasonable." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012).

Here, the proposed Plan of Allocation is set forth in the Notice posted on the Settlement Website. Ex. 1-B (Notice at pp. 9-12). Lead Counsel developed the Plan of Allocation in consultation with Plaintiffs' damages consultant with the objective of equitably distributing the Net Settlement Fund. ¶62. It was developed based on an event study, which calculated the estimated amount of artificial inflation in RCI's common stock price as a result of Defendants' alleged materially false and misleading statements and omissions. ¶63. In calculating this estimated alleged artificial inflation, the damages consultant considered price changes in RCI common stock in reaction to the alleged corrective disclosures, adjusting for factors attributable to market or industry forces. ¶61.

Under the Plan of Allocation, a "Recognized Claim" will be calculated for each purchase of RCI common stock. ¶65. The calculation of Recognized Losses is explained in detail in the Notice and incorporates several factors, including when and for what price the RCI common stock was purchased and sold, and the estimated artificial inflation in the respective stock prices at the time of purchase and sale. *Id.*; *see also In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) ("plans that allocate money depending on the timing of purchases and sales of the securities at issue are common"). If a Claimant has an overall market gain in RCI common stock during Settlement Class Period, or did not hold any of shares through at least one of the alleged corrective disclosures, the Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered would not have been caused by the alleged fraud. *Id*. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claim. ¶64.

Lead Counsel believes that the proposed Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the conduct alleged in the Action, and their opinion

as to allocation is entitled to "considerable weight" by the Court in deciding whether to approve the plan. ¶67; *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) ("As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight."). To date, no objections to the Plan of Allocation have been filed on this Court's docket or received by Lead Counsel, suggesting that the Settlement Class also finds the Plan of Allocation to be fair and reasonable. ¶68. Moreover, similar plans have repeatedly been approved by federal courts in securities class actions. *See, e.g., City of Omaha*, 2015 WL 965693, at *15 (approving plan of allocation where "[u]nder the Plan, each Class Member will receive his or her *pro rata* share of the funds based on the calculation of recognized losses."). Accordingly, Plaintiffs respectfully submit that the proposed Plan of Allocation is fair and reasonable, and merits final approval from the Court.

## VIII. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate, and affirm certification of the Settlement Class for the purposes of settlement.

Dated: July 8, 2022

Respectfully submitted,

By: /s/ *Kara M. Wolke*
Kara M. Wolke (*pro hac vice*)
**Glancy Prongay & Murray LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: kwolke@glancylaw.com

*Attorney-In-Charge for Plaintiffs and Class*

## CERTIFICATE OF CONFERENCE

Having reached agreement on all outstanding issues, on April 14, 2022, the parties executed the Stipulation of Settlement. On April 28, 2022, the Court granted Plaintiffs' Unopposed Motion for: (I) Preliminary Approval of Class Action Settlement; (II) Certification of the Settlement Class; and (III) Approval of Notice of the Settlement. On July 1, 2022, Lead Counsel emailed Defense Counsel to meet and confer concerning the finalization of the Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation. Defendants' Counsel do not oppose the motion.

*/s/ Kara M. Wolke*
Kara M. Wolke


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion was served on all counsel of record on July 8, 2022 via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

*/s/ Kara M. Wolke*
Kara M. Wolke