**GLANCY PRONGAY & MURRAY LLP**
Kara M. Wolke (*pro hac vice*)
Melissa C. Wright (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: info@glancylaw.com
      kwolke@glancylaw.com
      mwright@glancylaw.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (*pro hac vice*)
Brian B. Alexander (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Email: pkim@rosenlegal.com
      balexander@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

**KENDALL LAW GROUP, PLLC**
Joe Kendall
Texas Bar No. 11260700
jkendall@kendalllawgroup.com
3232 McKinney Ave., Suite 700
Dallas, Texas 75204
Telephone: (214) 744-3000

*Liaison Counsel for Plaintiffs and the Settlement Class*

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re RCI Hospitality Holdings, Inc. Securities Litigation, | Master File No.: 4:19-cv-01841-AHB |

## LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES AND <u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>

**TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................1

II.    PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND ...............................................................................1

III.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER BOTH THE PERCENTAGE METHOD AND THE LODESTAR METHOD ....................................2

    A.    The Court Should Apply The Percentage Method ...................................................3

    B.    An Award Of 33⅓% Is Appropriate Under The Percentage Method ....................4

    C.    The Requested Fee Is Appropriate Even Under The Lodestar Method .................5

IV.   THE *JOHNSON* FACTORS CONFIRM THE REASONABLENESS OF THE REQUESTED FEE ...............................................................................................7

    A.    The Time And Labor Required ..............................................................................8

    B.    Novelty And Difficulty Of The Issues ...................................................................9

    C.    The Skill Required To Perform The Legal Service Adequately And The Experience, Reputation, And Ability Of The Attorneys ..........................................................10

    D.    The Preclusion Of Other Employment ................................................................11

    E.    The Customary Fee For Similar Work In The Community...................................12

    F.    Whether The Fee Is Fixed Or Contingent ...........................................................12

    G.    Time Limitations/Nature And Length Of Attorney-Client Relationship .............12

    H.    The Amount Involved And The Results Obtained ................................................12

    I.    The Undesirability Of The Case ..........................................................................13

    J.    Awards In Similar Cases .....................................................................................14

V.    PLAINTIFFS' COUNSEL'S EXPENSES SHOULD BE REIMBURSED.....................14

VI.   THE COURT SHOULD AWARD PLAINTIFFS THEIR COSTS AND EXPENSES....15

VII.  CONCLUSION .................................................................................................15

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ....................................................................................14

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
  2019 WL 387409 (S.D. Tex. Jan. 30, 2019)............................................................4, 5

*Barton v. Drummond Co.*,
  636 F.2d 978 (5th Cir. 1981) ......................................................................................2

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
  2019 WL 4193376 (S.D. Ind. Sept. 4, 2019)............................................................15

*Blum v. Stenson*,
  465 U.S. 886 (1984) ....................................................................................................3

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .................................................................................................2, 3

*Buettgen v. Harless*,
  2013 WL 12303194 (N.D. Tex. Nov. 13, 2013) ..................................................12, 13

*Burford v. Cargill, Inc.*,
  2012 WL 5471985 (W.D. La. Nov. 8, 2012)........................................................4, 7, 11

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
  2015 WL 965696 (W.D. La. Mar. 3, 2015)........................................................4, 9, 10

*Clark v. Lomas & Nettleton Fin. Corp.*,
  79 F.R.D. 641 (N.D. Tex. 1978)...................................................................................9

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ................................................*passim*

*Garza v. Sporting Goods Props., Inc.*,
  1996 WL 56247 (W.D. Tex. Feb. 6, 1996) ...............................................................12

*Goldstein v. MCI Worldcom*,
  340 F.3d 238 (5th Cir. 2003) ....................................................................................13

*Gross v. GFI Grp., Inc.*,
  784 F. App'x. 27 (2d Cir. 2019)................................................................................10

*In re Arthrocare Corp. Sec. Litig.*,
  2012 WL 12951371 (W.D. Tex. June 4, 2012) ..........................................................4

*In re Cendant Corp. Litig,*
  264 F.3d 201 (3d Cir. 2001) .....................................................................................10

*In re Dell Inc.*,
  2010 WL 2371834 (W.D. Tex. June 11,2010) .........................................................12

*In re Enron Corp. Secs., Derivative & ERISA Litig.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) .................................................................6, 7, 13

*In re EZCORP, Inc. Sec. Litig.*,
   2019 WL 6649017 (W.D. Tex., Dec. 6, 2019) ........................................................6, 15

*In re Granada P'ship Sec. Litig.*,
   803 F.Supp. 1236 (S.D. Tex. 1992) ................................................................................15

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ..........................................................................6

*In re OCA, Inc. Sec. & Derivative Litig.*,
   2009 WL 512081 (E.D. La. Mar. 2, 2009) ......................................................................9

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) .............................................................................................5

*Jenkins v. Trustmark Nat'l. Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) ...............................................................................2, 4

*Johnson v. Georgia Highway Express*,
   488 F.2d 714 (5th Cir. 1974) ...........................................................................................3

*Jones v. Diamond*,
   636 F.2d 1364 (5th Cir. 1981) .......................................................................................12

*Kemp v. Unum Life Ins. Co. of Am.*,
   2015 WL 8526689 (E.D. La. Dec. 11, 2015) ..................................................................5

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ...........................................................................................9

*Miller v. Glob. Geophysical Servs., Inc.*,
   2016 WL 11645372 (S.D. Tex. Jan. 14, 2016) ...........................................................5, 15

*Parmelee v. Santander Consumer USA Holdings Inc.*,
   2019 WL 2352837 (N.D. Tex. June 3, 2019) ..........................................................5, 6, 11

*Roussel v. Brinker Int'l, Inc.*,
   2010 WL 1881898 (S.D. Tex. Jan. 13, 2010) ...............................................................12

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ......................................................7, 9, 11, 13

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
   91 F. Supp. 2d 942 (E.D. Tex. 2000) ...............................................................................3

*Singh v. 21Vianet Grp., Inc.*,
   2018 WL 6427721 (E.D. Tex. Dec. 7, 2018) ..................................................................5

*Sprague v. Ticonic Nat'l Bank*,
   307 U.S. 161 (1939) .........................................................................................................3

*Tellabs, Inc. v. Makor Issues & Rights. Ltd.*,
    551 U.S. 308 (2007) ...................................................................................................2

*Trs. v. Greenough*,
    105 U.S. 527 (1881) ...................................................................................................3

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) .................................................................................3, 7

*Varljen v. H.J. Meyers & Co., Inc.*,
    2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000)............................................................15

*Vassallo v. Goodman Networks, Inc.*,
    2016 WL 6037847 (E.D. Tex. Oct. 14, 2016) .......................................................4, 5

*Williams v. Go Frac, LLC*,
    2017 WL 3699350 (E.D. Tex. April 26, 2017) .......................................................14

**<u>STATUTES</u>**

15 U.S.C. §78u-4(a)(4).................................................................................................15

**<u>REGULATIONS</u>**

17 C.F.R. § 240.10b-5 ....................................................................................................9

Pursuant to the Court's Order preliminarily approving the Settlement (ECF No. 71), Lead Counsel, on behalf of all Plaintiffs' Counsel, respectfully submit this Motion and Memorandum of Law in support of an award of attorneys' fees and reimbursement of Litigation Expenses.[1]

## I.   INTRODUCTION

Plaintiffs' Counsel have succeeded in obtaining $2,200,000 in cash (the "Settlement") for the benefit of the Settlement Class in the above-captioned action (the "Action"). This is a favorable recovery in the face of substantial risk and is the result of Plaintiffs' Counsel's persistent and skilled efforts. As compensation for their work, respectfully request: (1) an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund; (2) reimbursement of litigation expenses in prosecuting this Action in the amount of $93,016.85; and (3) payment of $3,000 to each of the Court-appointed Lead Plaintiffs, Roger DeMaggio, Patrick Prahl, Justin Kinslow, Joseph Milo, and Edgar M. Kee ("Plaintiffs"), to compensate them for the time they spent on this litigation on behalf of the Settlement Class.[2]

## II.   PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

The Supreme Court and the Fifth Circuit have consistently recognized that a "litigant or a

---

[1] Plaintiffs' Counsel consists of Lead Counsel, Glancy Prongay & Murray LLP ("GPM") and The Rosen Law Firm, P.A. ("Rosen Law"); Liaison Counsel, The Kendall Law Group, PLLC; and additional counsel for Plaintiffs, The Schall Law Firm. Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated April 14, 2022 (ECF No. 70-1), or the concurrently filed Declaration of Kara M. Wolke in Support of: (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (II) Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Wolke Declaration" or "Wolke Decl."). Unless otherwise noted, all citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Wolke Declaration.

[2] The Wolke Declaration is an integral part of this submission. The Court is respectfully referred to it for a detailed description of the factual and procedural history of the litigation, the claims asserted, the work performed by Plaintiffs' Counsel, the settlement negotiations, and the numerous risks and uncertainties presented in the litigation.

lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) ("[I]t is well settled that the common benefit or common fund equitable doctrine allows for the assessment of attorneys' fees against a common fund created by the attorneys' efforts.").[3]

Courts also have recognized that in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on classes of persons and to discourage future misconduct of a similar nature. *See Jenkins v. Trustmark Nat'l. Bank*, 300 F.R.D. 291, 306-7 (S.D. Miss. 2014) ("The doctrine serves the twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts."). The Supreme Court has emphasized that private securities cases such as this one are "an indispensable tool with which defrauded investors can recover their losses—a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights. Ltd.*, 551 U.S. 308, 320 n.4 (2007). Thus, common-fund fee awards of the type requested here encourage meritorious class actions, and promote private enforcement of, and compliance with, the securities laws.

## III.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER BOTH THE PERCENTAGE METHOD AND THE LODESTAR METHOD

"In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its

---

[3] Unless otherwise noted, all citations and internal quotations are omitted and emphasis is added.

discretion, applying an upward or downward multiplier." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012) ("*Dell*"). The Fifth Circuit affords "district courts the flexibility to choose between the percentage and lodestar methods," with their analyses under either approach informed by the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). *Id.* at 644.

### A.    The Court Should Apply The Percentage Method

While the Court may apply either the percentage method or the lodestar method, the percentage method is generally preferred. The Supreme Court has consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fee should be determined on a percentage-of-the-fund basis. *See, e.g.*, *Trs. v. Greenough*, 105 U.S. 527, 532 (1881); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166-67 (1939); *Boeing*, 444 U.S. at 478-79. And as the Supreme Court declared in *Blum v. Stenson*,  "under the common fund doctrine . . . a reasonable fee is based on a percentage of the fund bestowed on the class." 465 U.S. 886, 900 n.16 (1984).

The Fifth Circuit also has endorsed the percentage method, noting that "district courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the preferred method." *Dell*, 669 F.3d at 643-44; *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 964 (E.D. Tex. 2000) (percentage method superior to lodestar method). The percentage method "allows for easy computation" and "aligns the interests of class counsel with those of the class members." *Dell*, 669 F.3d at 643. Conversely, "[t]he lodestar method voraciously consumes enormous judicial resources, unnecessarily complicates already complex litigation, and inaccurately reflects the value of services performed." *Shaw*, 91 F. Supp. 2d at 964.

Moreover, "[a]s the Fifth Circuit noted, there is 'near-universal adoption of the percentage

3

method in securities cases,' at least in part because it is explicitly contemplated by the [PSLRA.]" *In re Arthrocare Corp. Sec. Litig.*, 2012 WL 12951371, at *4 (W.D. Tex. June 4, 2012); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *8 (N.D. Tex. Apr. 25, 2018) ("*Halliburton*") ("The PSL[R]A expressly contemplates the percentage method, providing that [t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class"). Accordingly, the Court should apply the percentage method.

**B.     An Award Of 33⅓% Is Appropriate Under The Percentage Method**

Under the percentage method, the Court "first determines the actual monetary value conferred to the class by the settlement" and then "applies a benchmark percentage to this value." *Vassallo v. Goodman Networks, Inc.*, 2016 WL 6037847, at *3-4 (E.D. Tex. Oct. 14, 2016). After setting the benchmark, the Court applies the *Johnson* factors "to determine whether the percentage should be adjusted upward or downward." *Id*. at *4. Here, the Settlement is an all-cash, non-reversionary settlement. Thus, the monetary value conferred to the Settlement Class is $2.2 million.

While there is no set rule on what is a reasonable "benchmark" percentage, "a review of analogous precedent indicates that an award of one-third of the common fund is reasonable and typical" in the Fifth Circuit. *Burford v. Cargill, Inc.*, 2012 WL 5471985, at *5 (W.D. La. Nov. 8, 2012); *see also Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) ("The fee represents one-third of the $15 million settlement fund, which is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Halliburton*, 2018 WL 1942227, at *12 (considering *Johnson* factors and holding that 33⅓% contingency was "reasonable and fair."); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965696, at *4 (W.D. La. Mar. 3, 2015) (33⅓% contingency "is common in this geographic area" and "has been approved in other common fund cases"); *Jenkins*, 300 F.R.D. at 307 ("it is not unusual for district

4

courts in the Fifth Circuit to award percentages of approximately one third"). Accordingly, an "attorney fee award of 1/3 of the total settlement fund falls within the range of awards granted by courts within the Fifth Circuit and is a reasonable benchmark." *Kemp v. Unum Life Ins. Co. of Am.*, 2015 WL 8526689, at *9 (E.D. La. Dec. 11, 2015).

Indeed, courts in the Fifth Circuit routinely grant fee awards in the amount of one-third (or more) of common fund settlements. *See, e.g.*, *Miller v. Glob. Geophysical Servs., Inc.*, 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016) (awarding 33⅓% of the $5.3 million settlement fund); *Parmelee v. Santander Consumer USA Holdings Inc.*, 2019 WL 2352837, at *2 (N.D. Tex. June 3, 2019) (awarding 33⅓% of the $9.5 million settlement fund); *Singh v. 21Vianet Grp., Inc.*, 2018 WL 6427721, at *2 (E.D. Tex. Dec. 7, 2018) (awarding 33.3% of the $9 million settlement fund); *Halliburton*, 2018 WL 1942227, at *12 (awarding 33⅓% of $100 million settlement fund and stating "[c]ompared to other common fund cases in this Circuit, Class Counsel is not asking for an unusually large or high fee."); *Al's Pals*, 2019 WL 387409, at *4 (awarding one-third of a $15 million settlement fund).[4]

### C.     The Requested Fee Is Appropriate Even Under The Lodestar Method

The requested fee is also reasonable when considering counsel's lodestar. Courts in this Circuit often perform a lodestar analysis ***solely*** as a cross-check to confirm that the requested percentage fee is reasonable. *Vassallo*, 2016 WL 6037847, at *3. In so doing, courts recognize that the lodestar cross-check should not displace a district court's primary reliance on the percentage method and that courts "may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306–07 (3d Cir. 2005); *Halliburton*, 2018 WL 1942227, at *8-*9 ("The lodestar cross-check is usually applied 'to avoid windfall fees' . . . [D]istrict courts need not scrutinize counsel's billing records with the

---

[4] *See also* Ex. 7 (collecting Fifth Circuit cases with 33% or higher fee awards).

thoroughness required were the lodestar method applied by itself."). In this case, the lodestar method—whether used directly or as a cross-check on the percentage method—confirms the reasonableness of the requested fee.

"Under [the lodestar] method, the court takes the recorded hours worked by the attorneys and multiplies them by a reasonable hourly rate," then applies a multiplier upward or downward. *Halliburton*, 2018 WL 1942227, at *8. at *13. Here, Plaintiffs' Counsel each submitted a declaration that includes a schedule identifying the lodestar of each firm (by individual, position, billing rate, and hours billed). The cumulative time expended by Plaintiffs' Counsel is 1,931.60 hours. ¶74. Based on current hourly rates, the resulting lodestar for the services is $1,223,646.00. ¶74; *see also In re Enron Corp. Secs., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 779 (S.D. Tex. 2008) (noting that courts use current rather historic rates to "compensate for delay in receiving fees.").

"An attorney's requested hourly rate is *prima facie* reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087 (S.D. Tex. 2012). Here, Plaintiffs' Counsel's hourly rates range from $800-1,050 for partners, to $625-750 for associates, and $415 per hour for staff attorneys, which are reasonable. Indeed, Counsel's rates have been accepted by other courts in this Circuit in the context of a lodestar cross-check (*see Santander*, 2019 WL 2352837, at *2 (GPM and Rosen Law served as Co-Lead Counsel); *In re EZCORP, Inc. Sec. Litig.*, 2019 WL 6649017, at *2 (W.D. Tex., Dec. 6, 2019) (GPM served as one of Co-Lead Counsel and The Kendall Law Group served as Liaison Counsel)), and they are consistent with the rates charged by other firms engaged in plaintiffs-side securities litigation, as well as defense counsel engaged in complex litigation. *See* Ex. 8 (chart reflecting billable rates of defense firms and plaintiffs-side securities litigation firms).

Based on Plaintiffs' Counsel's hourly rates, the requested fee equates to a fractional (or "negative") multiplier of 0.6 – *i.e.*, the requested fee is ***less than*** Plaintiffs' Counsel's lodestar. Courts have routinely recognized that a fractional multiplier strongly supports finding that the fee award is reasonable. *See Halliburton*, 2018 WL 1942227, at *13 ("Because there is a strong presumption that the lodestar represents a reasonable fee . . ., the fact that Class Counsel seeks an award less than the lodestar supports finding that the fee award is reasonable."). This is because ***positive*** multipliers of "1 to 4 [are] typically approved by courts within [the Fifth] circuit" in complex contingency fee litigation such as this. *Burford*, 2012 WL 5471985, at *6 n.1; *see also In re Enron Corp.*, 586 F. Supp. 2d at 751 n.20, 752 (awarding percentage fee equal to a multiple of 5.2 times lodestar, and stating that "[m]ultiples from one to four are frequently awarded in common fund cases when the lodestar method is applied"). Accordingly, the requested fee is also reasonable under the lodestar method.

## IV.   THE *JOHNSON* FACTORS CONFIRM THE REASONABLENESS OF THE REQUESTED FEE

In *Johnson*, the Fifth Circuit stated that district courts should consider several factors in setting a fee award. The twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Dell*, 669 F.3d at 642 n.25. "The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *28 (N.D. Tex. Nov. 8, 2005). As demonstrated

below, the relevant *Johnson* factors weigh in favor of the requested fee.

**A.    The Time And Labor Required**

The time and effort required by Plaintiffs' Counsel to effectively prosecute this Action and achieve the Settlement establish that the requested fee is justified. As detailed in the Wolke Declaration, Plaintiffs' Counsel litigated the Action for nearly three years. ¶¶18-37. In the course of the litigation, Plaintiffs' Counsel, among other things:

- drafted the initial complaint in the Action and moved for consolidation and appointment of Lead Plaintiffs and Lead and Liaison Counsel (¶¶18-19);

- conducted a detailed investigation into the allegedly wrongful acts, entailing (i) analysis of RCI Hospitality Holdings, Inc.'s ("RCI") filings with the SEC, public reports and news articles about RCI, and transcripts of RCI's investors calls, (ii) working with private investigators who conducted interviews with former employees and other potential witnesses with relevant information, and (iii) consultation with experts in the fields of accounting, market efficiency, loss causation and damages (¶20);

- drafted the 79-page Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), based on the investigation (¶¶20-21);

- engaged in voluminous briefing related to Defendants' motion to dismiss the Complaint, which was denied in its entirety (¶¶22-26);

- engaged in substantial discovery, which entailed, *inter alia*: (i) exchanging initial disclosures; (ii) negotiating a protective order and ESI protocol, both of which were subsequently entered by the Court; (iii) serving document requests on Defendants; (iv) identifying and issuing subpoenas to relevant third parties; and (v) reviewing and analyzing approximately 46,000 pages of documents produced by Defendants and third parties (¶¶27-30);

- prepared to file a motion for class certification by, *inter alia*, working with Dr. Adam Werner, an economics expert, to draft a report on the efficiency of the market for RCI common stock (¶¶31-32);

- drafted and exchanged opening and rebuttal mediation statements (¶34);

- participated in a full-day mediation session with mediator Michelle Yoshida, Esq., of Phillips ADR, followed by weeks of follow-up negotiations prior to reaching a settlement (¶¶35-36);

- negotiated and drafted the Stipulation, including the exhibits thereto (¶36); and

- drafted the preliminary and final approval briefs, and will continue to work with the Claims Administrator to oversee Settlement administration and distribution of the Settlement Fund. ¶¶36, 75.

The efforts required to complete these tasks, as well as others, were extensive and represented an immense risk, given the contingency-based nature of Plaintiffs' Counsel's representation. ¶¶78-81. To date, Plaintiffs' Counsel have spent over 1,931.60 hours litigating this case and have incurred $93,016.85 in unreimbursed litigation expenses. ¶74; Exs. 2-5. The substantial time and effort devoted to this case by Plaintiffs' Counsel was critical to obtaining the Settlement and, as a result, this factor supports the fee request.

**B.      Novelty And Difficulty Of The Issues**

The second *Johnson* factor also favors granting Lead Counsel's request for attorneys' fees. Courts have repeatedly recognized that securities litigation is "notoriously difficult and unpredictable" (*Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)), and that "a securities case, by its very nature, is a complex animal." *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980). This is especially true in the Fifth Circuit. *See TXU*, 2005 WL 3148350, at *32 (finding approximately 90% of Fifth Circuit PSLRA pleading decisions have upheld dismissal of complaints and recognizing case was risky when lead counsel accepted retention); *In re OCA, Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *21 (E.D. La. Mar. 2, 2009) ("Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult in this circuit.").

This case was no different. *See LHC Grp.*, 2015 WL 965696, at *6 ("The Amended Complaint asserts claims for securities fraud under §§ 10(b), 20(a) and 20A of the Securities and Exchange Act of 1934 and Rule 10b–5, 17 C.F.R. § 240.10b-5, which is a highly technical and complicated area of the law."). Although Plaintiffs believe that the allegations of the Complaint would ultimately translate into a strong case, Plaintiffs are also keenly aware they faced numerous hurdles to ***proving*** liability and damages. As detailed in the Wolke Declaration (¶¶41-45) and the Final Approval Motion (pp. 7-9), Defendants raised credible arguments challenging materiality,

falsity, and scienter. If Defendants had prevailed on their liability arguments, it would prove fatal to

Plaintiffs' claims. *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. 2019) (affirming

summary judgment on alternative ground that Defendant's "statement did not, as a matter of law,

amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial

court finding the statement actionable twice). And even if Plaintiffs' proved liability, Defendants'

arguments regarding loss causation and damages posed a significant threat that the total recoverable

class-wide damages could be substantially reduced. *See In re Cendant Corp. Litig*, 264 F.3d 201,

239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side

presenting its figures to the jury and with no guarantee whom the jury would believe."); ¶45.

While Plaintiffs' Counsel believe that they would have ultimately been able to overcome all

of Defendants' arguments, there can be no question that from the outset this Action was difficult,

complex, and fraught with risk. Plaintiffs' Counsel nevertheless obtained an excellent result for the

Settlement Class. Success in the face of these obstacles strongly supports the requested fee. *See LHC

Grp.*, 2015 WL 965696, at *6 ("Given the inherent difficulty involved in securities class actions and

the special difficulty of bringing those cases in the Fifth Circuit, the Court finds that consideration of

this factor warrants a substantial fee.").

### C.  The Skill Required To Perform The Legal Service Adequately And The Experience, Reputation, And Ability Of The Attorneys

The third and ninth *Johnson* factors—the skill required and the experience, reputation, and

ability of the attorneys—also support the requested fee. As demonstrated by their respective firm

resumes, Plaintiffs' Counsel have many years of experience in complex civil litigation, particularly

in the litigation of shareholder suits and other class actions. *See* Exs. 2-5. Plaintiffs' Counsel's

experience allowed them skillfully investigate the case despite the PSLRA's barriers to obtaining

formal discovery prior to the motion to dismiss, identify the complex issues involved in this case,

10

formulate strategies to prosecute it effectively, and to ultimately secure a favorable outcome for the Settlement Class. *See TXU*, 2005 WL 3148350, at *30 (this factor weighs in favor of approval where despite the PSLRA restrictions, due counsel's "diligent efforts . . . and their skill and reputations" they "were able to negotiate a very favorable" settlement). Plaintiffs' Counsel submit that the Settlement is a direct result of their skilled work and experience. *See Santander*, 2019 WL 2352837, at *2 ("Lead Counsel [GPM and Rosen Law] has conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy.").

Courts also have recognized that the quality of the opposition faced by plaintiff's counsel should be taken into consideration in assessing the quality of counsel's performance. *See TXU*, 2005 WL 3148350, at *30 ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation"). Here, Defendants were represented by experienced, aggressive, and highly-skilled counsel from DLA Piper—a prestigious and well-respected defense firm—that vigorously and ably defended the Action. ¶83. Accordingly, these factors also support the requested fee.

### D.    The Preclusion Of Other Employment

Plaintiffs' Counsel spent over 1,931.60 hours litigating this case on behalf of Plaintiffs and the Settlement Class.[5] ¶74. This is time counsel could have devoted to other potentially more lucrative matters. This is evident from the fact that, as discussed above, the requested fee results in a fractional multiplier. Accordingly, this factor further supports the requested fee. *See Burford*, 2012 WL 5471985, at *3 ("while this case did not preclude [Class Counsel] from accepting other work, they were often times precluded from working on other cases due to the demands of the instant matter. . . . This factor weighs in favor of a substantial fee award.").

---

[5] If the Settlement is approved, additional time will be spent drafting the distribution motion and ensuring that the Settlement is properly distributed to the Settlement Class.

### E.      The Customary Fee For Similar Work In The Community

As discussed above, the 33⅓% requested fee is well within the range of customary fees. *See,*
*Garza v. Sporting Goods Props., Inc.*, 1996 WL 56247, at *31 (W.D. Tex. Feb. 6, 1996) ("33 ⅓% to
40% is the customary contingency fee range.").

### F.      Whether The Fee Is Fixed Or Contingent

The contingent nature of the fee requested by counsel—and the substantial risk posed by the
litigation—also weigh in favor of awarding the requested fee. For nearly three years, Plaintiffs'
Counsel undertook this case on a ***fully*** contingent basis, carrying the substantial out-of-pocket costs
of litigation, and accepting the risk of not being paid for their services or reimbursed for their costs.
As the Fifth Circuit stated, "[l]awyers who are to be compensated only in the event of victory expect
and are entitled to be paid more when successful than those who are assured of compensation
regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled on other*
*grounds by Int'l Woodworkers of Am., AFL-CIO & its Local No. 5-376 v. Champion Int'l Corp.*, 790
F.2d 1174 (5th Cir. 1986). "Thus, the contingent nature of the litigation supports the requested
percentage." *Buettgen v. Harless*, 2013 WL 12303194, at *3 (N.D. Tex. Nov. 13, 2013).

### G.      Time Limitations/Nature And Length Of Attorney-Client Relationship

"[T]hese factors are inapplicable to this case, and are therefore neutral." *In re Dell Inc.*, 2010
WL 2371834, at *18 (W.D. Tex. June 11,2010).

### H.      The Amount Involved And The Results Obtained

Another *Johnson* factor is the "overall degree of success achieved." *Roussel v. Brinker Int'l,*
*Inc.*, 2010 WL 1881898, at *3 (S.D. Tex. Jan. 13, 2010), *aff'd*, 441 F. App'x 222 (5th Cir. 2011).
Here, Plaintiffs' damages expert estimates that if Plaintiffs overcame ***all*** the obstacles to establishing
liability, and completely prevailed on ***all*** their loss causation and damages theories, the $2.2 million
settlement would equate to more than 14% of the approximately $15.6 million total ***maximum***

12

damages *potentially* available in this Action. ¶¶9, 48. However, Defendants had strong arguments contesting liability, loss causation and damages that, if accepted by the trier of fact, could have drastically reduced or entirely eliminated damages, or substantially delayed any recovery. *See* ¶¶39-47. Under such circumstance, a recovery of more than 14% of the Settlement Class's *maximum potential* damages weighs in favor of the requested fee. *See* Ex. 6 (Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) at p. 24, Fig. 22 (median recovery in securities class actions in 2021 was approximately 1.8% of estimated damages); *see also In re Enron Corp.*, 586 F. Supp. 2d at 804 ("The typical recovery in most class actions generally is three-to-six cents on the dollar.").

## I.      The Undesirability Of The Case

The undesirability of a case can be a factor in justifying the award of a requested fee. *Harless*, 2013 WL 12303194, at *3. Securities cases such have been recognized as "undesirable" due to the elevated risk of litigating under the PSLRA, formidable opposition, high out-of-pocket costs, and the distinct possibility of no recovery. *See Halliburton*, 2018 WL 1942227, at *12 ("[T]he 'risk of non-recovery' and 'undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee' has been held to make a case undesirable, warranting a higher fee.").

This case was no exception, and the risk of no recovery after many years of hard-fought litigation was very real. *See, e.g.*, *Goldstein v. MCI Worldcom,* 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action against Bernard Ebbers and Worldcom involving a massive securities fraud with a $685 million write-off of accounts receivable, for which Ebbers was later convicted); *TXU*, 2005 WL 3148350, at *32 ("the risk of no recovery in complex [securities] cases of this type is very real.").

When Plaintiffs' Counsel undertook representation of Plaintiffs and the putative class in this Action, it was with the knowledge that they would have to spend substantial time and resources—

and face significant risks—without any assurance of compensation. Indeed, as the Fifth Circuit has recognized, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). Thus, this factor weighs in favor of the requested fee.

> **J.     Awards In Similar Cases**

As discussed above and in Exhibit 7, the requested fee of 33⅓% is consistent with awards granted in class action cases. Hence, this factor further supports the requested fee award.

In sum, all of the applicable *Johnson* factors support Lead Counsel's request for attorneys' fees of 33⅓% of the Settlement Fund.

## V.     PLAINTIFFS' COUNSEL'S EXPENSES SHOULD BE REIMBURSED

"Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement." *Halliburton*, 2018 WL 1942227, at *14. Here, Plaintiffs' Counsel expended $93,016.85 in out-of-pocket costs, which are divided into categories and itemized in the declarations submitted by each individual firm. ¶¶86-87; Exs. 2-5. These expenses are documented, based on the books and records maintained by each firm, and reflect the reasonable and necessary costs of prosecuting this litigation. They include, among other things, costs for experts in accounting and on market efficiency and damages, online legal research, mediation, charges for online document review, travel and lodging, copying, service of process, and mail. ¶87. Courts routinely permit the reimbursement of similar expenses. *Halliburton*, 2018 WL 1942227, at *14. Additionally, the Notice informed potential Settlement Class Members that Lead Counsel would seek reimbursement of litigation expenses up to $135,000.00, and, to date, no objection to the expense application has been filed. The requested expenses should, therefore, be awarded. *See Williams v. Go Frac, LLC*, 2017 WL 3699350, at *2–3 (E.D. Tex. April 26, 2017) (awarding

expenses in the absence of objections).

## VI.   THE COURT SHOULD AWARD PLAINTIFFS THEIR COSTS AND EXPENSES

The PSLRA, 15 U.S.C. §78u-4(a)(4), permits Plaintiffs to recoup litigation costs (including lost wages) incurred as a result of serving as a lead plaintiff in the Action and ensuring that the class was adequately represented. Reimbursement of such costs is allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000).

Here, each Plaintiff respectfully requests a modest reimbursement in the amount of $3,000 for the time expended on behalf of the Settlement Class. ¶93. Such awards are eminently reasonable given that, but for Plaintiffs' "commitment to pursuing these claims, the successful recovery for the Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019); *see also Miller*, 2016 WL 11645372, at *1 (awarding $15,000 to Lead Plaintiff pursuant to PSLRA); *In re EZCORP,* 2019 WL 6649017, at *2 (awarding Lead Plaintiff $7,500 pursuant to the PSLRA); *In re Granada P'ship Sec. Litig.*, 803 F.Supp. 1236, 1247 (S.D. Tex. 1992) (granting request for compensation of $5,000 to representative class action plaintiffs). Accordingly, Plaintiffs respectfully request that the Court grant their request.

## VII.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests the Court grant the Motion.

Dated: July 8, 2022

Respectfully submitted,

By: /s/ *Kara M. Wolke*
Kara M. Wolke (*pro hac vice*)
**Glancy Prongay & Murray LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: info@glancylaw.com

*Attorney-In-Charge for Plaintiffs and Class*

## <u>CERTIFICATE OF CONFERENCE</u>

Having reached agreement on all outstanding issues, on April 14, 2022, the parties executed the Stipulation of Settlement. On April 28, 2022, the Court granted Plaintiffs' Unopposed Motion for: (I) Preliminary Approval of Class Action Settlement; (II) Certification of the Settlement Class; and (III) Approval of Notice of the Settlement.  On July 8, 2022, Lead Counsel emailed Defense Counsel to meet and confer concerning the finalization of the Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses. Defendants' Counsel take no position on the motion.

*/s/ Kara M. Wolke*
Kara M. Wolke

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Motion was served on all counsel of record on July 8, 2022 via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

*/s/ Kara M. Wolke*
Kara M. Wolke